**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | |
|---|---|
| FORTINET, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )  **NO. C 20-3343 EMC** |
| | ) |
| FORESCOUT TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

San Francisco, California
Thursday, August 13, 2020

**TRANSCRIPT OF REMOTE VIDEO PROCEEDINGS**

APPEARANCES:

For Plaintiff:

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
525 University Avenue - Suite 1100
Palo Alto, California 94301
BY:  **JOHN M. NEUKOM, ESQ.**

SKADDEN ARPS SLATE MEAGHER
  & FLOM LLP
One Manhattan West
New York, New York 10001
BY:  **DOUGLAS NEMEC, ESQ.**
     **RACHEL BLITZER, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
             Official Reporter, CSR No. 12219

**APPEARANCES**:   (CONTINUED)

For Defendant:

                              275 MIDDLEFIELD ROAD - SUITE 205
                              Menlo Park, California 94025
                   BY:   **KATHERINE VIDAL, ESQ.**
                         **MATTHEW MCCULLOUGH, ESQ.**
                         WINSTON & STRAWN
                         35 West Wacker Drive
                         Chicago, Illinois 60601
                   BY:   **KIMBALL R. ANDERSON, ESQ.**

**Thursday - August 13, 2020**                                    **9:41 a.m.**

**P R O C E E D I N G S**

---o0o---

THE CLERK:  Calling Civil Action 20-3343, Fortinet, Incorporated versus Forescout Technologies, Inc.

Counsel, please state your appearances for the record, beginning with plaintiff's counsel.

MR. NEUKOM:  Good morning, Your Honor.  This is Jay Neukom for Fortinet.  With me on the line are my colleagues, Doug Nemec and Rachel Blitzer.

THE COURT:  All right.  Good morning.  Good morning, Mr. Neukom and everybody else.  Thank you.

MS. VIDAL:  Good morning, Your Honor.  This is Kathi Vidal, and with me on the line are Kimball Anderson and Matthew McCullough for Forescout.

THE COURT:  Good morning, Ms. Vidal and Counsel.

You have exchanged your initial disclosures it appears; is that correct?

MR. NEUKOM:  That's correct.

THE COURT:  All right.  And let me first go to ADR. You've expressed an interest in a mediation or settlement conference before a magistrate judge; is that agreeable?

MS. VIDAL:  It is, Your Honor.

THE COURT:  All right.  Talk to me about timing.  The earlier the better, in my view; but I understand these cases

sometimes it has to await some development.  So what are your thoughts about what would be the earliest feasible date to have a settlement conference?

MR. NEUKOM:  So, Your Honor, that -- our thought was to try to get a first mediation session done in two months or less.

THE COURT:  Okay.

MR. NEUKOM:  That relates to a bit of a compromise discussion the parties have had in the last couple of hours relating to one of disputed items in the CMC statement, which is whether discovery should be -- should be stayed pending the 101 motions that Forescout has filed.

THE COURT:  Right.

MR. NEUKOM:  The compromise position which is being discussed is that the parties would agree to stay discovery for two months; during those two months, among other things, there might be a mediation session with a magistrate.

There is some disagreement on the edges by the parties about what would happen once those two months are up, but that's more discovery dispute and less mediation topic, so I can hold that in abeyance for a bit.

THE COURT:  All right.  And so the idea is we hold discovery, try to get you to the magistrate judge.  The motion to dismiss is set for September 10th; is that right?

MR. NEUKOM:  That's right, Your Honor.

THE COURT: That would be heard during this interim period and presumably the ruling -- well, who knows how long a ruling would take. But all within the next 60 days presumably we would have heard the motion; perhaps ruled on the motion, perhaps not; hopefully have a settlement conference, if I can get you to a magistrate judge within 60 days; and then stay discovery.

And then after that, after the settlement conference, then the stay will be lifted. And, I guess -- then assuming that there is not -- the case is not dismissed on 101, if it continues, maybe now you can tell me what your -- if you have a disagreement on the course and scope of discovery thereafter.

MR. NEUKOM: Sure. Before that, one quick administrative note, Your Honor.

The motion to dismiss, I think is currently scheduled to be heard on September 10th. That was noticed in the motion papers. We asked our friends at opposing counsel to stipulate to move that one week to September 17th. I have got a hearing with Judge Ryu, which was not noticed by the parties, but was set by the Court. And they have graciously agreed to that. So I think we have recently submitted or, if not, we are shortly going to be submitting a stipulation asking to move that motion to dismiss one week.

THE COURT: All right. I think we can accommodate that.

