United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FORTINET, INC.,<br><br>                  Plaintiff,<br><br>    v.<br><br>FORESCOUT TECHNOLOGIES, INC.,<br><br>               Defendant. | Case No.  20-cv-03343-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 24 |

## I.      INTRODUCTION

Plaintiff Fortinet, Inc. ("Fortinet") brought this action against Defendant Forescout Technologies, Inc. ("Forescout") for patent infringement.  Fortinet owns three patents relating to cybersecurity technology that, it alleges, Forescout has indirectly and willfully infringed.  Pending before the Court is Forescout's motion to dismiss for failure to state a claim on the grounds that (1) Fortinet's patents claim ineligible subject matter and (2) Fortinet fails adequately to plead indirect or willful infringement.  *See* Docket No. 24 ("Mot.").  For the reasons stated below, the Court **DENIES** Forescout's motion to dismiss the asserted patents on subject-matter eligibility grounds.  It also **DENIES** Forescout's motion as to Fortinet's claims of inducement.  The Court, however, **GRANTS** the motion as to Fortinet's claims of contributory and willful infringement with leave to amend.

## II.      BACKGROUND

The complaint alleges the following.  Fortinet is a company that sells "cybersecurity products, software, and services" to large institutional customers.  Docket No. 1 ("Compl.") ¶ 3. In 2018, Fortinet became the owner, by assignment, of three patents relating to network access

United States District Court
Northern District of California

1  control security technology.  *Id.* ¶¶ 5, 30-32.  These include United States Patent Nos. 8,458,314

2  ("the '314 Patent"), titled "System and method for offloading IT network tasks; 9,369,299 ("the

3  '299 Patent"), titled "Network access control system and method for devices connecting to

4  network using remote access control methods"; and 9,948,662 ("the '662 Patent"), titled

5  "Providing security in a communication network."  *Id.* ¶¶ 2, 30-32.

6       Fortinet describes the '314 Patent as "a method of delegating control of computer network

7  access from network administrators to sponsors" through the creation of digital "templates and

8  profiles that associate network users with a sponsor."  *Id.* ¶ 44.  The '299 Patent is characterized as

9  "a system for out-of-band control of network access," featuring such technological components as

10  "a server device," a "terminal device," a "remote access device," and a "network access filter."  *Id.*

11  ¶ 58.  And the '662 Patent claims "a method of providing security in a communication network"

12  whereby "a network security device selectively disables application of security features based on a

13  trust level associated with [an] external network."  *Id.* ¶ 72.

14       Forescout is a competitor of Fortinet, also selling cybersecurity products to businesses.

15  *See id.* ¶ 6.  In February 2020, "Fortinet attempted to initiate licensing discussions with Forescout"

16  on the belief that Forescout's product offerings infringe the '314, '299, and '662 Patents.  *Id.* ¶ 10.

17  Fortinet continued its attempts throughout March and April of this year, eventually providing

18  Forescout with "identification of specific patents that are infringed by Forescout's technology."

19  *Id.* ¶¶ 11-12.  As of the filing of the Complaint, Forescout "ha[d] not indicated a willingness" to

20  engage in licensing negotiations. *Id.* ¶ 12.

21       Fortinet filed its Complaint on May 15, 2020, alleging three counts of patent infringement

22  on theories of inducement, contributory infringement, and willful infringement.  *See, e.g., id.*

23  ¶¶ 37, 49, 51, 63, 65, 77.  Forescout filed its motion for failure to state a claim on July 13, 2020.

24  *See* Mot.

25                    **III.    LEGAL STANDARD**

26       Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

27  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

28  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal quotation omitted).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under the Patent Act of 1952, patents are "presumed valid." 35 U.S.C. § 282(a).  "As such, an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence." *Cisco Sys., Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1190 (N.D. Cal. 2019) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law" but "may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  "Like other legal questions based on underlying facts," patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).  Thus, "[a]lthough claim construction is often desirable, and may sometimes be necessary, to resolve whether a patent claim is directed to patent-eligible subject matter," it is not "an inviolable prerequisite to a validity determination under § 101," and

may be eschewed "[w]here the court has a full understanding of the basic character of the claimed subject matter." *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1124 (N.D. Cal. 2019) (internal quotations omitted).

## IV.   <u>DISCUSSION</u>

In moving to dismiss Fortinet's complaint, Forescout argues that the '314, '299, and '662 Patents are all "directed to an abstract idea that lacks any inventive concept, and are therefore patent-ineligible." Mot. at 1.  More specifically, it alleges that the patents focus on "the abstract idea of controlling access" to a computer network "using conventional technology." *Id.* at 2. Forescout also contends that the complaint does not "adequately plead indirect infringement" because it "fails to plead any factual allegations regarding the knowledge and intent elements of Fortinet's claims for contributory and induced infringement." *Id.* at 1.  Lastly, Forescout asserts that the complaint "fails to adequately plead willful infringement" since it does not allege facts showing "that Forescout's conduct is egregious." *Id.*  Fortinet counters that its asserted patents "are directed to patentable subject matter and incorporate inventive concepts—and to the extent Forescout disputes the patents' advancement over prior art, that fact issue precludes a finding of invalidity at this stage."  Docket No. 27 ("Opp'n") at 1.  Fortinet also argues that the complaint satisfies the pleading requirements for indirect and willful infringement, "provid[ing] ample notice of Fortinet's allegations." *Id.*

A.   <u>Patent-Eligible Subject Matter</u>

Section 101 of the Patent Act defines the scope of patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101.  But the Supreme Court has long excluded from patent protection "laws of nature, natural phenomena, and abstract ideas," *Diamond v. Diehr*, 450 U.S. 175, 185 (1981), which are "the basic tools of scientific and technological work," *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972).  The Court has "described the concern that drives this exclusionary principle as one of pre-emption," since granting "a monopoly over an abstract idea" would "pre-empt use of [the idea] in all fields" and thus "impede innovation more than it would tend to promote it." *Alice*

4

*Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (internal citations omitted).  The Court has also cautioned, however, that lower courts must "tread carefully in construing this exclusionary principle" since, "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012)).

In *Alice*, the Court codified a two-part test, first articulated in *Mayo*, for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  573 U.S. at 217.  At step one, a court must "determine whether the claims at issue are directed to a patent-ineligible concept"—*i.e.*, a law of nature, natural phenomenon, or abstract idea.  *Id.* at 218.  If so, then the court moves to step two, "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether [any] additional elements 'transform the nature of the claim' into a patent-eligible application" of the ineligible subject matter.  *Id.* at 217 (quoting *Mayo*, 566 U.S. at 79, 78).  The Court has described this second step as "a search for an 'inventive concept'": "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible subject matter] itself.'"  *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

Lower courts have conceded that, in the wake of *Mayo* and *Alice*, "precision has been elusive in defining an all-purpose boundary between the abstract and the concrete."  *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (internal quotation omitted).  Nevertheless, the Supreme Court and the Federal Circuit have established certain parameters for conducting the step-one and step-two inquiries.

