1  KATHERINE VIDAL (SBN: 194971)
   *kvidal@winston.com*
2  MATTHEW R. MCCULLOUGH (SBN: 301330)
   *mrmccullough@winston.com*
3  WINSTON & STRAWN LLP
   275 Middlefield Road, Suite 205
4  Menlo Park, CA 94025
   Telephone:    (650) 858-6500
5  Facsimile:    (650) 858-6550

6  KIMBALL R. ANDERSON (*pro hac vice*)
   *kanderson@winston.com*
7  WINSTON & STRAWN LLP
   35 W. Wacker Drive
8  Chicago, IL 60601-9703
   Telephone:    (312) 558-5600
9  Facsimile:    (312) 558-5700

10  Attorneys for FORESCOUT TECHNOLOGIES, INC.

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  FORTINET INC., | Case No. 20-cv-03343-EMC |
| 15         Plaintiff and<br>        Counter-defendant | ANSWER TO AMENDED COMPLAINT AND<br>COUNTERCLAIM |
| 16      vs. | JURY TRIAL DEMANDED |
| 17  FORESCOUT TECHNOLOGIES, INC., | |
| 18         Defendant and<br>        Counter-plaintiff | |
| 19 | |

20

21           **FORESCOUT'S ANSWER TO AMENDED COMPLAINT**

22       1.     This is a civil action for patent infringement under the patent laws of the United

23  States, 35 U.S.C. § 1, *et seq.*

24       ANSWER NO. 1:       Admitted.

25       2.     This action seeks legal and equitable relief against Forescout's unlawful infringement

26  of Fortinet's United States Patent Nos. 8,458,314 (the '314 patent), 9,369,299 (the '299 patent),

27  9,948,662 (the '662 patent), 9,894,034 (the '034 patent), and 9,503,421 (the '421 patent) (together,

28

the Asserted Patents) generally relating to cybersecurity technology.

ANSWER NO. 2:     Admitted.

3.     Fortinet is a market-leading innovator of cybersecurity products, software, and services. Fortinet's research and development, innovation, and patents represent an enormous investment of time and capital in cybersecurity innovation over the past twenty years. Forescout has wrongfully incorporated Fortinet's intellectual property into its product offerings, and Forescout and its customers are infringing in a material way that goes to the heart of Forescout's business.

ANSWER NO. 3:     Denied.

**PRELIMINARY STATEMENT**

4.     Fortinet was founded in 2000 with a mission to innovate and develop substantive, multi-faceted cybersecurity technology to help protect its customers, which include some of the world's largest healthcare providers, educational institutions, and critical infrastructure and telecommunications providers. Over the last two decades, Fortinet has invested substantially in research and development to provide the best protection possible for its customers. Since bad actors attack organizations through different threat vectors, Fortinet's approach has been to develop a "security fabric" of broad defensive security innovations to protect its customers from hackers trying to breach their organizations.

ANSWER NO. 4:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

5.     As part of Fortinet's mission in providing cybersecurity protections, in 2018 it acquired Bradford Networks, Inc. (Bradford), a leading innovator in network access control (NAC) security technology. Bradford was founded in 2002 and was an early pioneer in certain security solutions, including NAC technology, and security for the Internet of Things (IoT) and guest management. Among other innovations, Bradford invented the first Adaptive Network Security (ANS) platform solution to dynamically adapt to changing security needs by automatically responding and securely provisioning network resources based on pre-established policies. Bradford's solutions uniquely identify and profile devices and users to provide visibility and control. Bradford's commercial solutions include its Network Sentry family of security products, which

1    feature built-in network security and policy management software in a hardware appliance (or set of

2    appliances), visibility into and control of users and devices on a campus network to prevent

3    unauthorized access and to keep the network secure, and management technology to ensure secure

4    network access for guest users and to simplify the administration of guest accounts.

5        ANSWER NO. 5:    Forescout lacks knowledge or information sufficient to form a belief

6    about the truth of this allegation, and therefore denies the same.

7        6.    While Fortinet and Bradford have remained steadfast in their commitment to

8    cybersecurity innovations, Defendant Forescout's business focus by contrast has changed over the

9    years. Forescout currently, like Fortinet, sells security technology to businesses. But rather than

10   innovate on its own, Forescout instead has followed Fortinet's and Bradford's technological

11   leadership. For example, long after Bradford introduced its Network Sentry and ANS platforms,

12   Forescout followed suit, releasing its CounterACT platform. Further, long after Bradford began

13   developing NAC technology, Forescout pivoted its business model and started to do the same.

14       ANSWER NO. 6:    Denied.

15       7.    The different strategic paths taken by Fortinet and Forescout have been reflected in

16   the market. Fortinet is now the top grossing cybersecurity company in many regions. Fortinet

17   recently announced its quarterly revenue increased 22% over the prior year, and it is generating a

18   profit, a testament to its innovation value-add to its customers. Relatedly, Fortinet's stock was one of

19   the best performing stocks of the last decade, and the market currently values Fortinet at

20   approximately $23 billion. With steady leadership since its founding—guided by its founders, both

21   engineers who have focused on security their entire careers—Fortinet has grown to over 7,000

22   employees and over 400,000 customers. Fortinet's focus on, and investment in, innovation and

23   development of industry-leading security products has led to both world-class security offerings and

24   a world-class patent portfolio, with over 600 issued U.S. patents and 149 additional patent

25   applications pending before the U.S. Patent and Trademark Office (USPTO).

26       ANSWER NO. 7:    Forescout lacks knowledge or information sufficient to form a belief

27   about the truth of this allegation, and therefore denies the same.

28       8.    Forescout, on the other hand, has floundered as it has tried to follow the lead of

3

companies like Fortinet and others, and Forescout's results and the market's reaction reflect this. Forescout has lost hundreds of millions of dollars and recently reported a material drop in its sales, a 24% year over year decrease, to $57 million this past quarter, with a greater loss, a loss of $60 million. Forescout's stock has struggled, and its current market valuation is about 6% of Fortinet's. And Forescout recently entered an agreement to be acquired by a private equity firm, firms that often cut spending by, and investment in, floundering acquired companies in areas such as research and development and customer support, thereby further stifling innovation and customer satisfaction, in an effort to improve the companies' profitability and cashflow.

ANSWER NO. 8:    Denied.

9.    In order to meet its responsibilities, Fortinet is committed to protecting and the defending intellectual property that it and Bradford worked so diligently to develop. Fortinet does not take litigation lightly; throughout its history, Fortinet has engaged in lawsuits to protect its intellectual property only on seldom occasions. Fortinet prefers to avoid litigation and instead to work in good faith with infringers to address any infringement.

ANSWER NO. 9:    Denied.

10.    Accordingly, on February 27, 2020, Fortinet attempted to initiate licensing discussions with Forescout, with the good faith objective to engage in reasonable business discussions in order to reach an amicable business agreement to resolve Forescout's infringement. Fortinet offered patent- and business-related information to Forescout designed to help Forescout analyze Fortinet's position and respond, including background regarding Fortinet and its patent portfolio and a detailed licensing proposal, and requested further discussions so that Fortinet could provide additional information.

ANSWER NO. 10:    Denied.

11.    Thereafter, Fortinet continued make substantial attempts to engage with Forescout, including correspondence on March 11, March 17, March 23, March 24, March 27, April 10, April 13, April 21, April 22, April 29, April 30, and May 7. Despite Fortinet's repeated efforts to address the infringement amicably and in good faith, Forescout has delayed progressing the discussions for almost three months. Throughout its communications with Forescout, Fortinet repeatedly requested

the opportunity to meet or speak with Forescout, offering to respond to any questions and provide additional detail on the call. Forescout, however, refused to have any conversation with Fortinet for over two months, repeatedly evading any discussion, and to-date Forescout has refused to have its internal business employees discuss this matter with business representatives of Fortinet. And it was only after many requests by Fortinet and months of delay and evasion by Forescout that Forescout ultimately gave Fortinet the opportunity to have a phone call, not with any business representatives of Forescout, but with Forescout's outside counsel, which did not occur until April 24, 2020.

ANSWER NO. 11:    Denied.

12.    On the April 24 call, Fortinet provided Forescout with additional substantive information, including the identification of specific patents that are infringed by Forescout's technology, and detail regarding Fortinet's prior licensing practices. Fortinet responded to Forescout's questions during that call. In response to Fortinet sharing information and asking questions, Forescout committed to respond the next week but then reneged on that commitment. As of the filing of this Amended Complaint, Forescout still has not indicated a willingness to remedy its unauthorized use of Fortinet's intellectual property, or given an indication that they are in fact engaging in good faith discussions to try to do so.

ANSWER NO. 12:    Denied.

13.    Fortinet is filing this lawsuit to protect its intellectual property and to stop the material infringement by Forescout.

ANSWER NO. 13:    Denied.

**THE PARTIES**

14.    Fortinet is a Delaware corporation with a principal place of business at 899 Kifer Road, Sunnyvale, California 94086.

ANSWER NO. 14:    Admitted.

15.    Upon information and belief, Forescout is a Delaware corporation with a principal place of business at 190 West Tasman Drive, San Jose, California 95134.

ANSWER NO. 15:    Admitted.

1

**JURISDICTION AND VENUE**

2        16.     This is a civil action for patent infringement pursuant to 35 U.S.C. § 271.

3        ANSWER NO. 16:      Admitted.

4        17.     This Court has subject matter jurisdiction over the matters asserted herein under 28

5    U.S.C. §§ 1331 and 1338(a), and 35 U.S.C. § 281, because this is a matter arising under the patent

6    laws of the United States, 35 U.S.C. §§ 1 *et seq*.

7        ANSWER NO. 17:      Admitted.

8        18.     Forescout is subject to this Court's personal jurisdiction because it resides, maintains

9    its headquarters, and does business in the state of California. In addition, upon information and

10   belief, Forescout has committed substantial acts of infringement giving rise to this action and

11   regularly conducts business within this judicial District, including by maintaining its headquarters in

12   this District. For example, Forescout has purposefully and voluntarily placed one or more of its

13   infringing products, as described below, into the stream of commerce with the expectation that these

14   infringing products will be used in this District. On information and belief, these infringing products

15   have been and continue to be used in this District.

16       ANSWER NO. 18:      Forescout admits it is subject to personal jurisdiction, but otherwise,

17   denied.

18       19.     This Court therefore has personal jurisdiction over Forescout.

19       ANSWER NO. 19:      Admitted.

20       20.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because

21   Forescout is subject to personal jurisdiction in this District; resides in this District; maintains its

22   headquarters in this District; regularly conducts business in this District; and committed and

23   continues to commit acts of patent infringement in this District.

24       ANSWER NO. 20:      Forescout admits venue is proper and it is subject to personal

25   jurisdiction in this case and admits it resides in this District, maintains headquarters in this District,

26   and regularly conducts business in this District, but otherwise, denied.

27

28

## **FACTUAL BACKGROUND**

### **Fortinet's History of Innovation**

21.     Founded in 2000 by serial entrepreneurs and technology visionaries Ken and Michael Xie, Fortinet is one of the world's leading providers and innovators of network security technologies, including deep security protection technology, with tens of thousands of customers worldwide including enterprises, carriers, data centers, distributed offices, and governments. Fortinet currently employs over 7,000 employees around the world—including thousands of engineers—and has shipped over five million units to over 400,000 customers globally. Fortinet's inventions form the core of modern network, fabric, and cloud security technology and enable secure business communications around the world.

ANSWER NO. 21:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

22.     Over the past 20 years, Fortinet has invested substantial resources researching and developing its technologies related to its cybersecurity products and services through the expenditure of considerable employee work hours and company resources. Fortinet's research and development has led to numerous innovative products in the network security market as well as valuable intellectual property. Fortinet's industry-leading research and development efforts—together with selective acquisitions—have resulted in a portfolio of over 600 patents issued in the United States, with another 149 U.S. patent applications pending.

ANSWER NO. 22:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

23.     Since its founding, one of Fortinet's core focuses has been designing, developing, and improving network security systems to protect businesses from cyber-attacks. Fortinet's FortiGate appliances, for example, target content-based cyber threats from email and web traffic. By integrating a broad suite of deep security protection technology, Fortinet helps protect its customers with its comprehensive security solutions. Fortinet has won dozens of awards for its network security innovations,[1] and more recently in 2019 Fortinet was recognized as being a "Magic

---

[1] *E.g.*, *Fortinet Industry Awards*, https://www.fortinet.com/corporate/about-us/industry-awards.html.

1  Quadrant" Leader for Network Firewalls.[2]

2  ANSWER NO. 23:  Forescout lacks knowledge or information sufficient to form a belief

3  about the truth of this allegation, and therefore denies the same.

4  24.  Bradford Networks developed a policy-based security automation and orchestration

5  platform that enables discovery of endpoint and network infrastructure devices, including, but not

6  limited to the FortiGate, FortiSwitch, FortiAP, and FortiWLC. Bradford Network's solutions provide

7  contextual awareness for implementing dynamic network access control, and provide the ability to

8  contain a cyber breach through automated threat response. By automating the complex threat triage

9  process and rapidly responding to security alerts from security solutions like FortiGate, FortiSIEM

10  and FortiAnalyzer, Bradford Network's Network Sentry reduces the risk of unauthorized access to

11  corporate assets and intellectual property, and reduces the impact, time, and costs of containing

12  cyber threats.

13  ANSWER NO. 24:  Forescout lacks knowledge or information sufficient to form a belief

14  about the truth of this allegation, and therefore denies the same.

15  25.  The proliferation of IoT devices has made it necessary for organizations to improve

16  their visibility into what is attached to their networks. They need to know every device and every

17  user accessing their networks. While IoT devices enable digital transformation initiatives and

18  improve efficiency, flexibility, and optimization, they are inherently untrustworthy, with designs that

19  prioritize low-cost over security. Accordingly, the IoT revolution has raised a new challenge for

20  network owners. How can one see and protect against a myriad of devices showing up on the

21  network?

