# EXHIBIT A

KIMBALL ANDERSON (*pro hac vice*)
*kanderson@winston.com*
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:     (312) 558-5600
Facsimile:      (312) 558-5700

KATHERINE VIDAL (SBN: 194971)
*kvidal@winston.com*
EIMERIC REIG-PLESSIS (SBN: 321273)
*ereigplessis@winston.com*
MATTHEW R. MCCULLOUGH (SBN: 301330)
*mrmccullough@winston.com*
WINSTON & STRAWN LLP
275 Middlefield Rd., Suite 205
Menlo Park, CA  94025
Telephone:     (650) 858-6500
Facsimile:      (650) 858-6550

Attorneys for Defendant
FORESCOUT TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FORTINET, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>FORESCOUT TECHNOLOGIES, INC.,<br><br>        Defendant. | CASE NO. 3:20-CV-03343-EMC<br><br>**DEFENDANT FORESCOUT TECHNOLOGIES, INC.'S INVALIDITY CONTENTIONS PURSUANT TO LOCAL PATENT RULES 3-3 AND 3-4** |

I.  **INTRODUCTION**

Pursuant to the Fed. R. of Civ. Proc. and this Court's Patent L.R. 3-3 and 3-4, Defendant Forescout Technologies, Inc. ("Forescout" or "Defendant") serves these Invalidity Contentions on Plaintiff Fortinet, Inc. ("Fortinet" or "Plaintiff") for United States Patent Nos. 9,369,299 (the "299 Patent"); 8,458,314 (the "'314 Patent"); and 9,948,662 (the "'662 Patent") (collectively, the "Asserted Patents"). These Invalidity Contentions are based on Forescout's current knowledge of the Asserted Patents and prior art, along with its understanding of Fortinet's infringement allegations set forth in Fortinet's August 27, 2020 Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"). Based on Fortinet's Infringement Contentions, Fortinet is asserting the following claims against Forescout (collectively, the "Asserted Claims"):

| **Patent** | **Asserted Claim(s)** |
|---|---|
| The '299 Patent | 1, 3–8, 10–16, and 18–21 |
| The '314 Patent | 1–13, 15–18, and 20 |
| The '662 Patent | 1–2, 5–7, 9–10, and 13–15 |

Forescout submits these Invalidity Contentions without waiving any arguments about the sufficiency or substance of Fortinet's Infringement Contentions, and without waiving any challenges to Fortinet's apparent claim constructions. Based in whole or in part on the claim interpretations that Fortinet appears to be asserting, and its alleged application of those interpretations to the accused products, Forescout contends that each cited prior art reference listed below anticipates or renders obvious the Asserted Claims, as described below and in the associated claim charts, attached hereto and incorporated by reference as if fully set forth herein.

Identifying these items of prior art and other defenses in connection with these Invalidity Contentions does not serve as an admission, or waiver of any argument or position refuting, that any alleged "Accused Product," including any current or past version of any alleged "Accused Product," is covered by, or infringes any of the Asserted Claims (or any other claims of the Asserted Patents), particularly when the Asserted Claims are properly construed. Further, Forescout's Invalidity Contentions should not be construed as an admission regarding the proper construction of any asserted

1

claim, should not be deemed to represent or limit the claim constructions that Forescout will advance in this action, and should not be deemed to relate to the non-infringement positions Forescout may advance in this action.

Forescout's Invalidity Contentions reflect Forescout's current knowledge and contentions as of this early date in this action.  Forescout's Invalidity Contentions are based in whole or in part on its present understanding of the Asserted Claims and Fortinet's apparent position as to the scope of the Asserted Claims as applied in its Local Patent Rule 3-1 disclosure.  Accordingly, Forescout's Invalidity Contentions (including the attached invalidity claim charts) reflect, to the extent possible, Fortinet's expected alternative and potentially inconsistent positions as to claim construction and claim scope.

Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to modify and supplement, without prejudice, these Invalidity Contentions.  In addition, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to raise additional prior art and invalidity defenses not included in these Invalidity Contentions, including those based on additional discovery or other issues raised by Fortinet in this action or any related action.  Forescout further reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to amend these Invalidity Contentions should, for example, Fortinet provide any information that it failed to provide in its Initial Disclosures and/or its Infringement Contentions.