**MR. NEUKOM:**  Okay.  Having said that, I think Your Honor has got it about right.  I think -- so the position of the parties originally was Fortinet, as the plaintiff, saying:  A motion to dismiss does not stay discovery, so we would like to move ahead.

Forescout saying:  We've got a pretty strong motion.  We would like discovery to be stayed.

The compromise position that we proposed and that I think we have some agreement on is this idea that we would agree to refrain from discovery for two months pending mediation.

The lingering disagreement is, then, Fortinet's position is:  We're not willing to agree to any stay of discovery for the sake of the pending motion.  So once those two months are up, discovery would be open.

And part of our compromise proposal is we are willing to agree not to move forward with discovery during those months, as part of that deal.  Once the two months are up, discovery would be open.

And as I understand it -- and I'll let Ms. Vidal take the podium in just a minute -- I think Forescout's position is they do not want to forego the ability to ask for a further stay of discovery after the two months by virtue of making that agreement.

And, Ms. Vidal, if I got any of that wrong, it was an innocent mistake.

THE COURT:  Okay.

MS. VIDAL:  Your Honor, in terms of the stay of discovery, our proposal is that we stay it for 60 days, as Mr. Neukom mentioned.  Our thinking is, it would make sense to have a subsequent case management conference at that time to check in with the Court.  I am imagining, based on this Court's prior rulings that Your Honor will either have ruled on the 101 motion, or will have an idea as to how the Court would rule on it.  So at that point we could have a subsequent CMC and discuss whether any additional stay is necessary.

THE COURT:  I think that's a fair approach because by then I will have -- if I haven't gotten out a ruling, and I'm usually fairly quick, but these days you never know -- I'll have a pretty good idea at that point.  And so why don't we schedule a status conference -- and since it's all by video conferencing anyway, nobody has to travel -- for about 60 days out and we can revisit the issue.  And I can decide at that point, if I have an issue with the ruling, whether it makes sense to continue the stay a bit more or lift the limits.

So, Angie, can I have a status date?

THE CLERK:  October 15th at 10:30, Your Honor.

THE COURT:  Yeah, October 15th -- that's good -- at 10:30.

And we can have that regardless.  If I have ruled -- well, we might move that, because, then, I might want to have a

status conference after your mediation to see how that goes. But let's keep that on for now, and we can always move it when the time approaches, depending on how quickly -- that does give me close to a month to get out a ruling.  I think you'll have a ruling by then.

So I should go ahead and make this referral right away. That's the only question mark that I have is that, given the ability of the magistrate judges, but let me get it on the wheel immediately, and see if we can get you a date within 60 days.  If not, you know, we'll get it as soon as we can, but I will specify within 60 days.

MS. VIDAL:  And, your Honor, the parties have not discussed which magistrate the parties would prefer.  We would prefer Judge Spero, and I know we haven't had a discussion about that.

THE COURT:  Okay.  Do you have any thoughts, Mr. Neukom, in that regard?

MR. NEUKOM:  I have two thoughts.  First is:  Given the burden on the Court in the COVID era and the 60-day deadline that we're giving ourselves, I'm at the pleasure of the Court about which magistrate makes best sense, including with the magistrates' respective calendars.

Number two, if the Court wanted to know our views, I think Chief Magistrate Judge Spero is a good idea.  I also think Magistrate Judge Corley would be a productive choice.  So

either of those are fine, but the more important point is any referral from are the Court would be fine by us.

THE COURT:  Okay.  Ms. Vidal?

MS. VIDAL:  We're in agreement with that, Your Honor.

THE COURT:  What I can do is run it by both of them just to see if they have availability.  If I'm told no, we'll get it on the wheel as quickly as we can, because that seems to be the priority.  As you know there are -- we're blessed with a very rich corps of magistrate judges who are very experienced and, I must say, very good at this job.

So why don't we do that, and then we'll see you on October 15th.

MR. NEUKOM:  That sounds fair.

MS. VIDAL:  Your Honor, we have a few official matters we would like to discuss.

THE COURT:  Yes.

MS. VIDAL:  One is just a point of clarification in terms of staying discovery.  We're presuming that stays only discovery and not the Court's other deadlines, for example, contention deadlines.  That's what we would propose.  We think having the contention deadlines in place will help with the mediation process.  We just wanted to clarify what exactly is being stayed.

THE COURT:  Right.  And you're -- your contention deadline right now is, well, you've agreed on August 27th?