At *Alice* step one, courts "look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter," *Affinity Labs*, 838 F.3d at 1257-58 (internal quotation omitted), such as an abstract idea.  While the "Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea,'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016), it has identified algorithms, mathematical formulae, "fundamental economic practice[s] long prevalent in our

system of commerce," and other "method[s] of organizing human activity" as abstract ideas. *See Alice*, 573 U.S. at 218-20 (citing *Bilski v. Kappos*, 561 U.S. 593, 599 (2010)). Courts therefore often begin the step-one analysis by simply "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases," *Enfish*, 822 F.3d at 1334.[1]

The closer question at step one, however, tends to be not "whether the claims *involve* a patent-ineligible concept," but whether they are "*directed to* excluded subject matter." *Enfish*, 822 F.3d at 1335 (internal quotation omitted) (emphasis added). With computer technology in particular, a typical crux of the step-one analysis is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336; *see also Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1347 (identifying this passage from *Enfish* as the key inquiry in cases "involving software innovations"). The Federal Circuit has made clear that merely applying an "abstract idea . . . on a generic computer" does not satisfy step one, *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (internal quotation omitted), nor does "[l]imiting the invention to a technological environment" such as the Internet, *Berkheimer*, 881 F.3d at 1367 (internal quotation omitted). And "[t]he patent has to describe *how* to solve the problem in a manner that encompasses something more than the principle in the abstract" to claim eligible subject matter. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 855 Fed. Appx. 529, 533 (Fed. Cir. 2020) (internal quotation omitted). *See Affinity Labs*, 838 F.3d at 1258 (holding an invention abstract at step one where there was "nothing in [the patent] that is directed to *how* to implement" the claimed idea); *Ancora*, 908 F.3d at 1348 (holding an invention patentable at step one where the claim "specifically identifies how th[e] functional improvement is effectuated in an assertedly unexpected way"). In sum, courts at step one ask whether a patent's claimed advance represents a concrete "technological solution to a technological problem." *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309

---

[1] For some of the "varied approaches to determining whether particular claims are directed to an abstract idea" that courts have taken, *see Voip-Pal.Com*, 374 F. Supp. 3d at 1125-26.

United States District Court
Northern District of California

1   (Fed. Cir. 2020).[2]

2         If the patent is directed to a patent-ineligible concept (*e.g.*, an abstract idea), at *Alice* step

3   two, the essential inquiry is whether "the elements of [a] claim both individually and 'as an

4   ordered combination'" go beyond "'well-understood, routine, conventional activit[ies]' previously

5   known to the industry." *Alice*, 573 U.S. at 217, 225 (quoting *Mayo*, 566 U.S. at 79, 73); *see also*

6   *Berkheimer*, 881 F.3d at 1367 ("The second step of the *Alice* test is satisfied when the claim

7   limitations involve more than performance of 'well-understood, routine, [and] conventional

8   activities previously known to the industry.'").  The Federal Circuit has thus held that, in the case

9   of a computer-implemented invention, any "concrete, tangible components" (*e.g.*, computer

10   hardware) that claims recite "must involve more than performance of 'well-understood, routine,

11   conventional activit[ies]' previously known to the industry" to render an abstract idea patent-

12   eligible.  *In re TLI Commc'ns LLC*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at

13   225).  The components themselves, however, may supply an inventive concept if they amount to

14   more than "generic computer components."  *See Customedia Techs., LLC v. Dish Network Corp.*,

15   951 F.3d 1359, 1366 (Fed. Cir. 2020).  And "an inventive concept can be also found in the non-

16   conventional and non-generic arrangement of known, conventional pieces" of computing

17   components.  *BASCOM*, 827 F.3d at 1350.[3]

18         With the step-two analysis, "[t]he question of whether a claim element or combination of

19   elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a

20   question of fact," one that "must be proven by clear and convincing evidence." *Berkheimer*, 881

21   F.3d at 1368.  As a result, "whether a claim recites patent eligible subject matter is a question of

22

---

23   [2] *See also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019) (upholding
patent eligibility at step one because "the claims are directed to a technological solution to a

24   technological problem"); *Prism Techs., LLC v. T-Mobile USA, Inc.*, 696 Fed. Appx. 1014, 1017
(Fed. Cir. 2017) (denying eligibility at step one because claims did not "cover a concrete, specific

25   solution to a real-world problem").

26   [3] At times, the Federal Circuit's decisions have obscured the distinctions between the first and
second steps of the *Alice* test.  Thus, in *Enfish* the court noted that, in computer-related cases,

27   "there may be close calls about how to characterize what the claims are directed to" and that "an
analysis of whether there are arguably concrete improvements in the recited computer technology"

28   could take place under either steps one or two.  822 F.3d at 1339; *see also Ancora*, 908 F.3d at
1349 (recognizing "overlaps between some step one and step two considerations").

law which may contain underlying facts," and it is only "[w]hen there is no genuine issue of material fact regarding whether the claim elements or claimed combination is well-understood, routine, [or] conventional to a skilled artisan in the relevant field" that eligibility "can be decided . . . as a matter of law" on a motion to dismiss or at summary judgment.  *Id.*  If there is a genuine dispute as to whether the claimed combination of elements is routine or conventional to a skilled artisan in the field, a motion to dismiss or summary judgment must be denied.

As a final matter, "courts sometimes find it helpful to assess claims against the policy rationale for § 101," *i.e.*, preemption.  *Voip-Pal.Com*, 375 F. Supp. 3d at 1129.  The Federal Circuit has explained that "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016) (internal quotation omitted).  Nevertheless, courts upholding eligibility have sometimes justified their decisions by pointing to the lack of a preemption risk.  *See, e.g.*, *BASCOM*, 827 F.3d at 1350 ("Nor do the claims preempt all ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of filtering content.").  In this regard, the patent's claim specificity in explaining how the invention works or is performed informs the breadth of any potential preemption reach.