22  ANSWER NO. 25:  Forescout lacks knowledge or information sufficient to form a belief

23  about the truth of this allegation, and therefore denies the same.

24  26.  Network Access Control has come back to the forefront of security solutions to

25  address that challenge. Fortinet has a solution for these problems, FortiNAC. FortiNAC provides

26

27  _____

[2] *Fortinet Recognized as a Leader in the Gartner Magic Quadrant for Network Firewalls*, Fortinet
28  (Sep. 18, 2019), https://www.fortinet.com/corporate/about-us/newsroom/press-releases/2019/leader-
10th-time-gartner-mq-network-firewalls.html.

network visibility to see devices connected to a network as well as the ability to control those devices and users, including dynamic, automated responses.

ANSWER NO. 26:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

27.     This technology that was originally developed to assist with bring-your-own-device (BYOD) policies, and ensure devices met the endpoint compliance policies of the institutions allowing BYOD, is now getting renewed focus as a means to safely accommodate headless IoT devices in the network. FortiNAC enables three key capabilities to secure IoT devices:

- Network visibility to see every device and user as they attempt to join the network;
- Network control to limit where devices can go on the network; and
- Automated response to speed the reaction time to events from days to seconds.

ANSWER NO. 27:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

28.     Collectively, these capabilities provide tools that network owners need to secure a world that is embracing IoT. The FortiNAC solution protects wireless, wired, and VPN networks with a centralized architecture that enables distributed deployments with automated responsiveness.

ANSWER NO. 28:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

29.     As large organizations continue to see high growth in network traffic and the number of devices and users accessing their networks, the risk of breach increases exponentially. According to a recent Forrester study, 82 percent of companies surveyed are unable to even identify all devices accessing their networks. The integration of Bradford Networks' technology with Fortinet's security fabric enables large enterprises with visibility, micro-segmentation and access control technology to help contain threats and block untrusted devices from accessing the network.

ANSWER NO. 29:     Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

**THE ASSERTED PATENTS**

30.     The '314 patent, issued on June 4, 2013, is titled "System and method for offloading

9

1  IT network tasks." Frank D. Andrus, Paula Jane Dunigan, Todd R. Wohlers, Paul D. Playdon, and

2  Alan R. Hackert are the named inventors. Fortinet is the current owner by assignment of the '314

3  patent. A true and correct copy of the '314 patent is attached hereto as Exhibit A.

4  ANSWER NO. 30:   Admitted, except as to Fortinet's alleged ownership of the patent, for

5  which Forescout lacks knowledge or information sufficient to form a belief about the truth of this

6  allegation, and therefore denies the same.

7  31.   The '314 Patent relates to "network management [and], in particular, offloading

8  Administrator information technology (IT) network tasks to people such as business/department

9  heads or automated mechanisms within the system." '314 Pat. at 1:11-15. The invention solves

10  problems faced by network administrators (admins) tasked with configuring, adding, and granting

11  network permissions to a variety of different endpoint devices. *Id.* at 1:19-28. Per the specification,

12  given the influx of various users and devices to business networks, admins need to "be able to

13  dynamically identify, manage and secure a wider variety of devices and users on the network than

14  was previously required." *Id.* at 1:36-41. The specification also notes that changing organizational

15  boundaries have rendered existing static siloed security policies less effective. *Id.* at 1:51-57. To

16  solve these technical problems, the inventors created specific, unique systems and methods for

17  delegating limited admin control to non-IT personnel such as department heads ("sponsors" in the

18  lexicon of the patent). *Id.* at 1:65-2:10. Limited control is created through the use of sets of

19  specifications (profiles) that define the scope and limitations of sponsors' control, and sets of rules

20  (templates) that "define the scope of the IT Task, limitations of the endpoint and provide an

21  association between endpoint and Sponsor." *Id.* The claims of the '314 Patent contain inventive

22  concepts, including creation of sponsor profiles; creation of templates; and establishing an

23  association between the sponsor profiles and templates before granting limited sponsor control.

24  These unique features were neither well-understood, routine, nor conventional. Indeed, the

25  specification speaks to the need for such an innovation in light of the fact that, in existing systems,

26  admins and IT departments bore the weight of configuring and adding various network items on their

27  own and struggled to do so. *Id.* at 1:19-32. Additionally, the ordered combination of the creating and

28  associating profiles and templates steps is not generic and was neither routine nor conventional at the

10

time of invention.

ANSWER NO. 31:     Denied.

32.     The '299 patent, issued on June 14, 2016, is titled "Network access control system and method for devices connecting to network using remote access control methods." Eric P. Dupont, Seshakrishnan Srinivasan, and Frank D. Andrus are the named inventors. Fortinet is the current owner by assignment of the '299 patent. A true and correct copy of the '299 patent is attached hereto as Exhibit B.

ANSWER NO. 32:     Admitted, except as to Fortinet's alleged ownership of the patent, for which Forescout lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies the same.

33.     The '299 Patent relates to "computer communications security, in particular, network access control (NAC) and its use for securing networks by controlling the access of electronic devices connecting to those networks using remote access connection methods such as Virtual Private Networks or Dialup services." '299 Pat. at 1:14-19. The specification explains that computer communications commonly involve multiple connections methods (*e.g.*, dedicated, directly wired, dial-up, wireless, and virtual private networks (VPN)) that increase the need for complex access control and security. *Id.* at 1:23-27. It further explains that while NAC tools were available, "[e]xisting solutions rely solely on user authentication to determine network access." *Id.* at 1:28-38. Accordingly, there was a need for a more versatile network access control system. *Id.* at 1:38-46. The invention involves a system for providing out-of-band (*i.e.*, out of the network data path) control of network access capable of supporting multiple devices and connections, which enables out-of-band edge enforcement and network access control down to the point of access. *Id.* at 1:55-54. The claims of the '299 Patent contain inventive concepts, including out-of-band, RAD-agnostic network access control. Prior systems' reliance on user authentication limited "[m]anagement and control of both remote access users and devices" and failed to "protect the internal network by ensuring devices meet the policy requirements of a particular company network and that network services are provisioned appropriately for a device." *Id. at* 1:36-42. The invention of the '299 Patent solved this problem in a non-conventional way, by providing a specific system for out-of-band control of

1  network access. *Id.* at 1:55-54. Moreover, the ordered combination of the claimed steps is not

2  generic and was neither routine nor conventional at the time of invention.

3        ANSWER NO. 33:    Denied.

4        34.    The '662 patent, issued on April 17, 2018, is titled "Providing security in a

5  communication network." Robert A. May is the named inventor. Fortinet is the current owner by

6  assignment of the '662 patent. A true and correct copy of the '662 patent is attached hereto as

7  Exhibit C.

8        ANSWER NO. 34:    Admitted, except as to Fortinet's alleged ownership of the patent, for

9  which Forescout lacks knowledge or information sufficient to form a belief about the truth of this

10  allegation, and therefore denies the same.

11        35.    The '662 Patent relates to "methods and systems for providing security in a

12  communication network by selectively enabling various features for scanning user traffic streams."

13  '662 Pat. at 1:16-20. The specification explains that while some Uniform Resource Locators (URLs)

14  are considered trusted, others may be malicious. *Id.* at 1:22-38. In "conventional methods and

15  systems," every out-of-network traffic stream received indiscriminate treatment without regard to

16  trust level. *Id.* at 1:39-43. This practice of always deploying security features caused the technical

17  problem of "consum[ing] a considerable amount of system resources and [] ha[d] an impact on the

18  system performance." *Id.* at 1:49-51; *see also id.* at 7:57-59. The inventor solved this problem by

19  selectively disabling and enabling security features on traffic streams based on the trust level of the

20  destination. *Id.* at 1:55-58. The claims of the '662 Patent contain inventive concepts, including

21  selectively disabling a subset of security features upon a determination that an external network is

22  trusted. The solution had noted benefits over then-existing systems: "[S]electively disabling some of

23  the security features for trusted networks optimizes utilization of the system resources in order to

24  gain higher system performance." *Id.* at 12:63-66. The '662 Patent addressed the problem of poor

25  system performance due to indiscriminate enabling of security features. '662 Pat. at 7:57-62. The

26  claimed invention solved this problem in a non-conventional way, selectively disabling security

27  features for traffic with trusted destinations. *Id.* at 1:55-58. The specification describes how the

28  specific claimed methods address shortcomings in "conventional methods and systems." *Id.* at 1:39-

1    51, 1:55-58. Plus, the ordered combination of the recited limitations is not generic and was neither

2    routine nor conventional at the time of invention.

3         ANSWER NO. 35:    Denied.

4         36.    The '034 Patent, issued on February 13, 2018, is titled "Automated Configuration of

5    Endpoint Security Management." Michael Xie, Robert A. May, and Jinhai Yang are the named

6    inventors. Fortinet is the current owner by assignment of the '034 Patent. A true and correct copy of

7    the '034 Patent is attached hereto as Exhibit D.

8         ANSWER NO. 36:    Admitted, except as to Fortinet's alleged ownership of the patent, for

9    which Forescout lacks knowledge or information sufficient to form a belief about the truth of this

10   allegation, and therefore denies the same.

11        37.    The '034 Patent relates to "[s]ystems and methods for managing configuration of a

12   client security application based on a network environment in which the client device is operating."

13   '034 Pat. at Abstract. The specification explains that it is a challenge in network security

14   management to keep a network secure while allowing many different devices to connect to the

15   network. Id. at 1:23-25. When users use their own devices, they may connect to a corporate network

16   from multiple gateways or entry points, such as through a VPN or through a direct connection to the

17   network from any of a number of locations. Id. at 1:36-44. When a client security application is used

18   to manage these user devices, there is a need for a convenient way to configure this client security

19   application based on information regarding the network environment in which the user device is

20   operating. Id. at 1:50-54. The inventors solved this problem by having the client security application

21   determine its network connection state with respect to a private network, select a configuration based

22   on this, and launch functionality based on its determination and selected configuration. Id. at 1:56-

23   60. This functionality could include web content filtering, anti-virus scanning, and network access

24   logging. Id. at 11:35-50. The claims of the '034 Patent include inventive concepts, including a client

25   security application which determines a network connection state of the client device with respect to

26   a private network, and which configures itself and launches security functions based on this

27   determination. Id. Prior solutions typically required users to change the configuration of their device

28   manually when changing networks or access methods in order for the corresponding functions of the

1   client security application to be launched. *Id.* at 1:44-50. The invention of the '034 Patent solved this

2   problem in a non-conventional way, addressing the shortcomings in the conventional client security

3   application. Moreover, the ordered combination of the claimed steps is not generic and was neither

4   routine nor conventional at the time of invention.

5          ANSWER NO. 37:     Denied.

6          38.    The '421 Patent, issued on November 22, 2016, is entitled "Security Information and

7   Event Management." Doug Liang is the named inventor. Fortinet is the current owner by assignment

8   of the '421 Patent. A true and correct copy of the '421 Patent is attached hereto as Exhibit E.

9          ANSWER NO. 38:     Admitted, except as to Fortinet's alleged ownership of the patent, for

10  which Forescout lacks knowledge or information sufficient to form a belief about the truth of this

11  allegation, and therefore denies the same.

12         39.    The '421 Patent relates to "[s]ystems and methods … for conducting work flows by

13  an SIEM device to carry out a complex task automatically." '421 Pat. at Abstract. The specification

14  explains that a large computer network may comprise hundreds of client computers, servers, and

15  other network devices located in different places, including multiple security devices deployed to

16  protect the network from attacks. *Id.* at 1:21-25. Centralized devices, often called Security

17  Information and Event Management (SIEM) devices, may be deployed to aggregate results of tasks

18  performed by the various security devices on a network and alert network administrators if

19  necessary. *Id.* at 1:30-35. However, problems arise in that the tasks conducted by these disparate

20  security devices are independent, may require different parameters, may produce results that cannot

21  be transferred to another task, and may require different configurations depending on the device

22  carrying out the task and its manufacturer. *Id.* at 1:36-35. Thus, the inventor of the '421 Patent

23  identified that there was a need for improved SIEM devices that may schedule multiple complex

24  tasks of various security devices to achieve comprehensive management of multiple security

25  devices. *Id.* at 1:43-55. The invention of the '421 Patent solves this in a non-conventional way by

26  having the SIEM configured to allow users to create a workflow that includes multiple security tasks

27  to be performed by one or more security devices, performing these tasks, and collecting the results of

28  these tasks after they are performed. *Id.* at 1:50-60; 18:17-42. The claims of the '421 Patent include

14

inventive concepts, such as an SIEM work flow, scheduling and performing security tasks on one or more security devices, and collecting the results of these tasks after they are performed. *Id.* at 18:17-42. Further, the ordered combination of the recited limitations is not generic and was neither routine nor conventional at the time of invention.

ANSWER NO. 39:    Denied.

## ACTS GIVING RISE TO THIS ACTION

40.    The allegations provided below are exemplary and without prejudice to Fortinet's infringement contentions. In providing these allegations, Fortinet does not convey or imply any particular claim constructions or the precise scope of the claims. Fortinet's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

ANSWER NO. 40:    Denied.

41.    On information and belief, the infringing Forescout products include, but are not limited to, ForeScout CounterACT, Forescout CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout CounterACT Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT-10000), Forescout 5100 Series (5110, 5120, 5140 and 5160), Forescout SecureConnector, Forescout Network Module, Forescout's HPS Inspection Engine and its Windows Applications Plugin, the eyeExtend, eyeControl, and eyeManage components of the ForeScout/CounterACT platform, and related products and services identified below for each Asserted Patent in Counts I-V (Accused Products).

ANSWER NO. 41:    Denied.

42.    As detailed further below, each element of at least one claim of each of the Asserted Patents is literally present in the Accused Products, or is literally practiced by the method performed using the Accused Products. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

ANSWER NO. 42:    Denied.