Further, because discovery has only recently begun, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise, amend, and/or supplement the information provided herein, including identifying and relying on additional prior art references should Forescout's further search and analysis yield additional information or references, consistent with the Local Patent Rules and the Federal Rules of Civil Procedure.  Forescout expressly reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to rely on witness testimony about the prior art references identified below to supplement these Invalidity Contentions, where appropriate.  Moreover, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise its ultimate Invalidity Contentions concerning the invalidity of

the Asserted Claims, which may change depending upon the Court's construction of the Asserted Claims, any findings as to the priority date of the Asserted Claims, and/or positions that Fortinet or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the Asserted Claims and therefore anticipate the claim and/or examples of disclosures in view of which a person of ordinary skill in the art at the time each of the alleged inventions was made, would have considered each limitation, and therefore the claim as a whole, obvious.  The references, however, may contain additional support upon which Forescout may rely that is not specifically identified in these contentions.  The citations included in each chart are illustrative, not exhaustive.  For any given quotation or excerpt, for example, Forescout expressly reserves the right to introduce other text and images (including but not limited to surrounding, related, or explanatory text, images, or un-cited portions of the prior art references) from the same or other prior art references that may help to provide context to the quotation or excerpt.  Furthermore, where Forescout cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating, in any manner, to the figure.  Similarly, where Forescout cites to particular text referring to a figure, the citation should be understood to include the corresponding figure as well.  Forescout may also rely on other documents and information, including cited references and prosecution histories for the Asserted Patents or related patents (including but not limited to patents and/or patent applications, within the same family or at any time assigned to Fortinet), and witness testimony, including expert testimony, to explain, amplify, illustrate, demonstrate, provide context or aid in understanding the cited portions of the references.

## II.      P.R. 3-3(A): IDENTIFICATION OF PRIOR ART

Pursuant to Local Patent Rule 3-3, and subject to Forescout's reservation of rights, Forescout contends that one or more Asserted Claims of the Asserted Patents are anticipated or rendered obvious by the prior art identified below and as reflected in the attached Exhibits (A-1–A-7, B-1–B-4, and C-1–C-5).  Forescout also contends that the Accused Products do not infringe any Asserted Claim of any

Asserted Patent.

Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to assert that the Asserted Claims are invalid under pre-AIA 35 U.S.C. § 102(f) in the event Forescout obtains additional evidence that the named inventors of the Asserted Patents did not invent (either alone or in conjunction with others) the subject matter claimed in the Asserted Patents. Should Forescout obtain such evidence, it will provide the name of the person(s) from whom, and the circumstances under which, the invention or any part of it was derived.

Forescout further intends to rely on admissions of the named inventors and Fortinet concerning the prior art, including statements found in the Asserted Patents, their prosecution histories, and/or other related patents or patent applications, any deposition testimony, and the papers filed and any evidence submitted by Fortinet in conjunction with this action.

Finally, Forescout may rely on testimony from the authors or named inventors listed on the below references.

The following patents and patent publications are prior art to the Asserted Patents under at least pre-AIA 35 U.S.C. §§ 102(a), (b), (e), and/or (g) or post-AIA 35 U.S.C. § 102(a)(1) and/or (2).

| Table A-1 | | |
|---|---|---|
| **Chart(s)** | **Country/Patent Number** | **Publication/Issue Date** |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 7,054,944 ("Tang") | May 30, 2006 |
| C-2 | U.S. Patent No. 7,331,061 ("Ramsey") | February 12, 2008 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 7,437,755("Farino") | October 14, 2008 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 7,463,590 ("Mualem") | December 9, 2008 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 7,703,126 ("Khosravi") | April 20, 2010 |
| A-2, A-3, A-4 | U.S. Patent No. 7,853,687 ("Le Moigne") | December 14, 2010 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 7,874,006 ("Hassan") | January 18, 2011 |
| A-1, A-2, | U.S. Patent No. 7,882,538 ("Palmer") | February 1, 2011 |

4

| Chart(s) | Country/Patent Number | Publication/Issue Date |
|---|---|---|
| **Table A-1** | | |
| A-3, A-4 | | |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 7,904,558 ("Malik") | March 8, 2011 |
| A-2, A-3, A-4 | U.S. Patent No. 7,921, 686 ("Bagepalli") | April 12, 2011 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 7,925,729 ("Bush") | April 12, 2011 |
| C-1, C-2, C-3 | U.S. Patent No. 8,116,243 ("Zhiying") | February 14, 2012 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 8,125,927 ("Nandy") | February 28, 2012 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 8,406,140 ("Halbert") | March 26, 2013 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,520,512 ("Gilde") | August 27, 2013 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 8,543,665 ("Ansari") | September 24, 2013 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,544,058 ("Lim") | September 24, 2013 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,549,584 ("Singh") | October 1, 2013 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,549,585 ("Dhanakshirur") | October 1, 2013 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,590,004 ("Comay '004") | November 19, 2013 |
| A-2 | U.S. Patent No. 9,027,079 ("Comay '079") | May 5, 2015 |
| A-2 | WIPO Patent Application WO 2008/099402 ("Comay '402") | August 21, 2008 |
| A-2, A-3, A-4 | U.S. Patent No. 8,639,800 ("Friedrich '800") | January 28, 2014 |
| A-3 | WIPO Patent Application WO 2008/099403 ("Friedrich '403") | August 21, 2008 |
| A-1, A-2, A-3, A-4 | U.S. Patent No. 8,972,589 ("Roese") | March 3, 2015 |
| B-1, B-2, B-3, B-4 | U.S. Patent No. 9,077,611 ("Cordray") | July 7, 2015 |