**MS. VIDAL:**  Correct, Your Honor.

**THE COURT:**  And I was going to say, I meant to say I meant to adopt your scheduling, up through the Markman hearing which -- we could set that now, actually.  Maybe we should set that now since we have got all the other dates.

And so, yes, I would assume that things like the infringement and invalidity contentions would go forward.  It's just sort of the burden of discovery we're going to suspend for a bit.

**MS. VIDAL:**  Thank you, Your Honor.

**MR. NEUKOM:**  We have the same understanding, Your Honor.  I think that was -- I could be wrong, I think that was part of Mr. Nemec and Mr. Anderson's discussion earlier today, all participant local rule disclosures would proceed at pace.

**THE COURT:**  All right.  And the only issues in dispute looks like a week difference in identifying rebuttal extrinsic evidence.  I'm not sure why you can't resolve a one-week difference.  Is there an issue there that I'm not seeing?

**MS. VIDAL:**  Your Honor, November 30th is the day after the Thanksgiving week, so we're just trying to give the team a little bit of a break to push it out one week.

**THE COURT:**  All right.  And that won't interfere with the damages contentions and the joint statement; right?

**MS. VIDAL:**  Correct.  The joint statement's just a re-articulation of what we have already exchanged, so that

won't interfere with any of that.

THE COURT:  Right.  In view of the holidays, I'm going to go with the December 7th date.  And with respect to the last date to amend pleading without leave of Court, I guess Fortinet wants to have until December 18th, or 60 days after the Court's ruling.

MS. VIDAL:  Your Honor, we had proposed -- Forescout had proposed 21 days.  If there is reason for plaintiff to amend, in view of the pending motions, we propose allowing them 21 days to amend, to amend without leave of Court.  But in terms of just the general rules we suggested the Federal Rules govern on that.  Otherwise, it gives the plaintiff four months to leave -- to amend in any way they want without leave of Court, which is contrary to the rules.

THE COURT:  Mr. Neukom, your thoughts?

MR. NEUKOM:  Yeah.  I think this -- we've tried to resolve this prior to the CMC.  I think there is a fair amount of miscommunication going on.

First of all, if there were to be grounds for amendment following the Court's disposition of the pending Rule 12 motion, I think that would be addressed by the Court's order. For example, dismissed without prejudice for leave to amend or not -- and I won't purport to tell the Court how to handle that ahead of time.

THE COURT:  Right.

**MR. NEUKOM:** Secondly, the issue here, all of us on this line are accustomed to seeing in the Northern District of California in the case schedules a deadline for amendment of pleadings, usually call it three to nine months after the CMC, the initial CMC.

And as I understand it, there is some concern from Forescout that us all agreeing to a deadline for that would be giving us the right to amend without leave. And that's not my understanding of how the case schedule and the Federal Rules interplay; which is to say, I will confess to Your Honor I have never had a robust understanding of what the point is for case schedule deadline for amendment of pleadings, other than it being somewhat of guidance to the parties about an early-call date about when it would be too late to move afterwards.

**THE COURT:** Well, it adds -- let me comment on that.

It adds an extra layer of -- another hurdle you have to overcome, not just Rule 15, but then you've got to show cause.

**MR. NEUKOM:** Right.

**THE COURT:** On Rule 15, you don't -- it's no prejudice and early on this case.

So it does add a little bit. It puts a little bit of a barrier but, you know, people can overcome that. But it lights a second fire, shall we say.

**MR. NEUKOM:** Fair enough.

So I think with that guidance from the Court, which is

useful, I don't think there is much of a disagreement between the parties. If one side or the other were to seek to amend its pleadings prior to the deadline, they would still have to satisfy the federal rules standard for amendment.

And we're not -- we're not intending to suggest that with the entry of this deadline for amended pleadings that would be removed, and we don't think in the ordinary course and case schedule in this district, that does so.

**MS. VIDAL:** Your Honor, we would be amenable to that.

The current position, as articulated in our papers, actually includes the words "without leave of Court," so if that was stricken, we're fine with the December date.

**THE COURT:** Yeah, let's do that because I don't -- leave of Court is always required, if required by the Federal Rules. Like I say, the extra deadline is an additional layer and I'll put in December 18th, knowing that that's the function of that date.

So then that leaves the Markman hearing. Why don't we try a date in maybe the -- I do like to have a tutorial. I'm not sure how complicated -- well, this case may warrant looking at the patent, may warrant a tutorial. I think -- it never hurts. And I would like to have that shortly after the reply and then maybe we set the hearing three weeks out from the February 15th date.