    1.    <u>The '314 Patent</u>

The '314 Patent "relates to network management, in particular, offloading Administrator information technology (IT) network tasks to people such as business/department heads or automated mechanisms within the system."  '314 Pat. at 1:12-15.  According to Fortinet, "the invention solves problems faced by network administrators . . . tasked with configuring, adding, and granting network permissions to a variety of different endpoint devices."  Opp'n at 3.  Claim 1—which is "the only claim cited in the Complaint," Mot. at 9, and is deemed "illustrative" by Fortinet, Opp'n at 4—recites:

> 1. A method for control of computer network resources connected to a computer network supporting network endpoints by delegating control from a network administrator to at least one sponsor comprising the steps of:

United States District Court
Northern District of California

creating templates for users and devices of said computer network by said network administrator at an administrator account on a workstation connected to said computer network;

creating profiles used to control said resources of said computer network;

associating said templates with said profiles;

creating at least one said sponsor by said network administrator;

associating, by said network administrator, at least one of said profiles with said sponsor;

delegating, by said network administrator, network management administrative privileges to said sponsor,

transferring responsibility for said users and devices from said network administrator to said sponsor when said template of said users and devices is associated with said profile of said sponsor; and

controlling of said computer network resources by said sponsor, using said templates assigned to said sponsor by said network administrator, wherein said sponsor is constrained by said network administrator by said at least one associated profile, said sponsors not having network management administrative privileges over said network administrator.

*Id.* at Clm. 1.[4]

      a.   <u>Step One</u>

      Forescout argues that Fortinet's asserted patents all fail step one of *Alice* because they are directed to "the abstract idea of controlling access to a network." Mot. at 8. With the '314 Patent in particular, Forescout contends that it recites the (somewhat more limited) "abstract idea of controlling access . . . by delegating certain responsibility from administrators to sponsors," which is "a common and well-understood business organization strategy." *Id.* at 8-9. Forescout relies primarily on three recent Federal Circuit cases—*Prism Technologies LLC v. T-Mobile USA, Inc.*, *Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*, and *Dropbox, Inc. v. Synchronoss*

---

[4] As with the other asserted patents, Fortinet does not classify Claim 1 as "representative" and in fact refers to the patents' dependent claims in arguing for subject-matter eligibility. In *Berkheimer*, the Federal Circuit explained that courts may not treat a claim as representative simply because the patentee "only asserted" a particular "independent claim" and "focused all of his primary arguments" on that claim through the summary-judgment phase of litigation. *See* 881 F.3d at 1365. Given the resolution of this motion, however, the Court addresses only the independent claims that the parties focused on in their briefs.

United States District Court
Northern District of California

*Technologies*—holding that "controlling access to, or limiting permission to, resources" is an unpatentable abstract idea. *See Ericsson*, 955 F.3d 1317, 1326 (Fed. Cir. 2020); Mot. at 6-8.[5] Forescout also maintains that the '314 Patent relies on technological processes that are either generic or unexplained to control network access, and so "fail[s] to recite any technological solution" at step one. Mot. at 10.

Fortinet counters that the '314 Patent is not directed to an abstract idea but to specific "technical problems" "faced by network administrators ('admins') tasked with configuring, adding, and granting network permissions to a variety of different endpoint devices." Opp'n at 3-4 (citing '314 Pat. at 1:19-28). Fortinet also argues that the patent's use of "profiles and templates" represents "a specific, technical solution" to these administrative problems, rather than generic or functional computing components. *Id.* at 6-7. Along the way, Fortinet stresses that courts must not oversimplify or overgeneralize the focus of patent claims, *id.* at 1, 6, and must credit "statements in the specification that the claimed invention purported to solve weaknesses in the prior art" as true on a motion to dismiss, *id.* at 6 (quoting *Packet Intelligence*, 965 F.3d at 1309).[6]

The Court concludes that the '314 Patent is directed to an abstract idea and so fails *Alice* step one. While Forescout mischaracterizes and oversimplifies the patent as simply a method for "controlling access" or "classifying and organizing data," Mot. at 9, it fairly describes the patent as being directed to "controlling [network] access by delegating authority," Docket No. 28 ("Reply")

---

[5] *See also Prism*, 696 Fed. Appx. 1014, 1017 (Fed. Cir. 2017) (holding that "providing restricted access to resources" is abstract); *Dropbox*, 815 Fed. Appx. 529, 532 (Fed. Cir. 2020) (affirming that "controlling access to data" is abstract).

[6] The Federal Circuit has sent conflicting signals about the role of the specification in the *Alice* test. In *Packet Intelligence* the court explained that, in an "eligibility analysis, we consider the claim as a whole . . . and read it in light of the specification." 965 F.3d at 1309 (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018)). On the other hand, cases like *Ericsson* and *Dropbox* hold that "[w]hile the specification may be 'helpful in illuminating what a claim is directed to . . . the specification must always yield to the claim language' when identifying the 'true focus of a claim.'" *Ericsson*, 955 F.3d at 1325 (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019)). The Court here interprets the focus of the asserted patents "in light of the specification" (especially at the step-one, "directed to" inquiry), but remains mindful the claim language ultimately controls the eligibility analysis.

United States District Court
Northern District of California

at 1.  This focus, though narrower than mere network access control, remains abstract.  As Forescout asserts, "[d]elegating authority from one person to another within a business is exactly the sort of 'longstanding commercial practice' and 'method of organizing human activity' that the Supreme Court has stated are within the realm of abstract ideas."  Mot. at 10 (citing *Alice*, 573 U.S. at 220).  And "'[m]erely limiting the field of use of th[is] abstract idea to a particular existing technological environment'—*e.g.*, computer networks—'does not render the claims any less abstract."  Reply at 2 (quoting *Affinity Labs*, 838 F.3d at 1259).

The '314 Patent's claims therefore "*involve* a patent-ineligible concept," *Enfish*, 822 F.3d at 1335, and Fortinet's efforts to cast them as a "technological solution to a technological problem," *Packet Intelligence*, 965 F.3d at 1309, are unpersuasive.  As discussed above, in order to satisfy the solution-to-a-problem standard a patent must bring about "improvement[s] in computer or network functionality."  *Affinity Labs*, 838 F.3d at 1262.  Fortinet argues that the '314 Patent does so "by, *inter alia*, enhancing system security, minimizing the risk of errors and abuse, and benefitting from department-specific knowledge."  Opp'n at 5 (citing '314 Pat. at 6:26-36; *Enfish*, 822 F.3d at 1337).  But the Federal Circuit has recently explained that "[t]o be a patent-eligible improvement to computer functionality . . . the claims must be directed to an improvement to the functionality of the computer or network platform *itself*," *Customedia Techs.*, 951 F.3d at 1365 (emphasis added), and so go beyond mere "*incidental* improvements to computer functionality" via refinement of the abstract idea, Reply at 2 (emphasis in original).[7]  Here, the benefits that Fortinet attributes to "[l]imited management" "are inherent to the abstract idea of controlling access and delegating authority, which does not even require a computer."  *Id.* at 2.  The '314 Patent is not directed to a specific improvement to the functionality of the computer or network platform itself.  *Cf. Enfish*, 822 F.3d at 1336-37 (finding claims non-abstract where they achieved "benefits over conventional databases, such as increased flexibility, faster search times, and