## COUNT I –INFRINGEMENT OF U.S. PATENT NO. 8,458,314

43.    Fortinet incorporates by reference and re-alleges all the foregoing paragraphs of this

15

1    Amended Complaint as if fully set forth herein.

2           ANSWER NO. 43:    Forescout incorporates by reference and realleges its answers to the

3    Amended Complaint as if fully set forth herein.

4           44.    On information and belief, Forescout has induced or contributed to the infringement

5    of at least claim 1 of the '314 patent by making, using, selling, offering for sale, and/or importing

6    into the United States, without authority or license, for example, ForeScout CounterACT, Forescout

7    CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout

8    CounterACT Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT-10000),

9    Forescout 5100 Series (5110, 5120, 5140 and 5160), Forescout SecureConnector, and Forescout

10   Network Module (collectively, the '314 Accused Products). The '314 Accused Products are non-

11   limiting examples that were identified based on publicly available information, and Fortinet reserves

12   the right to identify additional infringing activities, products and services, including, for example, on

13   the basis of information obtained during discovery.

14          ANSWER NO. 44:    Denied.

15          45.    Forescout has induced and continues to induce infringement of at least claim 1 of the

16   '314 Patent under 35 U.S.C. § 271(b).

17          ANSWER NO. 45:    Denied.

18          46.    Forescout indirectly infringes the '314 Patent pursuant to 35 U.S.C. § 271(b) by

19   instructing, directing and/or requiring others, including customers, purchasers, users and developers,

20   to perform some of the steps of the method claims, either literally or under the doctrine of

21   equivalents, of the '314 Patent, where all the steps of the method claims are performed by either

22   Forescout or its customers, purchasers, users and developers, or some combination thereof.

23   Forescout knew or was willfully blind to the fact that it was inducing others, including customers,

24   purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with

25   Forescout, one or more method claims of the '314 Patent, including claim 1 through use of, for

26   example, ForeScout CounterACT.

27          ANSWER NO. 46:    Denied.

28          47.    Forescout knowingly and actively aided and abetted the direct infringement of the

16

'314 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '314 Accused Products. Such instructions and encouragement included, but are not limited to, advising third parties to use the '314 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '314 Patent, and by advertising and promoting the use of the '314 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '314 Accused Products in an infringing manner. For example, Forescout maintains a Resources website with support, technical documentation, training, and blogs with information about operating Forescout's products (available at https://www.forescout.com/company/resources/).

ANSWER NO. 47:    Denied.

48.    Forescout's technical documentation evidences specific intent, at least as of the filing of the original Complaint in this action (Original Complaint), to encourage infringement of the '314 Patent. Forescout's CounterACT Admin Guide (https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf), Guest Management for Operators How-to Guide (https://www.forescout.com/company/resources/guest-management-operators-how-to-guide-8-0/), and Guest Management Portal for Sponsors How-to Guide (https://www.forescout.com/company/resources/guest-management-portal-sponsors-how-to-guide-8-0/) instruct users on how to infringe the claims of '314 Patent. These materials actively coach users to use the '314 Accused Products in an infringing manner. Indeed, these materials instruct customers to infringe each and every element of at least claim 1 of the '314 Patent and, on their own, fully support Fortinet's allegations of infringement.

ANSWER NO. 48:    Denied.

49.    By at least the filing of the Original Complaint, Fortinet disclosed the existence of the '314 patent and identified at least some of Forescout's and others' activities that infringe the '314 patent. Thus, based on this disclosure, Forescout had knowledge of the '314 patent, including claim 1, and that its activities infringe the '314 patent, including claim 1, since at least the filing of the Original Complaint. Based on Fortinet's disclosures, Forescout has also known or should have known since at least the filing of the Original Complaint that its customers, distributors, suppliers,

1 and other purchasers of the '314 Accused Products are infringing the '314 patent, including claim

2         ANSWER NO. 49:    Denied.

3         50.      On information and belief, Forescout further contributes to the infringement of one or

4 more claims of the '314 patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing

5 into the United States a component of the '314 Accused Products, or a material or apparatus for use

6 in practicing a process claimed in the '314 patent, that constitutes a material part of the invention,

7 knowing the same to be especially made or especially adapted for use in an infringement of the '314

8 patent, including claim 1, and is not a staple article or commodity of commerce suitable for

9 substantial noninfringing use. The Forescout CounterACT software as sold by Forescout includes

10 software components (*e.g.*, the Guest Management Portal) which are programmed to be used to

11 infringe the methods for delegating limited admin control through the use of sets of profiles and

12 templates. These software components, sold as part of CounterACT, are especially made for an

13 infringing use, and have no substantial noninfringing use other than to practice the claimed methods.

14         ANSWER NO. 50:    Denied.

15         51.      The '314 Accused Products meet all the limitations of at least claim 1 of the '314

16 patent. Specifically, claim 1 of the '314 patent recites: a method for control of computer network

17 resources connected to a computer network supporting network endpoints by delegating control from

18 a network administrator to at least one sponsor comprising the steps of: creating templates for users

19 and devices of said computer network by said network administrator at an administrator account on a

20 workstation connected to said computer network; creating profiles used to control said resources of

21 said computer network; associating said templates with said profiles; creating at least one said

22 sponsor by said network administrator; associating, by said network administrator, at least one of

23 said profiles with said sponsor; delegating, by said network administrator, network management

24 administrative privileges to said sponsor, transferring responsibility for said users and devices from

25 said network administrator to said sponsor when said template of said users and devices is associated

26 with said profile of said sponsor; and controlling of said computer network resources by said

27 sponsor, using said templates assigned to said sponsor by said network administrator, wherein said

28 sponsor is constrained by said network administrator by said at least one associated profile, said

1    sponsors not having network management administrative privileges over said network administrator.

2           ANSWER NO. 51:    Denied.

3           52.    The use of the '314 Accused Products constitutes practicing the claimed invention of

4    the '314 Patent because their use amounts to a method of delegating control of computer network

5    access from network administrators to sponsors. The network administrator creates templates and

6    profiles that associate network users with a sponsor and controlling use of network resources. Using

7    the '314 Accused Products, a network administrator delegates network management administrative

8    privileges to a sponsor, and transfers responsibility for particular users to the sponsor. For example,

9    the '314 Accused Products are Network Access Control products, creating templates, profiles for

10   devices and users and creating sponsors for guest users.

11          ANSWER NO. 52:    Denied.

12          53.    This description is based on publicly available information and a reasonable

13   investigation of the structure and operation of the '314 Accused Products. Exemplary materials that

14   describe infringement through the use of '314 Accused Products can be found on Forescout's

15   website: https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-

16   8.0.1.pdf, https://www.forescout.com/company/resources/guest-management-operators-how-to-

17   guide-8-0/.

18          ANSWER NO. 53:    Denied.

19          54.    As a result of Forescout's unlawful activities, Fortinet has suffered and will continue

20   to suffer irreparable harm for which there is no adequate remedy at law, especially given that

21   Fortinet and Forescout both compete in the security software space.

22          ANSWER NO. 54:    Denied.

23          55.    Forescout's continued infringement of the '314 Patent causes harm to Fortinet in the

24   form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities,

25   inadequacy of money damages, and direct and indirect competition. Monetary damages are

26   insufficient to compensate Fortinet for these harms. Accordingly, Fortinet is entitled to injunctive

27   relief.

28          ANSWER NO. 55:    Denied.

56.     Forescout's infringement of the '314 Patent has furthermore injured and continues to injure Fortinet in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Fortinet would have made but-for Forescout's acts of infringement.

ANSWER NO. 56:     Denied.

57.     Despite outreach from Fortinet seeking to inform Forescout of its infringement of Fortinet patents and discuss potential remedies, Forescout refused to participate with any discussion with Fortinet for months, while continuing to infringe by selling the Accused Products and services. This refusal to received [sic] information related to its infringement constitutes egregious conduct by Forescout and willful blindness to its own infringement, making this an exceptional case and justifying an award to Fortinet of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

ANSWER NO. 57:     Denied.

**COUNT II –INFRINGEMENT OF U.S. PATENT NO. 9,369,299**

58.     Fortinet incorporates by reference and re-alleges all the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

ANSWER NO. 58:     Forescout incorporates by reference and realleges its answers to the Amended Complaint as if fully set forth herein.

59.     On information and belief, Forescout has induced or contributed to the infringement of at least claim 1 of the '299 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority or license, for example, ForeScout CounterACT, Forescout CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout CounterACT® Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT-10000), Forescout 5100 Series (5110, 5120, 5140 and 5160), Forescout SecureConnector, and Forescout Network Module (collectively, the '299 Accused Products). The '299 Accused Products are non-limiting examples that were identified based on publicly available information, and Fortinet reserves the right to identify additional infringing activities, products and services, including, for example, on the basis of information obtained during discovery.

ANSWER NO. 59:     Denied.

60. Forescout has induced and continues to induce infringement of at least claim 1 of the '299 Patent under 35 U.S.C. § 271(b).

ANSWER NO. 60:    Denied.

61. Forescout indirectly infringes the '299 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to use the system of the claims, either literally or under the doctrine of equivalents, of the '299 Patent, where all components of the system of the claims are provided by either Forescout or its customers, purchasers, users and developers, or some combination thereof. Forescout knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users and developers, to infringe by using, either themselves or in conjunction with Forescout, they system of one or more claims of the '299 Patent, including claim 1, through use of, for example, ForeScout CounterACT.

ANSWER NO. 61:    Denied.

62. Forescout knowingly and actively aided and abetted the direct infringement of the '299 Patent, including claim 1, by instructing and encouraging its customers, purchasers, users and developers to use the '299 Accused Products. Such instructions and encouragement included, but are not limited to, advising third parties to use the '299 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '299 Patent, and by advertising and promoting the use of the '299 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '299 Accused Products in an infringing manner. For example, Forescout maintains a Resources website with support, technical documentation, training, and blogs with information about operating Forescout's products (available at https://www.forescout.com/company/resources/).

ANSWER NO. 62:    Denied.

63. Forescout's technical documentation evidences specific intent, at least as of the filing of the Original Complaint, to encourage infringement of the '299 Patent. Forescout's CounterACT Installation Guide (https://www.forescout.com/counteract8-installguide/), CounterACT Admin Guide (https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-

21

1   8.0.1.pdf), VPN Concentrator Plugin Configuration Guide

2   (https://www.forescout.com/company/resources/vpn-concentrator-plugin-configuration-guide-4-1/),

3   CounterACT Endpoint Module HPS Inspection Engine Configuration Guide

4   (https://www.forescout.com/company/resources/hps-inspection-engine-configuration-guide-11-0/),

5   and SecureConnector How-To Guide (https://www.forescout.com/company/resources/deploying-

6   secureconnector-as-a-service-as-part-of-a-machine-image-how-to-guide-8-1/) instruct users on how

7   to infringe the claims of [the] '299 Patent. These materials actively coach users to use the '299

8   Accused Products in an infringing manner. Indeed, these materials instruct customers to infringe

9   each and every element of at least claim 1 of the '299 Patent and, on their own, fully support

10   Fortinet's allegations of infringement.

11       ANSWER NO. 63:    Denied.

12       64.    By at least the filing of the Original Complaint, Fortinet disclosed the existence of the

13   '299 patent and identified at least some of Forescout's and others' activities that infringe the '299

14   patent, including claim 1. Thus, based on this disclosure, Forescout had knowledge of the '299

15   patent and that its activities infringe the '299 patent, including claim 1, since at least the filing of the

16   Original Complaint. Based on Fortinet's disclosures, Forescout has also known or should have

17   known since at least the filing of the Original Complaint that its customers, distributors, suppliers,

18   and other purchasers of the '299 Accused Products are infringing the '299 patent, including claim 1.

19       ANSWER NO. 64:    Denied.

20       65.    On information and belief, Forescout further contributes to the infringement of one or

21   more claims of the '299 patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing

22   into the United States a component of the '299 Accused Products, or a material or apparatus for use

23   in practicing a process claimed in the '299 patent, that constitutes a material part of the invention,

24   knowing the same to be especially made or especially adapted for use in an infringement of the '299

25   patent, including claims 1 and 11, and is not a staple article or commodity of commerce suitable for

26   substantial noninfringing use. The Forescout CounterACT software as sold by Forescout includes

27   software components (*e.g.*, the VPN Concentrator Plugin) which are programmed to be used to

28   infringe the methods for out-of-band control of network access. These software components, sold as

1  part of CounterACT, are especially made for an infringing use, and have no substantial noninfringing

2  use other than to practice the claimed methods.

3      ANSWER NO. 65:    Denied.

4      66.    The '299 Accused Products meet all the limitations of at least claim 1 of the '299

5  patent. Specifically, claim 1 of the '299 patent recites: A system for out-of-band control of network

6  access supporting multiple connections comprising: a network comprising a server device, at least

7  one terminal device, and a communication link between them; at least one remote access device

8  (RAD) comprising memory, and communicatively coupled to said network; and a Network Access

9  Control Server (NACS) comprising memory, controlling said network access, wherein said network

10  access control is out of band and comprises: identity management of said connections; endpoint

11  compliance of said connections; and usage policy enforcement of said connections; wherein said

12  enforcement is out of band and is accomplished on said RAD, comprising communicating with said

13  RAD to make real-time changes to its running configuration, whereby said enforcement is vendor-

14  independent and said system is RAD-agnostic; said network access control comprising receiving a

15  connect attempt to said network from a user device; said RAD authenticating connecting user to said

16  NACS for said out of band network control; said NACS capturing RAD identification, location;

17  restricting access to said network by said user device with a network access filter (NAF) configured

18  on said RAD; said RAD directing said client device to an agent; on said user device, running said

19  agent; said agent identifying client to said NACS; modifying said NAF based on compliance; and

20  monitoring post-connection of successful connections.