| | Table A-1 | |
|---|---|---|
| **Chart(s)** | **Country/Patent Number** | **Publication/Issue Date** |
| C-1, C-2, C-3 | U.S. Patent No. 9,628,442 ("Zhu") | April 18, 2017 |
| C-1, C-2, C-3 | U.S. Patent No. 10,257,161 ("L.") | April 9, 2019 |
| B-4 | U.S. Patent Application Pub. No. 2003/0115292 ("Griffin") | June 19, 2003 |
| B-1, B-2, B-3, B-4 | U.S. Patent Application Pub. No. 2005/0081063 ("Patrick") | April 14, 2005 |
| A-1, A-2, A-3, A-4 | U.S. Patent Application Pub. No. 2005/0278542 ("Pierson") | December 15, 2005 |
| A-1, A-2, A-3, A-4, B-1, B-2, B-3, B-4 | U.S. Patent Application Pub. No. 2007/0143629 ("Hardjono") | June 21, 2007 |
| B-1, B-2, B-3, B-4 | U.S. Patent Application Pub. No. 2007/0192500 ("Lum '500") | August 16, 2007 |
| A-1, A-2, A-3, A-4, B-1, B-2, B-3, B-4 | U.S. Patent Application Pub. No. 2007/0192858 ("Lum '858") | August 16, 2007 |
| B-1, B-2, B-3, B-4 | U.S. Patent Application Pub. No. 2007/0208857 ("Danner") | September 6, 2007 |
| C-1, C-2, C-3 | U.S. Patent Application Pub. No. 2014/0215580 ("Behringer") | July 31, 2014 |
| A-5 | U.S. Patent No. 8,234,705 ("Roskind") | July 31, 2012 |

The following non-patent publications are prior art to the Asserted Patents under at least pre-AIA 35 U.S.C. §§ 102(a), (b), and/or (g) or post-AIA 35 U.S.C. § 102(a)(1).

| | Table A-2 | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Publication Date** | **Author(s) / Publisher** |
| B-1, B-2, B-3, B-4 | SSL-Explorer: Administrators Guide Version 0.2.10 ("SSL-Explorer Guide") | 2006 | 3SP Ltd. |
| B-1, B-2, B-3, B-4 | Barracuda SSL VPN Administrator's Guide Version 1.0 ("Barracuda SSL | 2008 | Barracuda Networks |

| Table A-2 | | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Publication Date** | **Author(s) / Publisher** |
| | VPN Guide") | | |
| C-1 | HP TippingPoint Local Security Manager User's Guide TOS Version 3.6 ("HP TippingPoint Guide") | October 2013 | Hewlett-Packard Development Company, L.P. |
| A-7, C-5 | CounterACT Console User Manual for Version 6.2 ("CounterACT 6.2 Manual") | 2007 | Forescout |
| C-4 | CounterACT Console User Manual Version 7.0.0 ("CounterACT 7 Manual") | 2012 | Forescout |
| A-6 | Cisco NAC Appliance – Clean Access Manager Installation and Administration Guide Release 4.1 ("Cisco NAC Guide") | December 2006 | Cisco |

The following items, on information and belief, were publicly used, publicly known, offered for sale, and/or sold, and are therefore prior art to the Asserted Patents under at least pre-AIA 35 U.S.C. §§ 102(a), (b), and/or (g) or post-AIA 35 U.S.C. § 102(a)(1).

| Table A-3 | | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Date of Public Knowledge, Use, Offer for Sale and/or Sale** | **Author(s) / Publisher** |
| B-1, B-2, B-3, B-4 | SSL-Explorer | 2006 | 3SP Ltd. |
| B-1, B-2, B-3, B-4 | Barracuda SSL VPN | 2008 | Barracuda Networks |
| C-1 | HP TippingPoint | October 2013 | Hewlett-Packard Development Company, L.P. |
| A-7, C-5 | CounterACT 6.2 | 2007 | Forescout |
| C-4 | CounterACT 7 | 2012 | Forescout |
| A-6 | Cisco NAC | December 2006 | Cisco |

Moreover, the following references illustrate the state of the art as of Fortinet's claimed priority

dates, along with any references cited or otherwise referred to in these references or any applications (including provisional applications) to which these references claim priority:

- U.S. Patent No. 8,555,341
- U.S. Patent No. 8,156,558
- U.S. Patent No. 7,814,542
- U.S. Patent No. 7,672,283
- U.S. Patent Application Pub. No. 2006/0123133
- U.S. Patent Application Pub. No. 2010/0011094
- U.S. Patent No. 9,917,783

## III.   P.R. 3-3(b): PRIOR ART THAT ANTICIPATES OR RENDERS OBVIOUS ONE OR MORE ASSERTED CLAIMS

Subject to Forescout's reservation of rights, Forescout identifies the prior art that anticipates the Asserted Claims in its Exhibits A-1–A-7 ('299 Patent), B-1–B-4 ('314 Patent), and C-1–C-5 ('662 Patent).