Angie, what's the next Thursday three weeks out? Well,

no, we're going to specially set this for claim construction. Maybe on a Tuesday or find a date?

THE CLERK:  It would be March 2nd, Your Honor, that's three weeks, approximately.

THE COURT:  All right.  And if we had the tutorial shortly after the reply, at least I would like to have it two weeks in advance of the March 2nd date.  What would that be?

THE CLERK:  Two weeks in advance would be February 16th.

THE COURT:  Right after the reply brief is done. Well, why don't we do that.  We'll set a tutorial for the 16th and we'll set the hearing what time on the 2nd?

THE CLERK:  2:30, Your Honor.

THE COURT:  2:30.  And tutorial also at 2:30?

THE CLERK:  Yes.

THE COURT:  Okay.  So why don't you pencil that in.  I will get out a clerks notice or minute order incorporating all these dates.  So we'll have that.  So we'll have everything scheduled through Markman.  And we'll see where we go from there.

Is there anything else we need to cover this morning?

MS. VIDAL:  Your Honor, just a couple of minor issues. The parties, as expressed in our paper at 8G, wanted to seek the Court's guidance on Local Patent Rule 4-2, the

identification of testimony of expert witnesses, in terms of, you know, whether that requires just a summary disclosure or actual expert report.  Forescout would suggest that it means the latter, and that would avoid any surprise but we wanted to get the Court's guidance on that.

**THE COURT:**  All right.  Your view, Mr. Neukom?

**MR. NEUKOM:**  Yeah.  My experience with Rule 4-2 has been that this initial disclosure of the expert is -- it is a short, fair summary of what they are going to be saying in subsequent submissions; a little bit along the lines, Your Honor, if I may, by way of analogy, to some expert disclosures in state court proceedings.

The burden is then on the party that makes that Rule 4-2 disclosure to ensure that subsequent, more detailed testimony -- for example, in the form of a declaration from the expert -- reasonably tracks what was disclosed on Rule 4-2. And if a party doesn't do that, a party is proceeding at its own peril.

But it's not consistent with my experience and understanding of Rule 4-2 that that deadline calls for the full-blown declaration of the expert at that stage.

**THE COURT:**  Yeah.  I don't -- I think it's appropriate to do a summary disclosure at this point, at least at this early juncture.  As we get past the claim construction, if we get into dispositive motion work for trial, we'll talk about

the actual time deadline at that point for full disclosures.

I think for purposes of, at least the schedule I have got to now, claim construction and pretrial stuff, I think that summary -- adequate summary disclosure will be sufficient. Okay?

**MS. VIDAL:**  And one -- so thank you, Your Honor.

One last issue -- a couple of other issues.

In terms of the tutorial, does the Court have any preferred format for the tutorial; does the Court prefer to hear from counsel or experts or anything else that would be helpful to the Court?

**THE COURT:**  Number one, I like to take it claim-by-claim.  Well, there is only one technology here, I guess, right?  So it's not like we have got a whole bunch of different things, so I guess that's not that complicated.

I don't care whether it's an expert in the field or counsel.  Whoever can explain most clearly and sometimes, you know, the attorney can be very good at that, and sometimes they are not so good at that; so whoever can explain the technology in sort of lay terms the best, that's all I care about.

**MS. VIDAL:**  Thank you, Your Honor.

And last point, I just wanted to raise with the Court that we do have a brewing issue regarding the initial disclosures. We're hoping we can work that out with opposing counsel.  So we don't expect to bring a motion on that, but I didn't want to

surprise the Court if we're not able to resolve that.

THE COURT:  All right.  Well, if you have a problem well, you know my standing order in terms of the letter brief process and you can submit that to me.  But I would hope something as basic as initial disclosures, we wouldn't have that problem.  But if you do, that's what I'm here for.

MS. VIDAL:  Thank you, Your Honor.

THE COURT:  Okay.

All right.  Anything further?

MR. NEUKOM:  Not from the plaintiff.  Thank you, Your Honor.

MS. VIDAL:  Not from defendant.

THE COURT:  Okay.  Then I guess next time I see you will be at the motion to dismiss.  And, meanwhile, let me make a quick inquiry to either Judge, Spero or Judge Corley about their availability.  If not, we'll put this on the assignment wheel expeditiously -- no guarantee -- but try to get this on as quickly as possible.

MS. VIDAL:  Thank you, Your Honor.

MR. NEUKOM:  Thank you.

THE COURT:  All right.  Thank you.

(Proceedings adjourned at 10:02 a.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Monday, September 7, 2020



Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court