---

[7] *See also Ericsson*, 955 F.3d at 1330-31 ("Even assuming that this collection of elements led to a more efficient way of controlling resource access, 'our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.'") (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)).

smaller memory requirements," and so recited "an improvement to computer functionality itself").

b.      Step Two

Proceeding to *Alice* step two,[8] the parties dispute whether the '314 Patent recites an "inventive concept," and specifically whether its key components—the "templates" and "profiles"—entail more than "well-understood, routine, conventional activit[ies] previously known to the industry," *Alice*, 573 U.S. at 217.  Forescout argues that the '314 Patent's templates and profiles are merely generic or functional abstractions.  Forescout characterizes these components as mere "data," Mot. at 10—a description that Fortinet does not entirely refute when it defines the templates and profiles as "sets of definitions, rules, and patterns that control the manner in which sponsors can manage IT tasks," Opp'n at 14 n.5.  Forescout analogizes the templates and profiles with the claimed advance in *Dropbox*, "a set of software and hardware components in the computer system" that "analyzed the 'user's security level' to determine whether to allow access" to a network.  *See* 815 Fed. Appx. at 532-33; Mot. at 8.  The Federal Circuit disparaged this "access checker" mechanism as a "black box"—a "functional abstraction" that failed "to describe *how* to solve the problem" it purportedly addressed.  *Dropbox*, 815 Fed. Appx. at 533.

Fortinet counters that its "template and profile disclosures are robust and detail various template and profile embodiments."  Opp'n at 7.  It also argues that the recited features of "creating sponsor profiles and templates, and establishing an association between them before granting limited sponsor control, . . . were neither well-understood, routine, nor conventional" at the time of invention.  *Id.* at 14.[9]  Throughout this discussion, Fortinet emphasizes that "[q]uestions relating to whether the claims recite an inventive concept—such as, whether a claimed technical improvement was well-understood, routine, and conventional at the time of invention—are questions of fact that must be proven by clear and convincing evidence."  *Id.* at 13-

---

[8] The parties argue over the profiles and templates at both steps one and two of the *Alice* inquiry. As discussed above, the step-one and step-two analyses often overlap, and the Court concludes that the components are more appropriately addressed at step two.

[9] Fortinet points to the specification's assertion that there was a "need for IT [departments] to be able to automate and/or delegate the process of provisioning guest access" because they frequently struggle to balance the competing needs of network security and connectivity.  *Id.* (quoting '314 Pat. at 1:19-32; 1:49-50).

United States District Court
Northern District of California

1   14 (citing *BASCOM*, 827 F.3d at 1352).

2       The Federal Circuit's caselaw addressing just how much specificity a patent must contain

3   in order to avoid this "black box" problem is ambiguous.  In *Ericsson*, for example, the court

4   rejected eligibility at step one where claims recited "standard components that are put to use via

5   [an] 'access controller' limitation" but did not "specify how the claim" achieved its intended

6   result.  955 F.3d at 1326.  In *Packet Intelligence*, however, the court conferred eligibility at step

7   one where the claims recited such seemingly vague components as a "parser subsystem," "flow-

8   entry memory," and "lookup engine," and so adequately "detail[ed] how" its intended result was

9   achieved.  965 F.3d at 1309.  The court has not offered clear guidance on how to distinguish the

10  inventive from the uninventive in the context of software components; *see infra*.

11      Here, Forescout plausibly asserts that the templates and profiles are entirely "abstract—

12  they are merely *information*, processed on generic computers, and automating paper access

13  credentials."  Reply at 8.  And both the patent itself and Fortinet's opposition brief are not

14  especially satisfactory in explaining just how the templates and profiles actually work.  But given

15  the early stage of this litigation, the Court cannot conclude, as a matter of law, that these

16  components' "ordered combination" was "well-understood, routine, and conventional to a skilled

17  artisan at the time of the patent," which is indeed "a factual determination."  *Berkheimer*, 881 F.3d

18  at 1369.[10]  Moreover, forbearing early adjudication is further warranted by the potential

19  informative value of claim construction and by the patent's dependent claims, which purportedly

20  recite inventive ways of creating profiles and templates (*e.g.*, by "defin[ing] the sponsors' limited

21  management by template type, time period, viewing or modifying authority, device type and

22  registration, and deleting or disabling authority").  *See* Opp'n at 5 (citing '314 Pat. at Clm. 3).

23      Although a close question, the Court declines to conclude, at this juncture, that the '314

24  Patent is invalid under § 101 as a matter of law.  This ruling is without prejudice to revisiting

25

26  ――――――――――――――
    [10] In fact, the Federal Circuit in *Berkheimer* reversed a grant of summary judgment to the
27  defendant where a patent specification's "claimed improvement increase[d] efficiency and
    computer functionality over the prior art systems."  *Id.*  This contention created "a genuine issue of
28  material fact" that made "summary judgment inappropriate" for those claim limitations that
    captured the alleged improvements.  *Id.*

United States District Court
Northern District of California

1    § 101 eligibility at a later stage.

2        2.    The '299 Patent

3        According to its specification, the '299 Patent "relates to computer communications

4    security, in particular, network access control (NAC) and its use for securing networks by

5    controlling the access of electronic devices connecting to those networks using remote access

6    connection methods such as Virtual Private Networks or Dialup services." '299 Pat. at 1:14-19.

7    Independent Claim 1 recites:

8            1. A system for out-of-band control of network access supporting
             multiple connections comprising:
9
             a network comprising a server device, at least one terminal device,
10           and a communication link between them;

11           at least one remote access device (RAD) comprising memory, and
             communicatively coupled to said network; and
12
             a Network Access Control Server (NACS) comprising memory,
13           controlling said network access, wherein said network access control
             is out of band and comprises:
14
                 identity management of said connections;
15               endpoint compliance of said connections;
                 and usage policy enforcement of said connections;
16
             wherein said enforcement is out of band and is accomplished on said
17           RAD, comprising communicating with said RAD to make real-time
             changes to its running configuration, whereby said enforcement is
18           vendor-independent and said system is RAD-agnostic;

19           said network access control comprising receiving a connect attempt
             to said network from a user device;
20
             said RAD authenticating connecting user to said NACS for said out
21           of band network control;

22           said NACS capturing RAD identification, location;

23           restricting access to said network by said user device with a network
             access filter (NAF) configured on said RAD;
24
             said RAD directing said client device to an agent;
25           on said user device, running said agent;
             said agent identifying client to said NACS;
26           modifying said NAF based on compliance; and monitoring post-
             connection of successful connections.
27

28    *Id.* at Clm. 1.