21      ANSWER NO. 66:    Denied.

22      67.    The use of the '299 Accused Products constitutes practicing the claimed invention of

23  the '299 Patent, including claim 1, because their use amounts to a system of for [sic] out-of-band

24  control of network access as claimed. The '299 Accused Products as used include a network with a

25  server device and terminal device, communicatively linked, and at least one remote access device

26  (RAD). For example, the '299 Accused Products include a VPN Concentrator plugin that allows

27  remote devices to connect to a network. The '299 Accused Products as used also include a Network

28  Access Control Server (NACS) that controls network access and includes identity management of

1   connections, endpoint compliance of connections, and usage policy enforcement of connections,

2   with the enforcement accomplished on the RAD with real-time changes to its running configuration.

3   For example, the use of the '299 Accused Products includes the use of a VPN Concentrator Plugin to

4   also track users, disconnect them from the VPN, and prevent them from reconnecting. This

5   enforcement is vendor-independent and this system is RAD-agnostic, with the '299 Accused

6   Products supporting server packages such as Cisco VPN 3000, Cisco VPN ASA 5500 Series

7   Adaptive Security Appliance, Juniper 5.5R1, and Nortel V07_00.062. A connect attempt from user

8   device is received, the RAD authenticates the connecting user to the NACS, and the NACS captures

9   RAD identification, location. For example, the use of the '299 Accused Products includes capturing

10  of VPN-related information such as VPN IP. The use of the '299 Accused Products restricts access to

11  the network by the user device with a network access filter (NAF) configured on the RAD. The RAD

12  directs the client device to an agent, the agent is run on the user device, and the agent identifies the

13  client to the NACS. For example, the use of the '299 Accused Products includes the use of

14  SecureConnector running from a client device, with the SecureConnector sending a unique ID to

15  help identify the endpoint. The NAF is modified based on compliance, and successful connections

16  are monitored post-connection.

17      ANSWER NO. 67:    Denied.

18      68.    This description is based on publicly available information and a reasonable

19  investigation of the structure and operation of the '299 Accused Products. Exemplary materials that

20  describe infringement through the use of '299 Accused Products can be found on Forescout's

21  website: https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-

22  8.0.1.pdf, https://www.forescout.com/company/resources/vpn-concentrator-plugin-configuration-

23  guide-4-1/, https://www.forescout.com/company/resources/hps-inspection-engine-configuration-

24  guide-11-0/, https://www.forescout.com/company/resources/counteract-deploying-secure-connector-

25  service-part-machine-image-guide/.

26      ANSWER NO. 68:    Denied.

27      69.    As a result of Forescout's unlawful activities, Fortinet has suffered and will continue

28  to suffer irreparable harm for which there is no adequate remedy at law, especially given that

24

1    Fortinet and Forescout both compete in the security software space.

2            ANSWER NO. 69:    Denied

3            70.     Forescout's continued infringement of the '299 Patent causes harm to Fortinet in the

4    form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities,

5    inadequacy of money damages, and direct and indirect competition. Monetary damages are

6    insufficient to compensate Fortinet for these harms. Accordingly, Fortinet is entitled to injunctive

7    relief.

8            ANSWER NO. 70:    Denied.

9            71.     Forescout's infringement of the '299 Patent has furthermore injured and continues to

10   injure Fortinet in an amount to be proven at trial, but not less than a reasonable royalty and/or the

11   lost profits that Fortinet would have made but-for Forescout's acts of infringement.

12           ANSWER NO. 71:    Denied.

13           72.     Despite outreach from Fortinet seeking to inform Forescout of its infringement of

14   Fortinet patents and discuss potential remedies, Forescout refused to participate with any discussion

15   with Fortinet for months, while continuing to infringe by selling the Accused Products and services.

16   This refusal to received [sic] information related to its infringement constitutes egregious conduct by

17   Forescout and willful blindness to its own infringement, making this an exceptional case and

18   justifying an award to Fortinet of increased damages under 35 U.S.C. § 284, and attorneys' fees and

19   costs incurred under 35 U.S.C. § 285.

20           ANSWER NO. 72:    Denied.

21           **COUNT III –INFRINGEMENT OF U.S. PATENT NO. 9,948,662**

22           73.     Fortinet incorporates by reference and re-alleges all the foregoing paragraphs of this

23   Amended Complaint as if fully set forth herein.

24           ANSWER NO. 73:    Forescout incorporates by reference and realleges its answers to the

25   Amended Complaint as if fully set forth herein.

26           74.     On information and belief, Forescout has induced or contributed to the infringement

27   of at least claim 1 of the '662 patent by making, using, selling, offering for sale, and/or importing

28   into the United States, without authority or license, for example, ForeScout CounterACT, Forescout

CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout

CounterACT Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT- 10000),

Forescout 5100 Series (5110, 5120, 5140 and 5160), Forescout SecureConnector, and Forescout

Network Module (collectively, the '662 Accused Products). The '662 Accused Products are non-

limiting examples that were identified based on publicly available information, and Fortinet reserves

the right to identify additional infringing activities, products and services, including, for example, on

the basis of information obtained during discovery.

ANSWER NO. 74:    Denied.

75.    Forescout has induced and continues to induce infringement of at least claim 1 of the

'662 Patent under 35 U.S.C. § 271(b).

ANSWER NO. 75:    Denied.

76.    Forescout indirectly infringes the '662 Patent, including claim 1, pursuant to 35

U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers,

users and developers, to perform some of the steps of the method claims, either literally or under the

doctrine of equivalents, of the '662 Patent, where all the steps of the method claims are performed

by either Forescout or its customers, purchasers, users and developers, or some combination thereof.

Forescout knew or was willfully blind to the fact that it was inducing others, including customers,

purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with

Forescout, one or more method claims of the '662 Patent, including claim 1, through use of, for

example, ForeScout CounterACT.

ANSWER NO. 76:    Denied.

77.    Forescout knowingly and actively aided and abetted the direct infringement of the

'662 Patent, including claim 1, by instructing and encouraging its customers, purchasers, users and

developers to use the '662 Accused Products. Such instructions and encouragement included, but are

not limited to, advising third parties to use the '662 Accused Products in an infringing manner,

providing a mechanism through which third parties may infringe the '662 Patent, including claim 1,

and by advertising and promoting the use of the '662 Accused Products in an infringing manner, and

distributing guidelines and instructions to third parties on how to use the '662 Accused Products in

26

1  an infringing manner. For example, Forescout maintains a Resources website with support, technical

2  documentation, training, and blogs with information about operating Forescout's products (available

3  at https://www.forescout.com/company/resources/).

4    ANSWER NO. 77: Denied.

5    78. Forescout's technical documentation evidences specific intent, at least as of the filing

6  of the Original Complaint, to encourage infringement of the '662 Patent. Forescout's CounterACT

7  Admin Guide (https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-

8  guide-8.0.1.pdf), Packet Engine Configuration Guide

9  (https://www.forescout.com/company/resources/packet-engine-configuration-guide-8-1/), and

10  CounterACT Installation Guide (https://www.forescout.com/counteract8-installguide/) instruct users

11  on how to infringe the claims of '662 Patent. These materials actively coach users to use the '662

12  Accused Products in an infringing manner. Indeed, these materials instruct customers to infringe

13  each and every element of at least claim 1 of the '662 Patent and, on their own, fully support

14  Fortinet's allegations of infringement.

15    ANSWER NO. 78: Denied.

16    79. By at least the filing of the Original Complaint, Fortinet disclosed the existence of the

17  '662 patent and identified at least some of Forescout's and others' activities that infringe the '662

18  patent, including claim 1. Thus, based on this disclosure, Forescout had knowledge of the '662

19  patent and that its activities infringe the '662 patent, including claim 1, since at least the filing of the

20  Original Complaint. Based on Fortinet's disclosures, Forescout has also known or should have

21  known since at least the filing of the Original Complaint that its customers, distributors, suppliers,

22  and other purchasers of the '662 Accused Products are infringing the '662 patent, including claim 1.

23    ANSWER NO. 79: Denied.

24    80. On information and belief, Forescout further contributes to the infringement of one or

25  more claims of the '662 patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing

26  into the United States a component of the '662 Accused Products, or a material or apparatus for use

27  in practicing a process claimed in the '662 patent, that constitutes a material part of the invention,

28  knowing the same to be especially made or especially adapted for use in an infringement of the '662

patent, including claim 1, and is not a staple article or commodity of commerce suitable for substantial noninfringing use. The Forescout CounterACT software as sold by Forescout includes software components (e.g., the Packet Engine, and the Legitimate Traffic Wizard) which are programmed to be used to infringe providing security in a communication network by selectively enabling various features for scanning user traffic streams. These software components, sold as part of CounterACT, are especially made for an infringing use, and have no substantial noninfringing use other than to practice the claimed methods.

ANSWER NO. 80:    Denied.

81.    The '662 Accused Products meet all the limitations of at least claim 1 of the '662 patent. Specifically, claim 1 of the '662 patent recites: A method comprising: receiving, by a network security device within an enterprise network, an application protocol request directed to an external network that is originated by a client device associated with the enterprise network; determining, by the network security device, based on the application protocol request whether a network parameter of the external network is associated with a set of trusted networks; and selectively disabling, by the network security device, application of a subset of security features of a plurality of security features to be applied to network traffic exchanged between the client device and the external network while the client device is accessing the external network when a result of said determining is affirmative, wherein the subset of security features are selected based on a trust level associated with the external network.

ANSWER NO. 81:    Denied.

82.    The use of the '662 Accused Products constitutes practicing the claimed invention of the '662 Patent because their use amounts to a method of providing security in a communication network as claimed, including in claim 1. The '662 Accused Products provide a network security device that receives an application protocol request directed to an external network, originated by a client device associated with the network. A network security device determines whether a network parameter of the external network is associated with a set of trusted networks based on that application protocol request. For example, the '662 Accused Products define Legitimate Traffic based on source information such as source or destination address. Further, when this determining is

affirmative, a network security device selectively disables application of security features based on a trust level associated with the external network, to be applied to network traffic exchanged between the client device and the external network while the client device is accessing the external network. For example, the '662 Accused Products disables features such as Threat Protection features based on traffic type.

ANSWER NO. 82:    Denied.

83.    This description is based on publicly available information and a reasonable investigation of the structure and operation of the '662 Accused Products. Exemplary materials that describe infringement through the use of '662 Accused Products can be found on Forescout's website: https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf, https://www.forescout.com/company/resources/packet-engine-configuration-guide-8-1/.

ANSWER NO. 83:    Denied.

84.    As a result of Forescout's unlawful activities, Fortinet has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, especially given that Fortinet and Forescout both compete in the security software space.

ANSWER NO. 84:    Denied.

85.    Forescout's continued infringement of the '662 Patent causes harm to Fortinet in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Monetary damages are insufficient to compensate Fortinet for these harms. Accordingly, Fortinet is entitled to injunctive relief.

ANSWER NO. 85:    Denied.

86.    Forescout's infringement of the '662 Patent has furthermore injured and continues to injure Fortinet in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Fortinet would have made but-for Forescout's acts of infringement.

ANSWER NO. 86:    Denied.

87.    Despite outreach from Fortinet seeking to inform Forescout of its infringement of Fortinet patents and discuss potential remedies, Forescout refused to participate with any discussion

1   with Fortinet for months, while continuing to infringe by selling the Accused Products and services.

2   This refusal to received [sic] information related to its infringement constitutes egregious conduct by

3   Forescout and willful blindness to its own infringement, making this an exceptional case and

4   justifying an award to Fortinet of increased damages under 35 U.S.C. § 284, and attorneys' fees and

5   costs incurred under 35 U.S.C. § 285.

6       ANSWER NO. 87:    Denied.

7               **COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,894,034**

8       88.    Fortinet incorporates by reference and re-alleges all of the foregoing paragraphs of

9   this Amended Complaint as if fully set forth herein.

10      ANSWER NO. 88:    Forescout incorporates by reference and realleges its answers to the

11  Amended Complaint as if fully set forth herein.

12      89.    On information and belief, Forescout has induced or contributed to the infringement

13  of at least claim 1 of the '034 Patent by making, using selling, offering for sale, and/or importing

14  into the United States, without authority or license, for example, ForeScout CounterACT, Forescout

15  CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout

16  CounterACT Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT- 10000),

17  Forescout 5100 Series (5110, 5120, 5140 and 5160), Forescout SecureConnector, and Forescout

18  Network Module, Forescout's HPS Inspection Engine, and its Windows Applications Plugin

19  (collectively, the '034 Accused Products). The '034 Accused Products are non-limiting examples that

20  were identified based on publicly available information, and Fortinet reserves the right to identify

21  additional infringing activities, products and services, including, for example, on the basis of

22  information obtained during discovery.

23      ANSWER NO. 89:    Denied.

24      90.    Forescout has induced and continues to induce infringement of at least claim 1 of the

25  '034 Patent under 35 U.S.C. § 271(b).

26      ANSWER NO. 90:    Denied.

27      91.    Forescout indirectly infringes the '034 Patent pursuant to 35 U.S.C. § 271(b) by

28  instructing, directing and/or requiring others, including customers, purchasers, users and developers,

to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '034 Patent, where all the steps of the method claims are performed by either Forescout or its customers, purchasers, users and developers, or some combination thereof. Forescout knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with Forescout, one or more method claims of the '034 Patent, including claim 1 through use of, for example, ForeScout CounterACT.

ANSWER NO. 91:    Denied.

92.    Forescout knowingly and actively aided and abetted the direct infringement of the '034 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '034 Accused Products. Such instructions and encouragement included, but are not limited to, advising third parties to use the '034 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '034 Patent, and by advertising and promoting the use of the '034 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '034 Accused Products in an infringing manner. For example, Forescout maintains a Resources website with support, technical documentation, training, and blogs with information about operating Forescout's products (available at https://www.forescout.com/company/resources/).

ANSWER NO. 92:    Denied.