In the attached charts and below, Forescout identifies the following combinations of prior art now known to Forescout that render obvious one or more of the Asserted Claims under 35 U.S.C. § 103.  Forescout also discloses the motivation to combine such items.  Forescout reserves the right to assert that any of the identified prior art anticipates one or more of the Asserted Claims under pre-AIA 35 U.S.C. § 102 depending upon the Court's construction of the Asserted Claims, any findings as to the priority date of the Asserted Claims, and/or positions that Fortinet or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

### A.   Exemplary Combinations

#### 1.   Exemplary Combinations re the '299 Patent (Charts A-1 – A-6)

As disclosed in Forescout's Charts A-2 and A-3, a Person of Ordinary Skill in the Art ("POSITA") would be motivated to combine Comay '004 and Friedrich '800, which both share the same assignee, based at least on the similarity of their descriptions.

As disclosed in Forescout's charts A-1 through A-6, a POSITA would be motivated to

1  combine Palmer, Comay '004, Friedrich '800, Pierson, Roskind, or Cisco NAC with one or more of

2  the following references: Farino, Khosravi, Le Moigne, Palmer, Bagepalli, Gilde, Lim, Singh,

3  Dhanakshirur, Comay '004, Friedrich '800, Roese, Pierson, Hardjono, or Lum '858.  As disclosed

4  for specific limitations in each of charts A-1 through A-6, these references are relevant to certain

5  features that were well understood in the prior art, and a POSITA would have been motivated to

6  make the combinations identified within the charts.

7      **2.      Exemplary Combinations re the '314 Patent (Charts B-1 – B-4)**

8          As disclosed in Forescout's Charts B-2 and B-3, a POSITA would be motivated to combine

9  SSL-Explorer and Barracuda SSL VPN based on least on the similarity of their descriptions and the

10  use of identical descriptions/graphics in certain parts of each respective guide.

11          As disclosed in Forescout's charts B-1 through B-4, a POSITA would be motivated to

12  combine Patrick, SSL Explorer, Barracuda SSL VPN, or Griffin with one or more of the following

13  references:  Tang, Mualem, Hassan, Malik, Bush, Nandy, Halbert, Ansari, Cordray, Patrick,

14  Hardjono, Lum '500, Lum '858, or Danner.  As disclosed for specific limitations in each of charts B-

15  1 through B-4, these references are relevant to certain features that were well understood in the prior

16  art, and a POSITA would have been motivated to make the combinations identified within the

17  charts.

18      **3.      Exemplary Combinations re the '662 Patent (Charts C-1 – C-5)**

19          As disclosed in Forescout's charts C-1 through C-3, a POSITA would be motivated to

20  combine HP TippingPoint, Ramsey, or Behringer with one or more of the following references:

21  Zhiying, Zhu, L, or Behringer.  As disclosed for specific limitations in each of charts C-1 through C-

22  5, these references are relevant to certain features that were well understood in the prior art, and a

23  POSITA would have been motivated to make the combinations identified within the charts.

24      **B.      Motivations to Combine**

25          The Asserted Claims do not represent innovation over the prior art, but instead would be no

26  more than the result of ordinary skill and common sense. No showing of a specific motivation is

27  required to combine the prior art (including the references disclosed above), as each combination

28  would not have produced unexpected results, and at most would simply represent a known alternative

to one of skill in the art. See *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 414-17 (2007).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton," and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420.

### 1.  The Nature of the Problem Being Solved

For example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) based on the nature of the problem being solved, *e.g.*, the problem of protecting a network from unauthorized access.  To the extent additional relevant sources—such as the Asserted Patents, the prosecution history, or testimony or documents provided by named inventors or companies involved in the development of the technology described in the Asserted Patents— identify additional problems that were allegedly being solved, Forescout reserves the right to rely on such problems that were allegedly being solved.

### 2.  The Express, Implied and Inherent Teachings of the Prior Art

As another example, a person of ordinary skill would have been motivated to combine or modify the disclosed prior art (including to form the exemplary combinations identified above in Section III.A) based on the express, implied and inherent teachings of the prior art, *e.g.*, the benefits of protecting a network from unauthorized access.  Forescout also incorporates its claim charts (which specifically compare the teachings of the prior art to the limitations of the Asserted Claims) by reference.  To the extent the prior art, including the prior art identified throughout these Invalidity Contentions, provides additional teachings, Forescout reserves the right to rely on such teachings. Additionally, Forescout reserves the right to rely on passages from the prior art beyond those explicitly quoted or cited below.