United States District Court
Northern District of California

1          Forescout argues that the claim is patent-ineligible at *Alice* step one because it is directed

2  to "the abstract idea of controlling access, in the context of a network using various computing

3  devices . . . and generic software . . . to implement generically-described network control

4  functionalities . . . ." Mot. at 12.  Forescout compares the '299 Patent's computing devices (*e.g.*,

5  the "Remote Access Device" and "Network Access Control Server") and network control

6  functionalities (*e.g.*, "identity management," "compliance," and "usage policy enforcement") with

7  the similarly nebulous components recited in *Ericsson* and *Dropbox* (*e.g.*, an "access manager,"

8  "access checker," and "access filter").  *Id.*  It also characterizes the claim's "network access filter"

9  as the kind of "black box" that was deemed incapable of conferring eligibility in *Dropbox*.  *Id.*

10          Fortinet describes the '299 Patent as another technological solution to a technological

11  problem, directed not to the abstract idea of network access control but "to a specific solution for

12  providing out-of-band, RAD-agnostic network access control through use of a NAF."  Opp'n at

13  10.[11]  The purported benefits of this system include reductions in "network congestion,"

14  "enhance[d] system security," and "increase[d] access control versatility."  *Id.* at 9.  Fortinet

15  analogizes the '299 Patent to the claimed advance in *Ancora*, where the Federal Circuit held that a

16  patent addressing the "vulnerability of license-authorization software to hacking" was not directed

17  to an abstract idea at step one.  *See* 908 F.3d at 1349.  Rather, it constituted "a non-abstract

18  computer-functionality improvement," achieved through "a specific technique that departs from

19  earlier approaches."  *Id.* at 1348.  Importantly, the claim "specifically identifie[d] how that

20  functionality improvement [was] effectuated in an assertedly unexpected way," *i.e.*, by using an

21  unconventional portion of a computer's memory to store a license record.  *Id.* at 1348-49.  Fortinet

22  also contends that the '299 Patent's recitation of a network access filter ("NAF") is not the "black

23  box" that Forescout makes it out to be, as it adequately "details how the NAF" controls network

24  access by user devices.  Opp'n at 10.

25

26  [11] Fortinet explains that computer networks faced the problem of a growing number of
27  "connections methods (*e.g.*, dedicated, directly wired, dial-up, wireless, and virtual private
networks (VPN)) that increase the need for complex access control and security."  *Id.* at 8 (citing
'299 Pat. at 1:23-38).  The solution achieved by the '299 Patent was "a system for providing out-
28  of-band (*i.e.*, out of the network data path) control of network access capable of supporting
multiple devices and connections."  *Id.*; *see also* '299 Pat. at 1:43-46.

The step-one inquiry again presents a close question.  The technical jargon of the '299 Patent is difficult to parse, and both the meaning and structure of the patent's key components—the NAF, the RAD, the NACS—remain vague.[12]  As discussed above, the distinction between the uninventive control features in *Prism*, *Ericsson*, and *Dropbox* (an "access manager," "access checker," etc.) and the inventive features in *Ancora* (a "license record") or *Packet Intelligence* (a "parser subsystem," "look-up engine," etc.) is less than clear.  Given these uncertainties, the question of whether the '299 Patent recites a technological solution to a technological problem with adequate specificity can be answered more confidently with additional facts and claim construction.  Forescout argues, that the '299 Patent merely recites a kind of Trojan horse for claiming the very idea of resource access.[13]  While the vagueness of the '299 Patent's components invites skepticism about its ultimate viability, the Court cannot yet decide on a Rule 12(b)(6) motion to dismiss, that the patent does not represent a technological solution to a technological problem.

   3.   The '662 Patent

According to its specification, the '662 Patent relates to "methods and systems for providing security in a communication network by selectively enabling various features for scanning user traffic streams."  '662 Pat. at 1:16-20.  "Illustrative" Claim 1 recites, Opp. at 11:

> 1. A method comprising:
>
> receiving, by a network security device within an enterprise network, an application protocol request directed to an external network that is originated by a client device associated with the enterprise network;
>
> determining, by the network security device, based on the application protocol request whether a network parameter of the external network is associated with a set of trusted networks; and

---

[12] In this, the '299 Patent resembles the claimed advance in *Prism*, where the court held ineligible a four-step process for network access control, that included: "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources."  696 Fed. Appx. at 1017.

[13] Another way of putting this point is that there appears little risk of Fortinet preempting the entire field of "controlling resources" through its recitation of the patent's key limitations.

selectively disabling, by the network security device, application of a subset of security features of a plurality of security features to be applied to network traffic exchanged between the client device and the external network while the client device is accessing the external network when a result of said determining is affirmative, wherein the subset of security features are selected based on a trust level associated with the external network.

'662 Pat. at Clm. 1.

a.   Step One

At *Alice* step one, Forescout again argues that the patent is directed to "the abstract idea of controlling access," in this case by "using unspecified security features on a network based on simply analyzing data." Mot. at 13. Once more, it analogizes to *Prism* and *Dropbox*: as in the latter case, the claims here "recite the use of a 'trust level,'" which the court in the earlier case held insufficient to constitute a technological solution. *Id.* at 14 (citing *Dropbox*, 815 Fed. Appx. at 533). And as in *Dropbox*, the claims here fail to explain "how the 'selectively disabling' (or any other claim step) is accomplished." Mot. at 14. Fortinet responds that the '662 Patent is not abstract because it solves "the technical problem" that occurs when security features are deployed indiscriminately to out-of-network traffic streams. Opp'n at 11 (citing '662 Pat. at 1:16-51). The patent "solved this problem by selectively disabling and enabling security features on traffic streams based on the trust level of the destination," with the resulting benefit of "higher system performance" through "optimize[d] utilization of the system resources." *Id.* (citing '662 Pat. at 12:55-66). Fortinet analogizes to the claimed advances recently deemed patent-eligible by the Federal Circuit in *Packet Intelligence* and *SRI International v. Cisco Systems, Inc. See id.* at 11-12.

Fortinet's analogies here are strained, as *Packet Intelligence* and *SRI* are firmly focused on the particularities of computer-network technology.[14] With the '662 Patent, in contrast, it is easy to generalize the claimed advance as a far broader "method of organizing human activity." *See*

---

[14] In *Packet Intelligence*, the court held that a claim "solve[d] a technological problem" "unique to computer networks," *i.e.*, "identifying disjointed connection flows in a network environment" to provide more "granular, nuanced, and useful classifications of network traffic." 965 F.3d at 1309-10. And in *SRI*, it held that "using a plurality of network monitors" and "integrating reports from the monitors" solved a specifically "technological problem arising in computer networks: identifying hackers or potential intruders into the network." 930 F.3d at 1303.