93.    Forescout's technical documentation evidences specific intent, at least as of the filing this Amended Complaint, to encourage infringement of the '034 Patent. Forescout's CounterACT Admin Guide (https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf), its HPS Inspection Engine Configuration Guide (https://www.forescout.com/company/resources/hps-inspection-engine-configuration-guide-10-7-1/), its SecureConnector Advanced Features How-to Guide (https://www.forescout.com/company/resources/secure-connector-advanced-features-how-to-guide-8-0/), and its Forescout Windows Applications Configuration Guide (https://www.forescout.com/company/resources/windows-applications-19-0-12/) instruct users on how to infringe the claims of '034 Patent. These materials actively coach users

31

to use the '034 Accused Products in an infringing manner. Indeed, these materials instruct customers to infringe each and every element of at least claim 1 of the '034 Patent and, on their own, fully support Fortinet's allegations of infringement.

ANSWER NO. 93:    Denied.

94.    By at least the filing of this Amended Complaint, Fortinet disclosed the existence of the '034 patent and identified at least some of Forescout's and others' activities that infringe the '034 patent. Thus, based on this disclosure, Forescout had knowledge of the '034 patent, including claim 1, and that its activities infringe the '034 patent, including claim 1, since at least the filing of this Amended Complaint. Based on Fortinet's disclosures, Forescout has also known or should have known since at least the filing of this Amended Complaint that its customers, distributors, suppliers, and other purchasers of the '034 Accused Products are infringing the '034 patent, including claim 1.

ANSWER NO. 94:    Denied.

95.    On information and belief, Forescout further contributes to the infringement of one or more claims of the '034 patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the '034 Accused Products, or a material or apparatus for use in practicing a process claimed in the '034 patent, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '034 patent, including claim 1, and is not a staple article or commodity of commerce suitable for substantial noninfringing use. The Forescout CounterACT software as sold by Forescout includes software components (e.g., the HPS Inspection Engine) which are programmed to be used to infringe the methods for managing configuration of a client security application based on a network environment in which the client device is operating. These software components, sold as part of CounterACT, are especially made for an infringing use, and have no substantial noninfringing use other than to practice the claimed methods.

ANSWER NO. 95:    Denied.

96.    The '034 Accused Products meet all of the limitations of at least claim 1 of the '034 patent. Specifically, claim 1 of the '034 patent recites: a method comprising: during initialization of a client security application running on a client device: determining, by the client security

application, a network connection state of the client device with respect to a private network; selecting, by the client security application, a configuration for the client security application based on the determined network connection state; and launching, by the client security application, one or more functions of the client security application that are designated by the selected configuration to be performed by the client security application, wherein the one or more functions include one or more of web content filtering, anti-virus scanning and network access logging.

ANSWER NO. 96:    Denied.

97.    The use of the '034 Accused Products constitutes practicing the claimed invention of the '034 patent because their use amounts to a method as claimed, including a client security application, such as Forescout's SecureConnector, running on a client device. This client security application determines a network connection state of the client device with respect to a private network, such as a network managed by an appliance running Forescout/CounterACT software that is in communication with SecureConnector. This client security application also selects a configuration based on the determined network connection state, and launches one or more functions that are designated by the selected configuration to be performed, wherein the one or more functions include one or more of web content filtering, anti-virus scanning and network access logging.

ANSWER NO. 97:    Denied.

98.    This description is based on publicly available information and a reasonable investigation of the structure and operation of the '034 Accused Products. Exemplary materials that describe infringement through the use of the '034 Accused Products can be found on Forescout's website: https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf, https://www.forescout.com/company/resources/hps-inspection-engine-configuration-guide-10-7-1/, https://www.forescout.com/company/resources/secure-connector-advanced-features-how-to-guide-8-0/, https://www.forescout.com/company/resources/windows-applications-19-0-12/.

ANSWER NO. 98:    Denied.

99.    As a result of Forescout's unlawful activities, Fortinet has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, especially given that Fortinet and Forescout both compete in the security software space.

1     ANSWER NO. 99:    Denied.

2          100.    Forescout's continued infringement of the '034 Patent causes harm to Fortinet in the

3    form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities,

4    inadequacy of money damages, and direct and indirect competition. Monetary damages are

5    insufficient to compensate Fortinet for these harms. Accordingly, Fortinet is entitled to injunctive

6    relief.

7          ANSWER NO. 100:   Denied.

8          101.    Forescout's infringement of the '034 Patent has furthermore injured and continues to

9    injure Fortinet in an amount to be proven at trial, but not less than a reasonable royalty and/or the

10   lost profits that Fortinet would have made but-for Forescout's acts of infringement.

11         ANSWER NO. 101:   Denied.

12         102.    Despite outreach from Fortinet seeking to inform Forescout of its infringement of

13   Fortinet patents and discuss potential remedies, Forescout refused to participate with any discussion

14   with Fortinet for months, while continuing to infringe by selling the Accused Products and services.

15   This refusal to receive information related to its infringement constitutes egregious conduct by

16   Forescout and willful blindness to its own infringement, making this an exceptional case and

17   justifying an award to Fortinet of increased damages under 35 U.S.C. § 284, and attorneys' fees and

18   costs incurred under 35 U.SC. § 285.

19         ANSWER NO. 102:   Denied.

20         **COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,503,421**

21         103.    Fortinet incorporates by reference and re-alleges all of the foregoing paragraphs of

22   this Amended Complaint as if fully set forth herein.

23         ANSWER NO. 103:   Forescout incorporates by reference and realleges its answers to the

24   Amended Complaint as if fully set forth herein.

25         104.    On information and belief, Forescout has induced or contributed to the infringement

26   of at least claim 1 of the '421 Patent by making, using selling, offering for sale, and/or importing

27   into the United States, without authority or license, for example, ForeScout CounterACT, Forescout

28   CounterACT Appliance (CT-R, CT-100, CT-1000, CT-2000, CT-4000 and CT-10000), Forescout

34

1    CounterACT Virtual Appliance (VCT-R, VCT-100, VCT-1000, VCT-2000, VCT-4000, VCT- 10000),

2    Forescout 5100 Series (5110, 5120, 5140 and 5160), specifically the eyeExtend eyeControl, and

3    eyeManage components of the ForeScout/CounterACT platform (collectively, the '421 Accused

4    Products). The '421 Accused Products are non-limiting examples that were identified based on

5    publicly available information, and Fortinet reserves the right to identify additional infringing

6    activities, products and services, including, for example, on the basis of information obtained during

7    discovery.

8            ANSWER NO. 104:   Denied.

9            105.    Forescout has induced and continues to induce infringement of at least claim 1 of the

10   '421 Patent under 35 U.S.C. § 271(b).

11           ANSWER NO. 105:   Denied.

12           106.    Forescout indirectly infringes the '421 Patent pursuant to 35 U.S.C. § 271(b) by

13   instructing, directing and/or requiring others, including customers, purchasers, users and developers,

14   to perform some of the steps of the method claims, either literally or under the doctrine of

15   equivalents, of the '421 Patent, where all the steps of the method claims are performed by either

16   Forescout or its customers, purchasers, users and developers, or some combination thereof.

17   Forescout knew or was willfully blind to the fact that it was inducing others, including customers,

18   purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with

19   Forescout, one or more method claims of the '421 Patent, including claim 1 through use of, for

20   example, ForeScout CounterACT.

21           ANSWER NO. 106:   Denied.

22           107.    Forescout knowingly and actively aided and abetted the direct infringement of the

23   '421 Patent by instructing and encouraging its customers, purchasers, users and developers to use the

24   '421 Accused Products. Such instructions and encouragement included, but are not limited to,

25   advising third parties to use the '421 Accused Products in an infringing manner, providing a

26   mechanism through which third parties may infringe the '421 Patent, and by advertising and

27   promoting the use of the '421 Accused Products in an infringing manner, and distributing guidelines

28   and instructions to third parties on how to use the '421 Accused Products in an infringing manner.

35

For example, Forescout maintains a Resources website with support, technical documentation, training, and blogs with information about operating Forescout's products (available at https://www.forescout.com/company/resources/).

ANSWER NO. 107:   Denied.

108.    Forescout's technical documentation evidences specific intent, at least as of the filing of this Amended Complaint to encourage infringement of the '421 Patent. Forescout's CounterACT Admin Guide (https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf), the Forescout eyeExtend Datasheet (https:// www.forescout.com/company/resources/forescout-eyeextend/), the Forescout eyeManage Datasheet (https://www.forescout.com/company/resources/forescout-eyemanage-datasheet/), and the Forescout eyeControl Datasheet (https://www.forescout.com/company/resources/forescout-eyecontrol-datasheet/) instruct users on how to infringe the claims of '421 Patent. These materials actively coach users to use the '421 Accused Products in an infringing manner. Indeed, these materials instruct customers to infringe each and every element of at least claim 1 of the '421 Patent and, on their own, fully support Fortinet's allegations of infringement.

ANSWER NO. 108:   Denied.

109.    By at least the filing of this Amended Complaint, Fortinet disclosed the existence of the '421 patent and identified at least some of Forescout's and others' activities that infringe the '421 patent. Thus, based on this disclosure, Forescout had knowledge of the '421 patent, including claim 1, and that its activities infringe the '421 patent, including claim 1, since at least the filing of this Amended Complaint. Based on Fortinet's disclosures, Forescout has also known or should have known since at least the filing of this Amended Complaint that its customers, distributors, suppliers, and other purchasers of the '421 Accused Products are infringing the '421 patent, including claim 1.

ANSWER NO. 109:   Denied.

110.    On information and belief, Forescout further contributes to the infringement of one or more claims of the '421 patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the '421 Accused Products, or a material or apparatus for use in practicing a process claimed in the '421 patent, that constitutes a material part of the invention,

36

1  knowing the same to be especially made or especially adapted for use in an infringement of the '421

2  patent, including claim 1, and is not a staple article or commodity of commerce suitable for

3  substantial noninfringing use. The Forescout CounterACT software as sold by Forescout includes

4  software components (e.g., eyeExtend, eyeControl, and eyeManage, and their workflow

5  management components) which are programmed to be used to infringe the methods for conducting

6  work flows by an SIEM device to carry out a complex task automatically. These software

7  components, sold as part of CounterACT, are especially made for an infringing use, and have no

8  substantial noninfringing use other than to practice the claimed methods.

9      ANSWER NO. 110:   Denied.

10      111.    The '421 Accused Products meet all of the limitations of at least claim 1 of the '421

11  patent. Specifically, claim 1 of the '421 patent recites: a method comprising: creating, by a security

12  information and event management (SIEM) device associated with a private network, a work flow,

13  said work flow including information defining a plurality of security tasks that are to be performed

14  by one or more security devices associated with the private network and managed by the SIEM

15  device, wherein the plurality of security tasks include operations that are intended to protect the

16  private network against attacks; starting, by the SIEM device, the work flow by scheduling the one

17  or more security devices to perform the plurality of security tasks defined in the work flow; and

18  collecting, by the SIEM device, results of the plurality of security tasks after they are performed by

19  the one or more security devices.

20      ANSWER NO. 111:   Denied.

21      112.    The use of the '421 Accused Products constitutes practicing the claimed invention of

22  the '421 patent. Specifically, a device running Forescout/CounterACT software functions as an

23  SIEM device associated with a private network. Forescout's platform, with its eyeExtend,

24  eyeControl, and eyeManage components, is configured to configured to create a work flow including

25  information defining a plurality of security tasks (including operations that are intended to protect

26  the private network against attacks) that are to be performed by one or more security devices

27  associated with the private network and managed by the device. These security devices may include

28  any of the different security devices offered by Forescout, and those from other vendors that may be

37

integrated with the Forescout/CounterACT platform using its eyeExtend component. The platform with these components is further configured to schedule one or more of these security devices to perform the plurality of security tasks defined in the work flow; and collect results of the plurality of security tasks after they are performed by the one or more security devices.

ANSWER NO. 112:   Denied.

113.    This description is based on publicly available information and a reasonable investigation of the structure and operation of the '421 Accused Products. Exemplary materials that describe infringement through the use of the '421 Accused Products can be found on Forescout's website: https://www.forescout.com/wp-content/uploads/2018/11/counteract-administration-guide-8.0.1.pdf, https://www.forescout.com/company/resources/forescout-eyeextend/, https://www.forescout.com/company/resources/forescout-eyemanage-datasheet/, and https://www.forescout.com/company/resources/forescout-eyecontrol-datasheet/.

ANSWER NO. 113:   Denied.

114.    As a result of Forescout's unlawful activities, Fortinet has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, especially given that Fortinet and Forescout both compete in the security software space.

ANSWER NO. 114:   Denied.

115.    Forescout's continued infringement of the '421 Patent causes harm to Fortinet in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Monetary damages are insufficient to compensate Fortinet for these harms. Accordingly, Fortinet is entitled to injunctive relief.

ANSWER NO. 115:   Denied.

116.    Forescout's infringement of the '421 Patent has furthermore injured and continues to injure Fortinet in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Fortinet would have made but-for Forescout's acts of infringement.

ANSWER NO. 116:   Denied.

117.    Despite outreach from Fortinet seeking to inform Forescout of its infringement of

Fortinet patents and discuss potential remedies, Forescout refused to participate with any discussion with Fortinet for months, while continuing to infringe by selling the Accused Products and services. This refusal to receive information related to its infringement constitutes egregious conduct by Forescout and willful blindness to its own infringement, making this an exceptional case and justifying an award to Fortinet of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

ANSWER NO. 117:   Denied.

## DEFENSES

Subject to its responses above, and upon information and belief, Forescout alleges and asserts these defenses in response to the allegations in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses described below, subject to the responses above, Forescout specifically reserves all rights to allege additional defenses, pursuant to any scheduling order, that become known through the course of discovery or otherwise.