### 3.  The Knowledge of Persons of Ordinary Skill in the Art

As another example, a person of ordinary skill in the art would have been motivated to combine or modify any of the disclosed prior art (including to form the specific exemplary combinations identified above in Section III.A) because it was within such person's knowledge to combine or modify the prior art to include various features omitted from any single prior art reference or combination of

references.  Such features include, but are not limited to, the following: using a device's identity and location, directing a user to an agent, ongoing monitoring of a network, using a VPN concentrator, considering regulatory compliance, using scan policies, using dynamically applied firewall rules, managing roles, automatic remediation, detecting IP, port, and identifier to determine endpoint type, detecting, identifying, and categorizing network endpoints, allowing devices on a network without sponsor intervention, using time-based permissions, storing identifiers, creating guest accounts, limiting network access, or storing network parameters and identifiers in a database.

### 4.  The Predictable Results Obtained in Combining the Different Elements of the Prior Art According to Known Methods

As another example, a person of ordinary skill in the art would have been motivated to form combinations based on any of the disclosed prior art to include features omitted from any single prior art reference or combination of references because doing so would have generated predictable results and could have been accomplished according to known methods.  Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

### 5.  The Predictable Results Obtained in Simple Substitution of One Known Element for Another

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have involved substituting one feature for another feature known in the art and would have generated predictable results.  Such features that could have been added by substitution include, but are not limited to, each of the features identified in Section III.B.3., above.

### 6.  The Use of a Known Technique to Improve Similar Devices, Methods, or Products in the Same Way

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have used known features to improve similar devices, methods, or products (including but not limited to devices, methods, or products in or related to the field of

network access control) in the same way, and would have generated predictable results. Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

### 7. The Predictable Results Obtained in Applying a Known Technique to a Known Device, Method, or Product Ready for Improvement

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have involved applying a known technique to improve a known device, method, or product (including but not limited to devices, methods, or products in or related to the field of network access control), and would have generated predictable results. Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

### 8. The Finite Number of Identified Predictable Solutions that Had a Reasonable Expectation of Success

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have been obvious to try. Specifically, a person of ordinary skill in the art would have recognized that, within the field of network access control (for example), there were a finite number of identified, predictable potential features that could solve a recognized need or problem, and a person of ordinary skill in the art would have pursued incorporating these known features with a reasonable expectation of success. Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

### 9. Known Work in Various Technological Fields that Could Be Applied to the Same or Different Technological Fields Based on Design Incentives or Other Market Forces

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A), including the prior art references, which are in the same field of the Asserted Patents and each other (such as network access control), or in a different field, to include various features because doing so would have been prompted by design incentives or market forces, variations or principles applying such features that were known in the prior art, and doing so would have generated

predictable results.  Such design incentives or market forces include, but are not limited to, those identified by the Asserted Patents themselves and the prior art (discussed above in Sections III.B.1–III.B.8). Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

## IV.     P.R. 3-3(c): CLAIM CHARTS

Pursuant to Local P.R. 3-3(c), and subject to Forescout's reservation of rights contained herein, the invalidity claim charts, attached hereto as Exhibits A-1–A-7, B-1–B-4, and C-1–C-5, identify where in each item of prior art each element of each asserted claim is found for the Asserted Claims.

The cited portions of the prior art references are examples and representative of the content of the prior art references, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art.  To the extent any cited prior art reference fails to explicitly teach or suggest one or more limitations of that claim, the limitation would nonetheless have been inherent in and/or implied by the reference and/or obvious to one of ordinary skill in the art at the time of the alleged invention(s), either alone or by the combination of the cited prior art references with any of the other listed references and/or common knowledge disclosing the missing claim limitations.  Non-limiting examples of certain combinations are outlined above.  It should be understood that citations within each exhibit are exemplary, not exhaustive, and should not be construed as the sole evidentiary support in the reference.

## V.     P.R. 3-3(d): INVALIDITY BASED ON SECTION 101, INDEFINITENESS, LACK OF ENABLEMENT, AND LACK OF WRITTEN DESCRIPTION

Pursuant to Local P.R. 3-3(d), and subject to Forescout's reservation of rights, Forescout includes below the grounds on which Forescout contends the Asserted Claims are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under pre-AIA 35 U.S.C. § 112.