United States District Court
Northern District of California

1   *Alice*, 573 U.S. at 220.  As Forescout notes, "[r]elaxing security measures for trusted users is an

2   abstract and longstanding human activity, no different than waiving x-ray checkpoints for pilots

3   and flight attendants."  Reply at 5; *see also Dropbox*, 815 Fed. Appx. at 532 (denying eligibility to

4   "a nearly identical system for controlling access that 'provide[s] the resource only if the trust level

5   for the mode of identification is sufficient for the sensitivity level of the resource'").  Forescout

6   also makes the sensible point that the benefits to system performance claimed by Fortinet are

7   merely incidental to "*not* limiting access" and do not flow—as they must at step one—from "an

8   improvement in the functionality of the . . . network platform itself."  Reply at 6 (quoting

9   *Customedia*, 951 F.3d at 1364).  The '662 Patent is therefore directed to "the abstract idea of

10  disabling security for trusted communication," *id.*, reciting ineligible subject matter at *Alice* step

11  one.

12          b.      Step Two

13          Proceeding to *Alice* step two, Forescout emphasizes that the patent neither "require[s] any

14  special hardware . . . nor does [it] disclose any novel hardware"; instead, the hardware that it

15  mentions "is conventional and described in highly generic and functional terms."  Mot. at 19.

16  Indeed, Forescout shows that the specification identifies many well-known "network security

17  devices" (*e.g.*, "network firewalling, VPN, antivirus," etc.), "teaches the use of known client

18  computing devices" (*e.g.*, "fax machines, printers, scanners," etc.), and "further identifies multiple

19  known network types for use in the invention" (*e.g.*, "direct connect, Ethernet," etc.).  *Id.* at 19-20

20  (quoting '662 Pat. at 4:6-12, 5:13-20, 5:24-35).  "The patent also admits that security features

21  [recited in the claims] were known in 'conventional methods and systems.'"  *Id.* at 20 (quoting

22  '662 Pat. at 1:39-51).

23          As with the '299 Patent, Fortinet argues that the inventive concept of the '662 Patent is the

24  very idea to which it was directed at step one, *i.e.*, "selectively disabling a subset of security

25  features upon a determination that an external network is trusted."  Opp'n at 17.  But if the focus

26  of the claim is found to be a patent-ineligible abstract idea then that same idea cannot also

27  constitute an inventive concept at step two.  *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,

28  935 F.3d 1341, 1349 (Fed. Cir. 2019) (confirming that "the abstract idea that the claims are

United States District Court
Northern District of California

directed to" "cannot be an inventive concept"). Beyond this contention, Fortinet offers only the conclusory and "boilerplate" statement that "the ordered combination of the recited limitations is not generic and was neither routine nor conventional at the time of invention." Reply at 9; Opp'n at 17.

But Fortinet also contends that dependent claims 7, 9, and 15 "further limit and explain the content and structure of the step of receiving a trust identifier" and that the specification "describes how the specific claimed methods address shortcomings in 'conventional methods and systems.'" Opp'n at 17 (quoting '662 Pat. at 1:39-51, 1:55-58). While these allegations are perhaps little more than the boilerplate Fortinet elsewhere offers in arguing for the inventiveness of the '662 Patent, it again points out that these issues represent "exactly the type of fact question" that cannot be resolved on the pleadings. *See id.* (citing *Berkheimer*, 881 F.3d at 1368). Forescout makes the colorable argument that, in this case, the Court need only look "to the specification, which describes the [components] as either performing basic computer functions . . . or performing functions 'known' in the art." *In re TLI Commc'ns*, 823 F.3d at 613-14. This discussion underscores the potential value of claim construction and development of facts that may inform the § 101 analysis.

### 4. Conclusion

As the foregoing indicates, the Court remains skeptical of the subject-matter eligibility of Fortinet's asserted patents (especially the '662 Patent). But it cannot, at this juncture, hold that the '662 Patent invalid under § 101. This decision not to dismiss does not preclude Forescout from re-raising the § 101 issue at a later stage of litigation, such as at summary judgment. In fact, at the hearing on Forescout's motion to dismiss, counsel for Fortinet agreed that the outcome of claim construction might make it appropriate for the Court to revisit the eligibility questions addressed above. Docket No. 45 ("Tr.") at 22.

Accordingly, for the reasons stated above, Forescout's motion to dismiss is **DENIED** on subject-matter eligibility grounds without prejudice.

### B. Infringement

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses,

offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  Infringement may be either direct or indirect.  "[L]iability for indirect infringement of a patent requires direct infringement."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012).  A failure to sufficiently plead direct infringement therefore requires dismissal of indirect infringement claims, as well.  *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1143 (N.D. Cal. 2019).

       1.   <u>Direct Infringement</u>

To be liable for direct infringement, a device must practice all elements of a claim.  *See Drone Labs, LLC v. Dedrone Holdings, Inc.*, No. 19-cv-01281-EMC, 2019 WL 4345955, at *4 (N.D. Cal. Sept. 12, 2019) (dismissing complaint where plaintiff failed to allege infringement of all claim limitations).  As a result, "[a] direct infringement claim does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *AlterG, Inc.*, 388 F. Supp. 3d at 1142-43.  At the same time, however, "nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se." *Avago Techs.*, 2016 WL 1623920, at *4.  "[T]his District generally has not required detailed infringement theories until the time that infringement contentions are served, which is typically several months after a complaint has been filed." *Id.* (citing Patent L.R. 3-1).[15]

Forescout argues that Fortinet's complaint fails to plead direct infringement for two reasons.  First, "Fortinet fails to clearly identify who is the direct infringer"; second, the "Complaint is almost entirely devoid of factual allegations about the accused products."  Mot. at 21.  But its arguments here are unavailing under the aforementioned standard for infringement allegations.  Forescout acknowledges that the complaint focuses "on 'customers, purchasers, users and developers' of the accused products," even as it "fails to identify by name a single person or entity that allegedly is a direct infringer."  *Id.*  But, as the Federal Circuit has concluded, "[t]o state

---

[15] In accordance with Patent Local Rule 3-1, Fortinet submitted its infringement contentions to Forescout on August 27, 2020, well in advance of the hearing on Forescout's motion to dismiss. *See* Docket No. 46-2.