### First Defense – Implied License

118.   On or about May 17, 2017, Forescout and Fortinet entered into a Technology Alliance Partner Agreement ("Agreement"), which provides, in pertinent part, that the parties "will engage in the activities outlined in the applicable exhibits." The applicable exhibits include development of a joint solution brief and technical collaboration on joint solutions offerings. Fortinet thereafter published a "Solution Brief" that promotes the "joint Forescout-Fortinet solution." Fortinet's so-called joint Forescout-Fortinet solution embraces the Accused Products that Fortinet now alleges in its Amended Complaint infringe its asserted patents. Both Forescout and Fortinet thereafter promoted in marketing and sales materials, and sold to customers, pursuant to the Agreement, the Accused Products that Fortinet now alleges in its Amended Complaint infringe its asserted patents. By entering into the Agreement, Fortinet affirmatively consented to Forescout's marketing, selling, and use of the Accused Products. Fortinet thus impliedly licensed the Asserted Patents to Forescout. As Forescout is a licensee of the Asserted Patents, Forescout's conduct as alleged in Fortinet's Amended Complaint is non-infringing conduct.

**Second Defense – Waiver and/or Equitable Estoppel**

119.    On or about May 17, 2017, Forescout and Fortinet entered into a Technology Alliance Partner Agreement ("Agreement"), which provides, in pertinent part, that the parties "will engage in the activities outlined in the applicable exhibits." The applicable exhibits include development of a joint solution brief and technical collaboration on joint solutions offerings. Fortinet thereafter published a "Solution Brief" that promotes the "joint Forescout-Fortinet solution." Fortinet's so-called joint Forescout-Fortinet solution embraces the Accused Products that Fortinet now alleges in its Amended Complaint infringe its Asserted Patents. Both Forescout and Fortinet thereafter promoted in marketing and sales materials, and sold to customers, pursuant to the Agreement, the Accused Products that Fortinet now alleges in its Amended Complaint infringe Fortinet's Asserted Patents. By entering into the Agreement, Fortinet affirmatively engaged in conduct that led Forescout to believe that Fortinet would not enforce its patent rights against Forescout to the extent that Forescout was marketing, selling, and using the Accused Products encompassed by the Agreement. Fortinet, therefore, has waived and/or is equitably estopped from now asserting that Forescout's conduct as alleged in Fortinet's Amended Complaint is infringing conduct.

**Third Defense – Laches**

120.    Fortinet's requests for equitable relief are barred by the doctrine of laches.

**Fourth Defense – Invalidity**

121.    The claims of the Asserted Patents are invalid for failure to comply with one or more provisions of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

**Fifth Defense – Noninfringement**

122.    Forescout has not infringed and does not infringe (i) indirectly by contributing to infringement by others, either literally or under the doctrine of equivalents, and/or (ii) indirectly by inducing others to infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents.

**Sixth Defense – 35 U.S.C. § 286**

123.    Plaintiff's recovery for any infringement of the Patents-in-Suit that it might establish

40

1    is limited, at minimum, to any established infringement occurring no more than six years before the

2    filing of this lawsuit, pursuant to 35 U.S.C. § 286.

3    **Seventh Defense – 35 U.S.C. § 287**

4    124.    Plaintiff's recovery for alleged infringement of the Patents-in-Suit, if any, is limited,

5    at minimum, to alleged infringement committed after Plaintiff provided notice of infringement under

6    35 U.S.C. § 287.

7    **Eighth Defense – 28 U.S.C. § 1498**

8    125.    Plaintiff's recovery for alleged infringement of the Patents-in-Suit, if any, is limited

9    pursuant to 28 U.S.C. § 1498 to the extent that any alleged infringement, in whole or part, is

10    attributable to the United States government.

11    **PRAYER FOR RELIEF**

12    WHEREFORE, Defendant Forescout respectfully requests that this Court enter judgment in

13    its favor and against Plaintiff Fortinet, and grant the following relief:

14    A.    that Fortinet be denied all the relief that it has requested as set forth in its Amended

15    Complaint and that the Amended Complaint be dismissed with prejudice; and

16    B.    that the Court find this case to be an exceptional case and that Forescout be awarded

17    its costs and recoverable attorneys' fees incurred in defending this action pursuant to 35 U.S.C. § 285

18    and as otherwise allowed.

19    **FORESCOUT'S COUNTERCLAIMS**

20    126.    Plaintiff Forescout Technologies, Inc.("Forescout") is a Delaware corporation with a

21    principal place of business at 190 West Tasman Drive, San Jose, California 95134.

22    127.    Defendant Fortinet Inc. ("Fortinet") is a Delaware corporation with a principal place

23    of business at 899 Kifer Road, Sunnyvale, California 94086.

24    **JURISDICTION AND VENUE**

25    128.    This is a civil action for patent infringement pursuant to 35 U.S.C. § 271 and for

26    tortious interference with business relationships.

27    129.    This Court has subject matter jurisdiction over the matters asserted herein under 28

28    U.S.C. §§ 1331 and 1338(a), and 35 U.S.C. § 281, because this is a matter arising under the patent

laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over the requests for declaratory-judgment relief under 28 U.S.C. § 2201. This Court also has supplemental jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367.

130.    Fortinet is subject to this Court's personal jurisdiction because it resides, maintains its headquarters, and does business in the state of California. In addition, upon information and belief, Fortinet has committed substantial acts of infringement giving rise to this action and regularly conducts business within this judicial District, including by maintaining its headquarters in this District. For example, Fortinet has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be used in this District. On information and belief, these infringing products have been and continue to be used in this District. This Court therefore has personal jurisdiction over Fortinet.

131.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Fortinet is subject to personal jurisdiction in this District; resides in this District; maintains its headquarters in this District; regularly conducts business in this District; and committed and continues to commit acts of patent infringement in this District.

## ABOUT FORESCOUT AND FORTINET

132.    Founded in 2000, Forescout has pioneered an agentless approach to network access control ("NAC") solutions. Forescout's NAC products provide network security to address the explosive growth of mobile computing, Internet of Things ("IoT"), and cloud computing. Forescout's scalable and heterogeneous platform provides Global 2000 enterprises and government agencies with agentless visibility and control of traditional and nontraditional devices, including physical and virtual infrastructure, PCs, laptops, tablets, smartphones, and the latest IoT devices, the instant they connect to the network. Then it continuously assesses, remediates, and monitors devices and works with disparate security tools to help accelerate incident response, break down silos, automate workflows, and optimize existing investments. Today, over 3,800 global companies rely on Forescout—and its more than twenty years of experience—to effectively mitigate risks from network-connected devices, including IoT and operational technology.

133.    Fortinet is a large publicly held company that historically has offered firewall

products that have not competed with Forescout's NAC products. In computing, a firewall is a system that monitors and controls incoming and outgoing network traffic according to predetermined security rules. A firewall typically establishes a physical barrier between a trusted network and an untrusted network, such as the Internet. Fortinet's products historically could not and do not provide the more robust network visibility functionality of Forescout's software-based NAC products.

134.    In June 2018, faced with an aging and increasingly uncompetitive lineup of firewall products, Fortinet attempted entry into the NAC market by purchasing Bradford Networks for a reported $17 million. Bradford had been a minor player in the NAC marketplace with a limited lineup of NAC products. Bradford's dated product line then and today (as sold by Fortinet) offers only basic NAC functionality with no in-depth device visibility, limited remediation, and limited breadth of third party high-value integrations. Included in the acquisition were several inconsequential patents owned by Bradford Networks. Bradford Networks had never asserted them against Forescout because Forescout did not infringe them and/or because they were invalid. Fortinet is now the owner/assignee of these invalid patents, some of which Fortinet has asserted against Forescout in this action.

135.    On February 9, 2020, Forescout publicly announced a major acquisition that would substantially enhance its ability to continue its leadership in the NAC marketplace:

> Forescout Technologies, Inc. (NASDAQ:FSCT, "Forescout"), the leader in device visibility and control, today announced that it has entered into a definitive agreement under which Advent International ("Advent"), one of the largest and most experienced global private equity investors, will acquire all outstanding shares of Forescout common stock for $33.00 per share in an all-cash transaction valued at $1.9 billion. Advent will be joined by Crosspoint Capital Partners ("Crosspoint Capital"), a private equity investment firm focused on the cybersecurity and privacy industries, as a co-investor and advisor.

136.    Forescout's press release explained the expected synergy of the acquisition:

> Forescout has established itself as a leader in device visibility and control, with the most advanced platform in the market," said Michael DeCesare, CEO and President, Forescout. "We are still in early innings of a large market opportunity as every organization needs visibility into what is connecting to their network and how to mitigate against high-risk devices, including non-traditional IoT and OT devices. This transaction represents an exciting new phase in the evolution of Forescout. We are excited to be partnering with Advent International and Crosspoint Capital, premier firms with security DNA

43

1
2

and track records of success in strengthening companies and
supporting them through transitionary times.

3

### FORTINET ATTEMPTS TO EXTORT FORESCOUT

4      137.    Recognizing that the planned combination of Forescout, Advent, and Crosspoint

5   Capital could impede its ability to monetize its overpriced acquisition of Bradford Networks,

6   Fortinet sprang into action with an ill-conceived and misguided plan to derail the Advent acquisition

7   of Forescout. On February 27, 2020, Fortinet sent an unsolicited letter to Forescout vaguely accusing

8   Forescout's CounterACT® product (which has been on the market since 2006) of patent

9   infringement. Fortinet demanded that Forescout license an entire bundle of "more than 650 patents,

10  with an additional 175 pending patent applications." Forescout requested that Fortinet identify the

11  specific patent(s) allegedly infringed. Fortinet refused to do so and instead wrote another unsolicited

12  letter to Forescout, this time demanding an immediate extortionate royalty of $63.4 million for a

13  short-term (five-year) license to the entire bundle of patents. Fortinet again failed to provide a claim

14  chart or even identify the specific functionality alleged to infringe. When Forescout protested that it

15  could not make an informed decision regarding the alleged infringement and $63.4 million royalty

16  demand without an identification of the patents at issue or the specific accused functionality, Fortinet

17  sent another letter expressly referencing a "well-capitalized acquirer" [Advent] to justify the amount

18  of Fortinet's extortionate licensing demand. Fortinet never provided a claim chart or otherwise

19  identified the specific functionality alleged to infringe for any Asserted Patent before filing the

20  Complaint.

21

### FORTINET ENGAGES IN CONCERTED CAMPAIGN TO SMEAR FORESCOUT

22      138.    On May 15, 2020, one business day before Forescout was scheduled to close on its

23  acquisition by Advent, Fortinet filed its Complaint against Forescout. In its so-called "Preliminary

24  Statement," Fortinet goes on for pages boasting about its market power ("Fortinet is now the top

25  grossing cybersecurity company in many regions … best performing stocks of the last decade … the

26  market currently values Fortinet at approximately $23 billion[.] Fortinet has grown to over 7,000

27  employees and over 400,000 customers … with over 600 issued U.S. patents and 149 additional

28  patent applications pending before the U.S. Patent and Trademark Office (USPTO).") Dkt. 67 ¶ 7.

44

139.     Fortinet's Complaint then disparaged Forescout's competing products and reputation. *Id.* ¶ 8.  Fortinet then reveals the real reason that it sued Forescout:

> Forescout recently entered an agreement to be acquired by a private equity firm, firms that often cut spending by, and investment in, floundering acquired companies in areas such as research and development and customer support, thereby further stifling innovation and customer satisfaction, in an effort to improve the companies' profitability and cashflow.

*Id.*

140.     After twelve paragraphs of promoting itself and disparaging Forescout, the remainder of Fortinet's Complaint is an empty shell. What followed Fortinet's "press release" Complaint allegations were only formulaic recitations of claims for direct infringement, induced infringement, and contributory infringement. The Complaint said, in conclusory fashion and without any facts, that Forescout acted willfully. The Complaint did not identify the specific functionality alleged to infringe. It did not include any claim charts. The Complaint was a hatchet job intended to derail Forescout's pending acquisition and interfere with Forescout's existing and prospective business relationships.

141.     Knowing that Forescout's acquisition was scheduled to close on Monday, May 18, 2020, Fortinet filed its Complaint on Friday, May 15. Fortinet's Complaint asserted three patents[3] that Fortinet knew, or should have known, were invalid and/or not infringed by Forescout. A reasonable prefiling investigation would have revealed that the Asserted Patents do not claim patent-eligible subject matter under Section 101 of the United States Patent Act. A reasonable prefiling investigation also would have revealed that the Asserted Patents are invalid because they are anticipated and/or obvious considering the prior art identified in Forescout's invalidity contentions dated October 12, 2020, and March 22, 2021, attached hereto as Exhibits A and B.

142.     In furtherance of its intent to interfere with Forescout's business relationships, Fortinet engaged in a concerted campaign to smear Forescout. In particular, Fortinet blasted false statements to the press and customers about Forescout. Fortinet, for example, falsely told CRN

---

[3] United States Patent Nos. 8,458,314 ("the '314 Patent"), 9,369,299 ("the '299 Patent"), and 9,948,662 ("the '662 Patent").

(which bills itself as the top technology news and information source for solution providers, IT channel partners, and value-added resellers (VARs)) that Fortinet:

> doesn't take litigation lightly and has only engaged in lawsuits to protect its intellectual property on seldom occasions when it is left no alternative. But Forescout's wrongful incorporation of Fortinet's intellectual property into its product offerings is material and goes to the heart of Fortinet's business.

143. Fortinet, in fact, is a serial litigator that uses sham litigation to inflict injury on its competitors. Moreover, in truth, Forescout has not incorporated Fortinet's intellectual property into Forescout product offerings. The opposite is true. Fortinet has infringed Forescout's intellectual property, as alleged with more particularity herein.

144. Immediately after Fortinet launched its smear campaign against Forescout, Advent announced that it did not plan to proceed with the acquisition. As reported in *Security Week* (a leading publisher of "cybersecurity news, insights & analysis"), on Monday, May 18, 2020:

> Enterprise device security firm Forescout Technologies (NASDAQ; FSCT) said on Monday that private equity firm Advent International would not be moving forward as planned with its $1.9 billion acquisition of Forescout that was announced in February. … News of Advent pulling back came on the say day as it was reported that Fortinet has sued Forescout for allegedly violating three patents held by Fortinet that came from its 2018 acquisition of Bradford Networks.