As noted above, Fortinet has not yet provided a claim construction for any of the terms and phrases that Forescout anticipates will be in dispute.  Forescout, therefore, cannot provide a complete list of its indefiniteness, lack of written description, and lack of enablement defenses because Forescout does not know whether Fortinet will proffer a construction for certain terms and phrases

that would be broader than, or inconsistent with, a construction supportable by the disclosure set forth in the specification.  Accordingly, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to supplement, amend, and/or modify these indefiniteness, lack of written description, and lack of enablement defenses as discovery progresses and in accordance with Fortinet's claim construction, infringement and validity disclosures.

## A.    Section 101

Each and every asserted claim of the '299, '314, and '662 Patents are invalid as patent-ineligible under 35 U.S.C. § 101.  Forescout incorporates by reference its briefing and argument relating to its Motion to Dismiss.  *See* Dkt. Nos. 24, 28, and 45.  Fortinet has not identified any factual issue or potential claim construction that would preclude judgment as a matter of law regarding the § 101 defense, and Forescout contends there is none.  To the extent Fortinet (or the Court) identifies any such issue, Forescout reserves the right to amend this contention to address such factual issue or claim construction.

## B.    Indefiniteness

Pre-AIA 35 U.S.C. § 112, ¶ 2 contains two requirements: "first, [the claim] must set forth what the applicant regards as his invention and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (internal quotes removed) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)); *see also Justacomm-Texas Software, LLC, v. Axway, Inc.*, Case No. 6:10-cv-00011-LED, Dkt. No. 1079 at 6 (E.D. Tex. July 5, 2012).  "A determination of whether a claim recites the subject matter which the applicant regards as his invention and is sufficiently definite, so as to satisfy the requirements of 35 U.S.C. § 112, ¶ 2, is a legal conclusion . . . ." *Allen Eng'g*, 299 F.3d at 1343.  Under the first requirement of pre-AIA § 112, ¶ 2, a court must hold a claim invalid "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in [the] claim is not what the patentee regarded as his invention." *Id.* at 1349.  Under the second requirement of pre-AIA § 112, ¶ 2 and post-AIA § 112(b), a claim is sufficiently definite only if, viewed in light of the specification and prosecution history, it informs those skilled in the art about the scope of the invention with reasonable certainty. *Nautilus,*

*Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

Various Asserted Claims identified below do not comply with the requirements of pre-AIA 35 U.S.C. § 112, ¶ 2, for failing to particularly point out and distinctly claim "the subject matter which the applicant regards as his invention" for the following reasons. For example, as demonstrated either individually or collectively by the claim elements addressed below, various Asserted Claims fail to inform those skilled in the art about the scope of the invention with reasonable certainty, rendering those claims (and any claims depending therefrom) invalid as indefinite.[1] The following chart identifies the claims in which the identified terms and phrases explicitly appear, although those identified terms and phrases are also incorporated into additional dependent Asserted Claims. Forescout's contentions as to indefiniteness also include those dependent claims. Additionally, to the extent any Asserted Claim containing the identified limitations or phrases or substantially identical limitations or phrases is not specifically identified in the table below, Forescout still identifies such a claim based on its inclusion of such term or phrase.

| Patent | Claim(s) | Indefinite Term and/or Phrase |
|--------|----------|-------------------------------|
| '299 | 1, 11 | "communicating with said RAD to make real-time changes to its running configuration" |
| '299 | 1, 11 | "said enforcement is vendor-independent" |
| '299 | 1, 3, 4, 8 | "said network access" |
| '299 | 1, 5 | "said network access control" |
| '299 | 1 | "said out of band network control" |
| '299 | 1, 11 | "said client device" |
| '299 | 1, 11 | "said agent identifying client to said NACS" / "identifying client to said NACS by said agent" |
| '299 | 3 | "The system of claim 1, wherein said network access comprises: a VPN concentrator that is said RAD" |

---

[1] Forescout's analysis is preliminary, and Forescout reserves the right to assert claim constructions other than "indefinite" for each of the terms identified below.

| Patent | Claim(s) | Indefinite Term and/or Phrase |
|--------|----------|-------------------------------|
| '299 | 8 | "The system of claim 5, wherein said network access of said connecting user device is controlled by filters based on identity and location of connecting user and said RAD." |
| '299 | 11 | "said system" |
| '314 | 1, 15, 20 | "using said templates assigned to said sponsor by said network administrator" |
| '314 | 1 | "said sponsors not having network management administrative privileges over said network administrator" |
| '314 | 9 | "The method of claim 8, wherein said template is a guest template comprising" |
| '314 | 11 | "The method of claim 1, wherein endpoint control delegation comprises" |
| '314 | 12 | "The method of claim 1, wherein temporary network users (TNUs) are categorized based on template used to create said TNUs' accounts in an access control database of said network, wherein association with said TNU template remains after said account is created." |
| '314 | 20 | "at least one microprocessor executing instructions delegating, by said network administrator, network management administrative privileges to said network sponsor" |

The above limitations of the Asserted Claims, even when read in light of the specification and prosecution history, fail to inform with reasonable certainty one of ordinary skill in the art about the scope of the invention.  For example, to one skilled in the art, at least the terms identified as part of Category 1 are not adequately defined in the common specification for the Asserted Patents.  Their lack of reasonably ascertainable scope is compounded by Fortinet's overbroad and vague infringement contentions.  Thus, the Asserted Claims fail to distinctly claim the subject matter that the applicant regards as the invention and are invalid under the second paragraph of pre-AIA 35 U.S.C. § 112.  *See Nautilus*, 572 U.S. at 907–911.