United States District Court
Northern District of California

a claim for indirect infringement . . . a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading*, 681 F.3d at 1336 (emphasis in original).  Forescout also acknowledges that, for each of the asserted patents, "Fortinet identifies the accused products," maps claim language onto the functionality of the infringing products, and cites two specific user manuals found on Forescout's website that allegedly enable direct infringement.  Mot. at 21-22.  In this District, allegations with this amount of detail suffice to survive a motion to dismiss.[16]

Fortinet has therefore established a plausible underlying claim of direct infringement against Forescout's "customers, purchasers, users and developers."  *Id.* at 21.  The Court therefore proceeds to analyze whether Fortinet has carried its additional burdens of pleading inducement and contributory infringement.

  2. <u>Inducement</u>

Under § 271(b) of the Patent Act, "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  Addressing the intent element of this provision, the Supreme Court has held that induced infringement "requires knowledge that the induced acts constitute patent infringement."  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  Thus, a plaintiff alleging inducement must show that the defendant "both (1) 'knew of the patent' *and* (2) 'knew as well that 'the induced acts constitute patent infringement.'"  *Google LLC v. Princeps Interface Techs.*, No. 19-cv-06566-EMC, 2020 WL 1478352, at *3 (N.D. Cal. Mar. 26, 2020) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).  The Supreme Court has further clarified that a defendant's "belief regarding validity cannot negate the scienter required under § 271(b)."  *Commil USA*, 135 S. Ct. at 1928.

Arguing, again, that Fortinet has failed to adequately allege direct infringement, Forescout

---

[16] For instance, this Court in *Avago Technologies* declined to dismiss a plaintiff's infringement allegations where they contained "sufficient specificity to provide at least some notice" of the basic nature of the claim to the defendant.  2016 WL 1623920, at *4.  And in *Software Research, Inc. v. Dynatrace LLC*, this Court again denied a motion to dismiss where the complaint "(i) sufficiently identified the accused product" and "(ii) sufficiently described the functionality of [the accused product] and tied it to the claim limitations in the patents-in-suit."  316 F. Supp. 3d 1112, 1132 (N.D. Cal. 2018).

also contends that Fortinet's inducement claim should fail because the complaint "fails to plead any factual allegations that Forescout knew its products were infringing and instead relies solely on knowledge of the patent by virtue of Fortinet's Complaint." Mot. at 24. Fortinet responds (1) that the Complaint adequately alleges direct infringement; (2) that "it is undisputed that Forescout knew of the Asserted Patents at least as of the filing of the Complaint"; and (3) that, "with regard to intent, the Complaint alleges that Forescout 'instruct[s], direct[s], and/or requir[es] others, including customers, purchasers, users and developers, to perform some of the steps of the method claims" via instructional materials on Forescout's website. Opp'n at 22 (quoting Compl. ¶¶ 39, 53, 67; 40, 54, 68).

As Fortinet has adequately pled direct infringement, *see supra*, and Forescout acknowledges that it had knowledge of the alleged infringement once the complaint was filed, the crux of the inducement question is whether Fortinet has set forth sufficient facts showing a "specific intent to encourage another's infringement." *Google*, 2020 WL 1478352, at *3. This Court has addressed the issue on several occasions. In *CAP Co., Ltd. v. McAfee, Inc.*, it dismissed an inducement action for failing to plead specific intent. The patentee in that case claimed inducement by alleging that the accused products were "sold directly to customers and used by them pursuant to [defendant's] user manual guides, and support articles," but made only "passing references" to the documents "without ever saying what those materials contain." *CAP*, No. 14-cv-05068-JD, 2015 WL 3945875, at *3, *5 (N.D. Cal. June 26, 2015). Similarly, in *Hypermedia Navigation v. Google LLC*, the Court reached the same conclusion where the plaintiff "only state[d] bald conclusions that an end user following [defendant's] instructions results in infringement." No. 18-cv-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019). And in *Google*, a patentee alleged that the company had induced infringement by "distributing the Accused Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities." 2020 WL 1478352, at *4. The Court again dismissed the case because, as in *CAP*, the patentee's allegations made only "general and imprecise references" to instructional materials without "ever say[ing] what those materials contain." *Id.*

Fortinet argues here that its "factual allegations go beyond those at issue" in *Google*

because the Complaint "provides 'specific instructional materials or services as examples' and explains how the public product materials support infringement." Opp'n at 23 (quoting *Google*, 2020 WL 1478352, at *5). As to the first contention, *Hypermedia* held that referencing "instructions in the links provided in the complaint," as Fortinet has done here, is insufficient by itself to survive a motion to dismiss. *See* 2019 WL 1455336, at *3. The court found that such evidence at most established that "an end user following [the] instructions in the links" commits infringement, but not that the defendant possessed the requisite "specific intent to encourage others' infringement." *Id.* Fortinet's second contention—that it "explains how the public product materials support infringement"—presents a closer question. Fortinet points to the complaint's repeated assertion that Forescout "instruct[s], direct[s], and/or requir[es] others . . . to perform some of the steps of the method claims." Opp'n at 22 (quoting Compl. at ¶¶ 39, 53, 67). But this statement reads more like a "formulaic recitation[] of the relevant legal standard[]" than a properly factual allegation. Mot. at 24.

In the section of its opposition devoted to direct infringement, however, Fortinet describes the function of Forescout's instructional materials. For example, "the Complaint describes how the '622 Accused Products infringe based on publicly-available product materials, *e.g.*, 'defin[ing] Legitimate Traffic based on source information such as source or destination address,' and 'disab[ling] features such as Threat Protection features based on traffic type,'" and provides URLs for those materials. Opp'n at 20 (quoting Compl. at ¶¶ 72-73). Fortinet analogizes these allegations to those in *Firstface Co., Ltd. v. Apple, Inc.*, which stated that the defendant "actively coached customers to use the accused devices in an infringing manner through online tutorials and similar instructional matters." No. 18-cv-02245-JD, 2019 WL 1102374, at *1 (N.D. Cal. Mar. 8, 2019). It also cites *Software Research, Inc. v. Dynatrace LLC*, where the Court held that "numerous references to public material on [the defendant's] website . . . give rise to an inference of specific intent." 316 F. Supp. 3d 1112, 1135 (N.D. Cal. 2018).

While Fortinet's inducement claim thus presents another close question, the Court concludes that Fortinet has set forth its allegations with enough detail and specificity to survive a motion to dismiss. The Court **DENIES** Forescout's motion with respect to Fortinet's inducement

United States District Court
Northern District of California

theory of infringement.  However, since Fortinet likely to amend its complaint (*see below*), it should provide greater clarity and specificity in its inducement allegations.