145. After blasting the media with false statements about Forescout, Fortinet continued its smear campaign by targeting Forescout customers with false information intended to interfere with Forescout's existing and prospective business relationships. On information and belief, Fortinet falsely told Forescout's existing and potential customers that Forescout's financial solvency was in doubt. Furthermore, Fortinet's major accounts manager, Dexter Glenn, distributed on June 5, 2020, a "sample email you can use to target folks looking at or using ForeScout," which stated as follows:

> With (insert company name)'s up and coming investment in (insert NAC, zero trust security, whatever way you would like to describe the project) I wanted to insure you were aware of the ongoing legal problems and future of Forescout. In short, Fortinet has filed lawsuit against Forescout for patent infringement related to technology held within FortiNAC. Their acquisition by Advent and bid to be taken private was put on hold resulting in Forescout now filing a lawsuit against Advent, all this leaving Forescout on uncertain ground financially. This information is all public and can information on it is readily accessible." – From here, you could include any of the various links to articles detailing the situation with Forescout, the financial

comparison, or any other info you think would resonate. Below are some [links to articles about Forescout's legal problems caused by Fortinet]:

146.     The Advent acquisition eventually closed later, on financial terms much less favorable to Forescout.  Fortinet's false Complaint allegations of patent infringement spooked Forescout's existing and prospective customers, resulting in lost profits, postponed and/or discounted revenues, and lost market share by Forescout.

147.     After being expressly informed by Forescout that the asserted patents were invalid, and even after the Court expressed skepticism about the validity of Fortinet's asserted patents, Fortinet doubled down on its sham litigation by filing an Amended Complaint dated December 2, 2020, against Forescout. Fortinet again asserted the infringement of the same three invalid patents asserted in the May 15, 2020, Complaint and added two additional patents[4] that Fortinet knew, or should have known, were invalid and not infringed by Forescout. Once again, the Court expressed skepticism about the validity of Fortinet's newly asserted patents, but Fortinet stubbornly continues to pursue its sham litigation.

**Count I – Tortious Interference with Forescout's Business Relationships**

148.     Forescout incorporates by reference and realleges paragraphs 126–147 as if fully set forth herein.

149.     The above-described statements by Fortinet to Forescout's existing and prospective customers, including the republication of Fortinet's complaint allegations, were false, unprivileged, and were intended to improperly interfere with Forescout's existing and prospective business relationships.

150.     Fortinet made its false and deceptive statements to Forescout's customers with the specific intention of interfering directly with Forescout's relationships with its existing and prospective customers.

151.     Forescout has existing business relationships with customers of the products falsely accused of infringement by Fortinet, who, but for Fortinet's baseless extrajudicial statements, would

---

[4] U.S. Patent Nos. 9,894,034 ("the '034 Patent") and 9,503,421 ("the '421 Patent").

1   continue to increase their purchases of Forescout's products in the future.

2   152.   Fortinet made its baseless extrajudicial statements with knowledge of Forescout's

3   business relationships with its customers and users and with the specific intent to discourage those

4   customers and users from purchasing Forescout's products.

5   153.   Forescout has been and will continue to be harmed by Fortinet's interference with

6   Forescout's business relationships. The natural and intended result of Fortinet's baseless statements

7   to Forescout's customers is harm to Forescout's reputation as a leading provider of NAC products, to

8   the detriment of its existing and prospective relationships with its customers, and to cause existing

9   Forescout users to reduce their future use of Forescout's products and dissuade prospective users

10   from utilizing Forescout NAC products, all resulting in damages to Forescout. But for Fortinet's

11   tortious interference, Forescout would not have suffered any of these harms.

12   **Count II – Declaration of Invalidity of the '314 Patent**

13   154.   Forescout incorporates by reference and realleges paragraphs 126 through 153 above,

14   as if fully set forth herein.

15   155.   The '314 Patent is invalid for failure to satisfy one or more of the requirements of

16   patentability specified by Title 35 of the United States Code, including, but not limited to, §§ 101,

17   102, 103, and 112, as set forth with more particularity in Exhibit A attached hereto.

18   156.   For these reasons, there exists a controversy of sufficient immediacy and reality to

19   warrant the issuance of a declaratory judgment. Forescout, therefore, is entitled to a judicial

20   declaration that the claims of the '314 Patent are invalid.

21   **Count III – Declaration of Invalidity of the '299 Patent**

22   157.   Forescout incorporates by reference and realleges paragraphs 126 through 156 above,

23   as if fully set forth herein.

24   158.   The '299 Patent is invalid for failure to satisfy one or more of the requirements of

25   patentability specified by Title 35 of the United States Code, including, but not limited to, §§ 101,

26   102, 103, and 112, as set forth with more particularity in Exhibit A attached hereto.

27   159.   For these reasons, there exists a controversy of sufficient immediacy and reality to

28   warrant the issuance of a declaratory judgment. Forescout, therefore, is entitled to a judicial

48

1    declaration that the claims of the '299 Patent are invalid.

2                **Count IV – Declaration of Invalidity of the '662 Patent**

3          160.    Forescout incorporates by reference and realleges paragraphs 126 through 159 above,

4    as if fully set forth herein.

5          161.    The '622 Patent is invalid for failure to satisfy one or more of the requirements of

6    patentability specified by Title 35 of the United States Code, including, but not limited to, §§ 101,

7    102, 103, and 112, as set forth with more particularity in Exhibit A attached hereto.

8          162.    For these reasons, there exists a controversy of sufficient immediacy and reality to

9    warrant the issuance of a declaratory judgment. Forescout, therefore, is entitled to a judicial

10   declaration that the claims of the '662 Patent are invalid.

11               **Count V – Declaration of Invalidity of the '034 Patent**

12         163.    Forescout incorporates by reference and realleges paragraphs 126 through 162 above,

13   as if fully set forth herein.

14         164.    The '034 Patent is invalid for failure to satisfy one or more of the requirements of

15   patentability specified by Title 35 of the United States Code, including, but not limited to, §§ 101,

16   102, 103, and 112, as set forth with more particularity in Exhibit B attached hereto.

17         165.    For these reasons, there exists a controversy of sufficient immediacy and reality to

18   warrant the issuance of a declaratory judgment. Forescout, therefore, is entitled to a judicial

19   declaration that the claims of the '034 Patent are invalid.

20               **Count VI – Declaration of Invalidity of the '421 Patent**

21         166.    Forescout incorporates by reference and realleges paragraphs 126 through 165 above,

22   as if fully set forth herein.

23         167.    The '421 Patent is invalid for failure to satisfy one or more of the requirements of

24   patentability specified by Title 35 of the United States Code, including, but not limited to, §§ 101,

25   102, 103, and 112, as set forth with more particularity in Exhibit B attached hereto.

26         168.    For these reasons, there exists a controversy of sufficient immediacy and reality to

27   warrant the issuance of a declaratory judgment. Forescout, therefore, is entitled to a judicial

28   declaration that the claims of the '421 Patent are invalid.

49

**Count VII – Infringement of U.S. Patent No. 8,590,004**

169.     Forescout incorporates by reference and realleges paragraphs 126 through 168 above, as if fully set forth herein.

170.     Forescout is the assignee and owner of U.S. Patent No. 8,590,004 (*Method and system for dynamic security using authentication server*) ("the '004 Patent") (Exhibit C). The '004 Patent discloses a method and system for network access control, including an authentication proxy that authenticates different access points, retrieves data from security databases and from Network Monitoring Systems, processes said data according to a dynamic security policy, and uses said processing outcome to determine the access level that will be granted to an access point in the network. Forescout products practice this patent.  Forescout virtually marks its products with this patent in satisfaction of the virtual marking provisions of the United States Patent Act.

171.     Forescout's FortiNAC product infringes the '004 Patent, literally or equivalently. By way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation of Claim 1 of the '004 Patent. A preliminary claim chart (attached hereto as Exhibit D), based on publicly available information and subject to revision based on discovery in this case, shows Fortinet's FortiNAC product practices each limitation of Claim 1 of the '004 Patent, either literally or equivalently. On information and belief, Fortinet also infringes the other claims of the '004 Patent.

172.     Fortinet has directly infringed by making, selling, and/or offering to sell the accused FortiNAC product within the United States, and/or by importing such product into the United States. On information and belief, Fortinet has further directly infringed by using the infringing system within the United States, such as by testing its products and/or by using them internally at Fortinet.

173.     Fortinet has further induced infringement by others, including at least Fortinet's customers and end users, who literally infringe at least by using the accused product. Fortinet has had knowledge of its infringing activities at least as of the date of the filing of this Counterclaim. Fortinet's technical documentation evidences specific intent, at least as of the filing of this Counterclaim, to encourage infringement of the '004 Patent, as shown in the specific Fortinet documentation cited on a limitation-by-limitation basis in Exhibit D, which instructs users on how to infringe the '004 Patent. These materials actively coach users to use the accused products in an infringing manner. Indeed, these

50

materials instruct customers to infringe each and every element of at least Claim 1 of the '004 Patent and, on their own, fully support Forescout's allegations of infringement. By at least the filing of this Counterclaim, Forescout disclosed the existence of the '004 Patent and identified at least some of Fortinet's and others' activities that infringe the '004 Patent. Thus, because of this disclosure, Fortinet had knowledge of the '004 Patent, including Claim 1, and that its activities infringe the '004 Patent, including Claim 1, since at least the filing of this Amended Complaint.

174.    On information and belief, Fortinet further contributes to the infringement of one or more claims of the '004 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the accused product, or a material or apparatus for use in practicing a process claimed in the accused product, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '004 Patent, including Claim 1, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. The FortiNAC software as sold by Fortinet includes software components (e.g., relating to policies and filters) that are programmed to be used to infringe the claims. These software components, sold as part of FortiNAC, are especially made for an infringing use, and have no substantial non-infringing use other than to practice the claimed methods.

175.    Fortinet's continued infringement of the '004 Patent causes harm to Forescout in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.  Forescout is entitled to monetary damages and, to the extent that the Court finds that Forescout and Fortinet compete, Forescout is entitled to injunctive relief.

176.    Fortinet's infringement of the '004 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

**Count VIII – Infringement of U.S. Patent No. 10,652,116**

177.    Forescout incorporates by reference and realleges paragraphs 126 through 176 above, as if fully set forth herein.

178.    Forescout is the assignee and owner of U.S. Patent No. 10,652,116 (*Device*

51

*classification*) ("the '116 Patent") (Exhibit E). The '116 Patent discloses systems, methods, and related technologies for device classification.  In certain aspects, traffic data associated with a device and data from an external system can be accessed. The data can be processed to determine a device classification for the device. An action can be initiated according to the classification.  Forescout products practice this patent.  Forescout virtually marks its products with this patent in satisfaction of the virtual marking provisions of the United States Patent Act.

179.    Forescout's FortiNAC product infringes the '116 Patent, literally or equivalently. By way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation of Claim 1 of the '116 Patent. A preliminary claim chart (attached hereto as Exhibit F), based on publicly available information and subject to revision based on discovery in this case, shows Fortinet's FortiNAC product practices each limitation of Claim 1 of the '116 Patent, either literally or equivalently. On information and belief, Fortinet also infringes the other claims of the '116 Patent.

180.    On information and belief, Fortinet has directly infringed by using the infringing system within the United States, such as by testing its products and/or by using them internally at Fortinet. Fortinet has further directly infringed at least system Claim 11 by making, selling, and/or offering to sell the accused FortiNAC product within the United States, and/or by importing such product into the United States.

181.    Fortinet has further induced infringement by others, including at least Fortinet's customers and end users, who literally infringe at least by using the accused product. Fortinet has had knowledge of its infringing activities at least as of the date of the filing of this Counterclaim. Fortinet's technical documentation evidences specific intent, at least as of the filing of this Counterclaim, to encourage infringement of the '116 Patent, as shown in the specific Fortinet documentation cited on a limitation-by-limitation basis in Exhibit F, which instructs users on how to infringe the '116 Patent. These materials actively coach users to use the accused products in an infringing manner. Indeed, these materials instruct customers to infringe each and every element of at least Claim 1 of the '116 Patent and, on their own, fully support Forescout's allegations of infringement. By at least the filing of this Counterclaim, Forescout disclosed the existence of the '116 Patent and identified at least some of Fortinet's and others' activities that infringe the '116 Patent. Thus, because of this disclosure, Fortinet

had knowledge of the '116 Patent, including Claim 1, and that its activities infringe the '116 Patent, including Claim 1, since at least the filing of this Amended Complaint.

182.    On information and belief, Fortinet further contributes to the infringement of one or more claims of the '116 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the accused product, or a material or apparatus for use in practicing a process claimed in the accused product, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '116 Patent, including Claim 1, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. The FortiNAC software as sold by Fortinet includes software components (e.g., the agent and/or Automated Threat Response features) that are programmed to be used to infringe the claims. These software components, sold as part of FortiNAC, are especially made for an infringing use, and have no substantial non-infringing use other than to practice the claimed methods.

183.    Fortinet's continued infringement of the '116 Patent causes harm to Forescout in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Forescout is entitled to monetary damages and, to the extent that the Court finds that Forescout and Fortinet compete, Forescout is entitled to injunctive relief.

184.    Fortinet's infringement of the '116 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

**Count IX – Infringement of U.S. Patent No. 10,530,764**

185.    Forescout incorporates by reference and realleges paragraphs 126 through 184 above, as if fully set forth herein.

186.    Forescout is the assignee and owner of U.S. Patent No. 10,530,764 (*Post-Connection Client Certificate Authentication*) ("the '764 Patent") (Exhibit G). The '764 Patent discloses a NAC device that detects a connection of an endpoint device at a network switch coupled to a network and restricts access of the endpoint device to prevent the endpoint device from accessing resources of the

network. The NAC device establishes a connection with the endpoint device, validates a client certificate corresponding to the endpoint device to authenticate the endpoint device as a corporate device, and grants the endpoint device access to the resources of the network. Forescout products practice this patent.  Forescout virtually marks its products with this patent in satisfaction of the virtual marking provisions of the United States Patent Act.