### C.    Lack of Written Description, Lack of Enablement

Various Asserted Claims are invalid for failure to comply with the written description requirement under pre-AIA 35 U.S.C. § 112, ¶ 1.  To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor]

invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Id.*

Various Asserted Claims are invalid for failure to comply with the enablement requirement under pre-AIA 35 U.S.C. § 112, ¶ 1. To satisfy the enablement requirement of 35 U.S.C § 112, ¶ 1, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Moreover, "[i]t is the specification, not the knowledge of one skilled in the art that must supply the novel aspects of the invention in order to constitute adequate enablement." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997). The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation": (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Various Asserted Claims identified below do not comply with the requirements of pre-AIA 35 U.S.C. § 112, ¶ 1, for failing to satisfy the written description or enablement requirements. For example, as demonstrated either individually or collectively by the claim elements addressed below, the specification fails to convey that the inventor had possession of that subject matter and the specification fails to teach how to make and use the full scope of the invention without undue experimentation. The following chart identifies the claims in which the identified terms and phrases explicitly appear, although those identified terms and phrases are also incorporated into additional dependent Asserted Claims. Forescout's contentions as to written description and enablement also include those dependent claims. Additionally, to the extent any Asserted Claim containing the identified limitations or phrases or substantially identical limitations or phrases is not specifically identified in the table below, Forescout still identifies such a claim based on its inclusion of such term

or phrase.

| Patent | Claim(s) | Term and/or Phrase Lacking Written Description and/or Enablement |
|--------|----------|------------------------------------------------------------------|
| '299 | 1 | "endpoint compliance of said connections" |
| '299 | 1 | "usage policy enforcement of said connections" |
| '299 | 1, 11 | "wherein said enforcement is out of band and is accomplished on said RAD, comprising communicating with said RAD to make real-time changes to its running configuration, whereby said enforcement is vendor-independent and said system is RAD-agnostic" / "wherein said enforcement is out of band and is accomplished on said RAD, comprising communicating with said RAD to make real-time changes to its running configuration, whereby said enforcement is vendor-independent and said system is RAD-agnostic" |
| '299 | 1, 11 | "said RAD directing said client device to an agent; on said user device, running said agent; said agent identifying client to said NACS" / "directing said client device to an agent by said RAD; running said agent on said user device; identifying client to said NACS by said agent" |
| '299 | 3 | "The system of claim 1, wherein said network access comprises: a VPN concentrator that is said RAD" |
| '299 | 4 | "The system of claim 1, wherein said network access comprises a connection attempt comprising constructing a connection model from information about user and said RAD." |
| '299 | 10 | "wherein said usage policy enforcement comprises data recording whereby security threat analysis and regulatory compliance reports are generated, and at-risk device access comprises an automatic remediation option" |
| '299 | 19 | "wherein said NAF comprises dynamically applied firewall rules based on assigned IP network address" |
| '314 | 1 | "creating templates for users and devices of said computer network by said network administrator at an administrator account on a workstation connected to said computer network" |
| '314 | 1, 15, 20 | "transferring responsibility for said users and devices from said network administrator to said sponsor when said template of said users and devices is associated with said profile of said sponsor" / "transferring responsibility for said endpoint from said network administrator to said sponsor when said template of said endpoint is associated with said profile of said sponsor" / "transferring responsibility for said endpoint from said network administrator to said network sponsor when said template of said endpoint is associated with said profile of said sponsor record of said network sponsor" |

| Patent | Claim(s) | Term and/or Phrase Lacking Written Description and/or Enablement |
|--------|----------|------------------------------------------------------------------|
| '314 | 3, 17 | "defining whether said sponsor can manually register profiled devices" / "identifying if said sponsor can manually register profiled devices" |
| '314 | 9 | "The method of claim 8, wherein said template is a guest template comprising:<br>time period that guest user can access said network;<br>role said guest user will be assigned, whereby access to said network is limited;<br>scan policy to enforce compliance of guest's system before allowed on said network; and<br>authentication method to determine how said guest will authenticate to said network." |
| '314 | 12 | "The method of claim 1, wherein temporary network users (TNUs) are categorized based on template used to create said TNUs' accounts in an access control database of said network, wherein association with said TNU template remains after said account is created." |
| '314 | 16 | "The system of claim 15, wherein template rules are created to automatically allow devices on said network with no intervention by said sponsor." |
| '314 | 18 | "said sponsor profile enabling said sponsor to view devices managed by said sponsor" |

## VI.   DISCLOSURES AND PRODUCTIONS

Alongside these contentions, Forescout makes a production in compliance with the Patent Local Rules of this District.