### 3.   Contributory Infringement

Under § 271(c) of the Patent Act, a plaintiff stating a claim for contributory infringement must show that the defendant sells (or offers to sell) a component of a patent, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  A plaintiff pleading contributory infringement must "provide factual underpinnings for its allegations" that the accused products are made or are especially adapted for an infringing use or "that there are no substantial noninfringing uses of the accused devices."  *Uniloc USA, Inc. v. Logitech, Inc.*, No. 18-cv-01304-LHK, 2018 WL 6025597, at *3 (N.D. Cal. Nov. 17, 2018).  A complaint that "merely paraphrases the contributory infringement statute and presents no factual underpinnings" fails to satisfy Rule 8 and must be dismissed.  *Google*, 2020 WL 1478352, at *5.

The analysis here overlaps somewhat with the inducement inquiry and the parties devote scant space in their briefs specifically to the contributory-infringement issue.  *See* Mot. at 24; Opp'n at 24; Reply at 14-15.  The key question is whether Fortinet sufficiently alleged that Forescout's accused products are, per § 271(c), "especially made or especially adapted" for an infringing use and are not "suitable for substantial noninfringing use."  Forescout identifies a single paragraph in the complaint (repeated for each asserted patent) that expressly deals with contributory infringement.  *See* Mot. at 24.  The paragraph states:

> Forescout further contributes to the infringement of one or more claims of the [asserted] patent . . . by offering to sell, selling, and/or importing into the United States a component of the [ ] Accused Products . . . knowing the same to be especially made or especially adapted for use in an infringement of the [asserted] patent . . . and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

*Id.* (quoting Compl. ¶¶ 42, 56, 70.  As Forescout argues, this language "simply parrots the legal test" for contributory infringement.

Fortinet counters by quoting from *Software Research*, which states that a "plaintiff need not prove that the accused products have no substantial non-infringing uses at the pleading stage."

United States District Court
Northern District of California

United States District Court
Northern District of California

Opp'n at 24 (quoting 316 F. Supp. 3d at 1316).  But that decision still requires a patentee to "alleg[e] one or more infringing uses of the accused products and alleg[e] that the products have *no other uses*," and it declined to dismiss only because the complaint "sufficiently suggest[ed] that there are *no other substantial uses* of [the accused product] that do not infringe."  316 F. Supp. 3d at 1316 (emphasis added).  Here, while the complaint as a whole perhaps implies that the accused products are "especially made or especially adapted for an infringing use," it fails to allege facts establishing that Forescout's products are not suitable for a substantial non-infringing use.  *See* Reply at 14.

The Court therefore **GRANTS** Forescout's motion to dismiss Fortinet's contributory-infringement claims, but gives Fortinet leave to amend.

### 4.    Willful Infringement

Section 284 of the Patent Act directs courts to award a prevailing claimant "damages adequate to compensate for the infringement" and "may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  Thus, "a finding of direct infringement is a prerequisite for willful infringement," *AlterG*, 388 F. Supp. 3d at 1143, and "willfulness is relevant [only] to damages calculations," *Google*, 2020 WL 1478352, at *2.  The Supreme Court has explained that "courts should generally only award enhanced damages . . . in 'egregious cases typified by willful misconduct.'"  *Id.* (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016)).  Such damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," *i.e.*, behavior that is "'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo*, 136 S. Ct. at 1932.  "Since *Halo*, courts in this District have required willful infringement claims to show both knowledge of the ... [p]atents *and* egregious' conduct in order to survive a motion to dismiss."  *Google*, 2020 WL 1478352, at *2 (internal quotation omitted).

In addition to repeating its argument that Fortinet has failed to plead direct infringement, Forescout asserts that the complaint "contains no factual allegations supporting that Forescout has engaged in 'egregious conduct.'"  Mot. at 25.  As Forescout points out, Fortinet's willful

United States District Court
Northern District of California

infringement claim "is pled in a single paragraph, repeated for each patent," declaring that "Forescout is acting recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the" asserted patents.  *Id.* (quoting Compl. at ¶  9).  Fortinet responds that its allegations concerning "pre-suit outreaches to Forescout concerning its patent portfolio" and the fact that "Forescout continues to sell the Accused Products and services" suffice to survive a motion to dismiss.  Opp'n at 24.

Based on this District's precedents, Forescout makes the stronger argument.  Fortinet relies primarily on *UPF Innovations, LLC v. Intrinsic ID, Inc.* for the proposition that (1) notifying an accused infringer of infringement and (2) alleging that the infringer continues to infringe after notification suffices to plead willfulness.  *See* Opp'n at 24 (quoting *UPF*, No. 19-cv-02711-VC, 2019 WL 4729601, at *1 (N.D. Cal. Sept. 17, 2019)).  It is true that under the reasoning of *UPF* Fortinet's allegations might suffice to survive Rule 12(b)(6).  But *UPF* is a brief, four-paragraph order that cites, in the relevant passage, to out-of-circuit caselaw decided before the Supreme Court's *Halo* decision—which clearly requires a showing of "egregious infringement behavior." *See id.*; *Halo*, 136 S. Ct. at 1932.

In *Finjan, Inc. v. Cisco Systems*, on the other hand, the Court dismissed the plaintiff's claims of willful infringement because it failed to allege facts showing either knowledge or egregious conduct by the defendant.  *See* No. 17-cv-00072-BLF, 2017 WL 2462423, at *12-15 (N.D. Cal. June 7, 2017).  There, Finjan alleged that Cisco was "willfully, wantonly, and deliberately engag[ing] in acts of infringement" because, "despite knowledge of Finjan's patent portfolio," it "ha[d] sold and continue[d] to sell the accused products." *Id.* at *7.  The Court held that such "conclusory allegations of knowledge and infringement" could not satisfy the requirement of "specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.'"  *Id.* at *15.  Similarly, in *Google* the Court dismissed the defendant's willful infringement claim for failing to "plead specific factual allegations of egregious conduct."  2020 WL 1478352, at *3.  Even though the patentee satisfied the knowledge requirement by "specifically nam[ing] the . . . patent at issue in the present suit" in its complaint, its allegations that Google's infringement was willful because it

implemented a design-around in response to the suit did "not establish egregious conduct." *Id.*

Fortinet's allegations here do not differ meaningfully from those found insufficient in either *Finjan* or *Google*. While Forescout had knowledge of its infringement once the complaint was filed, Fortinet does not adequately allege that Forescout's conduct was "egregious" under *Halo*. As a result, Forescout's motion to dismiss Fortinet's claim for willful infringement is **GRANTED** with leave to amend.

**V.**     **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Forescout's motion to dismiss on the grounds of subject-matter eligibility. It also **DENIES** Forescout's motion as to Fortinet's induced infringement claims. It **GRANTS** Forescout's motion as to Fortinet's contributory and willful infringement claims without prejudice, with leave to amend within thirty (30) days of the date of this order.

This order disposes of Docket No. 24.

**IT IS SO ORDERED**.

Dated: November 2, 2020

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California