187.    Forescout's FortiNAC product infringes the '764 Patent, literally or equivalently. By way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation of Claim 1 of the '764 Patent. A preliminary claim chart (attached hereto as Exhibit H), based on publicly available information and subject to revision based on discovery in this case, shows Fortinet's FortiNAC product practices each limitation of Claim 1 of the '764 Patent, either literally or equivalently. On information and belief, Fortinet also infringes the other claims of the '764 Patent.

188.    Fortinet has directly infringed by making, selling, and/or offering to sell the accused FortiNAC product within the United States, and/or by importing such product into the United States. On information and belief, Fortinet has further directly infringed by using the infringing system within the United States, such as by testing its products and/or by using them internally at Fortinet.

189.    Fortinet has further induced infringement by others, including at least Fortinet's customers and end users, who literally infringe at least by using the accused product. Fortinet has had knowledge of its infringing activities at least as of the date of the filing of this Counterclaim. Fortinet's technical documentation evidences specific intent, at least as of the filing of this Counterclaim, to encourage infringement of the '764 Patent, as shown in the specific Fortinet documentation cited on a limitation-by-limitation basis in Exhibit H, which instructs users on how to infringe the '764 Patent. These materials actively coach users to use the accused products in an infringing manner. Indeed, these materials instruct customers to infringe each and every element of at least Claim 1 of the '764 Patent and, on their own, fully support Forescout's allegations of infringement. By at least the filing of this Counterclaim, Forescout disclosed the existence of the '764 Patent and identified at least some of Fortinet's and others' activities that infringe the '764 Patent. Thus, because of this disclosure, Fortinet had knowledge of the '764 Patent, including Claim 1, and that its activities infringe the '764 Patent, including Claim 1, since at least the filing of this Amended Complaint.

190.    On information and belief, Fortinet further contributes to the infringement of one or more claims of the '764 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the accused product, or a material or apparatus for use in practicing a process claimed in the accused product, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '764 Patent, including Claim 1, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. The FortiNAC software as sold by Fortinet includes software components (e.g., the agent and certificate validation feature) that are programmed to be used to infringe the claims. These software components, sold as part of FortiNAC, are especially made for an infringing use, and have no substantial non-infringing use other than to practice the claimed methods.

191.    Fortinet's continued infringement of the '764 Patent causes harm to Forescout in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Forescout is entitled to monetary damages and, to the extent that the Court finds that Forescout and Fortinet compete, Forescout is entitled to injunctive relief.

192.    Fortinet's infringement of the '764 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

**Count X– Infringement of U.S. Patent No. 9,027,079**

193.    Forescout incorporates by reference and realleges paragraphs 126 through 192 above, as if fully set forth herein.

194.    Forescout is the assignee and owner of U.S. Patent No. 9,027,079 (*Method and System for Dynamic Security Using Authentication Servers*) ("the '079 Patent") (Exhibit I). The '079 Patent discloses a method and system for network access control, including an authentication proxy that authenticates different access points, retrieves data from security databases and from Network Monitoring Systems, processes said data according to a dynamic security policy, and uses said processing outcome to determine the access level that will be granted to an access point in the

1   network. Forescout products practice this patent.  Forescout virtually marks its products with this

2   patent in satisfaction of the virtual marking provisions of the United States Patent Act.

3   195.   Forescout's FortiNAC product infringes the '079 Patent, literally or equivalently. By

4   way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation

5   of Claim 1 of the '079 Patent. A preliminary claim chart (attached hereto as Exhibit J), based on

6   publicly available information and subject to revision based on discovery in this case, shows

7   Fortinet's FortiNAC product practices each limitation of Claim 1 of the '079 Patent, either literally

8   or equivalently. On information and belief, Fortinet also infringes the other claims of the '079 Patent.

9   196.   Fortinet has directly infringed by making, selling, and/or offering to sell the accused

10  FortiNAC product within the United States, and/or by importing such product into the United States.

11  On information and belief, Fortinet has further directly infringed by using the infringing system

12  within the United States, such as by testing its products and/or by using them internally at Fortinet.

13  197.   Fortinet has further induced infringement by others, including at least Fortinet's

14  customers and end users, who literally infringe at least by using the accused product. Fortinet has

15  had knowledge of its infringing activities at least as of the date of the filing of this Counterclaim.

16  Fortinet's technical documentation evidences specific intent, at least as of the filing of this Counterclaim,

17  to encourage infringement of the '079 Patent, as shown in the specific Fortinet documentation cited on a

18  limitation-by-limitation basis in Exhibit J, which instructs users on how to infringe the '079 Patent.

19  These materials actively coach users to use the accused products in an infringing manner. Indeed, these

20  materials instruct customers to infringe each and every element of at least Claim 1 of the '079 Patent and,

21  on their own, fully support Forescout's allegations of infringement. By at least the filing of this

22  Counterclaim, Forescout disclosed the existence of the '079 Patent and identified at least some of

23  Fortinet's and others' activities that infringe the '079 Patent. Thus, because of this disclosure, Fortinet

24  had knowledge of the '079 Patent, including Claim 1, and that its activities infringe the '079 Patent,

25  including Claim 1, since at least the filing of this Amended Complaint.

26  198.   On information and belief, Fortinet further contributes to the infringement of one or

27  more claims of the '079 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing

28  into the United States a component of the accused product, or a material or apparatus for use in

practicing a process claimed in the accused product, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '079 Patent, including Claim 1, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. The FortiNAC software as sold by Fortinet includes software components (e.g., for policies and/or role management) that are programmed to be used to infringe the claims. These software components, sold as part of FortiNAC, are especially made for an infringing use, and have no substantial non-infringing use other than to practice the claimed methods.

199.    Fortinet's continued infringement of the '079 Patent causes harm to Forescout in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Forescout is entitled to monetary damages and, to the extent that the Court finds that Forescout and Fortinet compete, Forescout is entitled to injunctive relief.

200.    Fortinet's infringement of the '079 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

**Count XI – Infringement of U.S. Patent No. 6,363,489**

201.    Forescout incorporates by reference and realleges paragraphs 126 through 200 above, as if fully set forth herein.

202.    Forescout is the assignee and owner of U.S. Patent No. 6,363,489 (*Method for Automatic Intrusion Detection and Deflection in a Network*) ("the '489 Patent") (Exhibit K). The '489 Patent discloses a method and a system for providing security to a network by at least identifying an unauthorized user who is attempting to gain access to a node on the network, and preferably by then actively blocking that unauthorized user from further activities. Detection is facilitated by the unauthorized user providing a "mark," or specially crafted false data, that the unauthorized user gathers during the information collection stage performed before an attack. The mark is designed such that any attempt by the unauthorized user to use such false data results in the immediate identification of the unauthorized user as hostile and indicates that an intrusion of the

network is being attempted. Preferably, further access to the network is then blocked by diverting traffic from the unauthorized user to a secure zone, where the activities of the unauthorized user can be contained without damage to the network.  Forescout products practice this patent.  Forescout virtually marks its products with this patent in satisfaction of the virtual marking provisions of the United States Patent Act.

203.    Fortinet's FortiDeceptor (which is sold with FortiGate Intrusion Prevention System ("FortiGate IPS")) product infringes the '489 Patent, literally or equivalently. By way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation of Claim 1 of the '489 Patent. A preliminary claim chart (attached hereto as Exhibit L), based on publicly available information and subject to revision based on discovery in this case, shows Fortinet's FortiDeceptor practices each limitation of Claim 1 of the '489 Patent, either literally or equivalently. On information and belief, Fortinet also infringes the other claims of the '489 Patent.

204.    On information and belief, Fortinet has directly infringed by using the infringing system within the United States, such as by testing its products and/or by using them internally at Fortinet. Fortinet has further directly infringed at least system Claim 15 by making, selling, and/or offering to sell the accused FortiDeceptor within the United States, and/or by importing such products into the United States.

205.    Fortinet's infringement of the '489 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

**Count XII – Infringement of U.S. Patent No 10,652,278**

206.    Forescout incorporates by reference and realleges paragraphs 126 through 205 above, as if fully set forth herein.

207.    Forescout is the assignee and owner of U.S. Patent No. 10,652,278 (*Compliance Monitoring*) ("the '278 Patent") (Exhibit M). The '278 Patent discloses systems, methods, and related technologies for device compliance monitoring. In certain aspects, one or more compliance rules associated with a device classification are used to determine a compliance level of a device. The one or more compliance rules may be based on a standard. An action can be initiated according

1    to the compliance level.  Forescout products practice this patent.  Forescout virtually marks its

2    products with this patent in satisfaction of the virtual marking provisions of the United States Patent

3    Act.

4            208.    Fortinet's FortiNAC product infringes the '278 Patent, literally or equivalently. By

5    way of example, Fortinet has infringed literally or under the doctrine of equivalents each limitation

6    of Claim 1 of the '278 Patent. A preliminary claim chart (attached hereto as Exhibit N), based on

7    publicly available information and subject to revision based on discovery in this case, shows

8    Fortinet's products practice each limitation of Claim 1 of the '278 Patent, either literally or

9    equivalently. On information and belief, Fortinet also infringes the other claims of the '278 Patent.

10           209.    On information and belief, Fortinet has directly infringed by using the infringing

11   system within the United States, such as by testing its products and/or by using them internally at

12   Fortinet. Fortinet has further directly infringed at least system Claim 11 by making, selling, and/or

13   offering to sell the accused FortiNAC product within the United States, and/or by importing such

14   product into the United States.

15           210.    Fortinet has further induced infringement by others, including at least Fortinet's

16   customers and end users, who literally infringe at least by using the accused product. Fortinet has

17   had knowledge of its infringing activities at least as of the date of the filing of this Counterclaim.

18   Fortinet's technical documentation evidences specific intent, at least as of the filing of this Counterclaim,

19   to encourage infringement of the '278 Patent, as shown in the specific Fortinet documentation cited on a

20   limitation-by-limitation basis in Exhibit N, which instructs users on how to infringe the '278 Patent.

21   These materials actively coach users to use the accused products in an infringing manner. Indeed, these

22   materials instruct customers to infringe each and every element of at least Claim 1 of the '278 Patent and,

23   on their own, fully support Forescout's allegations of infringement. By at least the filing of this

24   Counterclaim, Forescout disclosed the existence of the '278 Patent and identified at least some of

25   Fortinet's and others' activities that infringe the '278 Patent. Thus, because of this disclosure, Fortinet

26   had knowledge of the '278 Patent, including Claim 1, and that its activities infringe the '278 Patent,

27   including Claim 1, since at least the filing of this Amended Complaint.

28           211.    On information and belief, Fortinet further contributes to the infringement of one or

more claims of the '278 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States a component of the accused product, or a material or apparatus for use in practicing a process claimed in the accused product, that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '278 Patent, including Claim 1, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. The FortiNAC software as sold by Fortinet includes software components (e.g., the agent and/or policies) that are programmed to be used to infringe the claims. These software components, sold as part of FortiNAC, are especially made for an infringing use, and have no substantial non-infringing use other than to practice the claimed methods.

212.    Fortinet's continued infringement of the '278 Patent causes harm to Forescout in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Forescout is entitled to monetary damages and, to the extent that the Court finds that Forescout and Fortinet compete, Forescout is entitled to injunctive relief.

213.    Fortinet's infringement of the '278 Patent has further injured, and continues to injure, Forescout in an amount to be proven at trial, but not less than a reasonable royalty and/or the lost profits that Forescout would have made but for Fortinet's acts of infringement.

## PRAYER FOR RELIEF

WHEREFORE, Forescout respectfully requests:

1. that judgment be entered that Fortinet has infringed one or more of the patents asserted herein, literally or under the doctrine of equivalents;

2. that, in accordance with 35 U.S.C. § 283, Fortinet and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them be preliminarily and permanently enjoined from (1) infringing the asserted patents and (2) making, using, selling, offering for sale, and/or importing the Fortinet products accused of infringement herein;

3. that the Court enter an award of damages sufficient to compensate Forescout for Fortinet's infringement under 35 U.S.C. § 284;

1    4. that the Court enter a declaratory judgment that the Fortinet patents asserted against

2    Forescout are invalid and/or unenforceable;

3    5. that the Court enter an award of punitive damages as a deterrent and punishment for

4    Fortinet's willful tortious interference with Forescout's business relationships;

5    6. that the case be found exceptional under 35 U.S.C. § 285 and that Forescout be awarded its

6    attorneys' fees, costs and expenses in this action, and prejudgment and post-judgment interest; and

7    7.  such other and further relief as the Court may deem just and proper.

8    **DEMAND FOR JURY TRIAL**

9    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Forescout respectfully

10   demands trial by jury.

11

12   Dated: July 6, 2021                    */s/ Katherine Vidal*
                                            KATHERINE VIDAL (SBN: 194971)
13                                          *kvidal@winston.com*
                                            MATTHEW R. MCCULLOUGH (SBN: 301330)
14                                          *mrmccullough@winston.com*
                                            WINSTON & STRAWN LLP
15                                          275 Middlefield Road, Suite 205
                                            Menlo Park, CA 94025
16                                          Telephone:     (650) 858-6500
                                            Facsimile:     (650) 858-6550
17
                                            KIMBALL R. ANDERSON (*pro hac vice*)
18                                          *kanderson@winston.com*
                                            WINSTON & STRAWN LLP
19                                          35 W. Wacker Drive
                                            Chicago, IL 60601-9703
20                                          Telephone:     (312) 558-5600
                                            Facsimile:     (312) 558-5700
21
                                            Attorneys for FORESCOUT TECHNOLOGIES, INC.
22

23

24

25

26

27

28