### A.   Technical Documents

Forescout produces technical documents showing the operation of the Accused Products in accordance with Patent Local Rule 3-4(a) at FORESCOUT00000001–7690.  Discovery is ongoing, and Forescout reserves the right to supplement this production as additional information is discovered in accordance with the Local Rules of this District, the Federal Rules, and any other applicable statutes or rules.

### B.   Prior Art Documents

Forescout produces prior art documents, including the above cited prior art patents and publications, in accordance with Patent Local Rule 3-4(b) at FORESCOUT00007691–11267. Discovery is ongoing, and Forescout reserves the right to supplement this production as additional information is discovered in accordance with the Local Rules of this District, the Federal Rules, and

19

1  any other applicable statutes or rules.

2      **C.**      **Comparable Agreements and Agreements Supporting Damages Case**

3          Forescout produces agreements in accordance with Patent Local Rule 3-4(c) and 3-4(e) that it

4  may rely on in connection with its damages case at FORESCOUT00011268–11322.  The agreement

5  at FORESCOUT00011294–301 is subject to a notice requirement and cannot yet be produced.

6  Forescout expects to produce that agreement on October 26, 2020 barring any objection by the third

7  party to the production of that agreement.  This production should not be taken as an admission that

8  any such agreement is comparable.  Forescout will disclose its damages contentions in compliance

9  with the local rules.  Discovery is ongoing, and Forescout reserves the right to supplement this

10  production as additional information is discovered in accordance with the Local Rules of this District,

11  the Federal Rules, and any other applicable statutes or rules.

12      **D.**      **Financial Documents**

13          Forescout produces financial information in accordance with Patent Local Rule 3-4(d) at

14  FORESCOUT00011323.  Discovery is ongoing, and Forescout reserves the right to supplement this

15  production as additional information is discovered in accordance with the Local Rules of this District,

16  the Federal Rules, and any other applicable statutes or rules.

17

18  Dated: October 12, 2020           */s/ Kimball R. Anderson*
                                       KIMBALL R. ANDERSON (*pro hac vice*)
19                                     *kanderson@winston.com*
                                       WINSTON & STRAWN LLP
20                                     35 W. Wacker Drive
                                       Chicago, IL  60601-9703
21                                     Telephone:     (312) 558-5600
                                       Facsimile:     (312) 558-5700
22
                                       KATHERINE VIDAL (SBN: 194971)
23                                     *kvidal@winston.com*
                                       EIMERIC REIG-PLESSIS (SBN: 321273)
24                                     *ereigplessis@winston.com*
                                       MATTHEW R. MCCULLOUGH (SBN: 301330)
25                                     *mrmccullough@winston.com*
                                       WINSTON & STRAWN LLP
26                                     275 Middlefield Rd., Suite 205
                                       Menlo Park, CA  94025
27                                     Telephone:     (650) 858-6500
                                       Facsimile:     (650) 858-6550
28

Attorneys for Defendant
FORESCOUT TECHNOLOGIES, INC.

1

**CERTIFICATE OF SERVICE**

2

     I am employed in the City and County of San Mateo, State of California.  I am over the age of

3

18 and not a party to the within action; my business address is Winston & Strawn LLP, 275 Middlefield

4

Road, Suite 205, Menlo Park, CA 94025.

5

     On October 12, 2020, I caused to be served the following documents described as:

6

**FORESCOUT TECHNOLOGIES, INC. INVALIDITY CONTENTIONS**

7

on the interested parties in this action listed on the service list below.

8

9

☒    by electronically transmitting a true and correct copy thereof via e-mail to the following, in accordance with their agreement to be served electronically pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).  No error messages were received after said transmission.

10

11

SERVICE LIST:

12

John M. Neukom
James Y. Pak
Skadden Arps Slate Meagher & Flom LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301-1908
Email: John.Neukom@skadden.com
Email: james.pak@skadden.com

13

14

15

16

Douglas R. Nemec
Leslie Ann Demers
Rachel R. Blitzer
Skadden Arps Slate Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Email: Douglas.Nemec@skadden.com
Email: leslie.demers@skadden.com
Email: rachel.blitzer@skadden.com

17

18

     I declare under penalty of perjury under the laws of the United States of America that the

19

foregoing is true and correct.

20

     Executed on October 12, 2020 at Foster City, California.

21

22

23

_____
Liberty Quan

24

25

26

27

28

DEFENDANT'S INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-03343-EMC