# EXHIBIT B

KIMBALL ANDERSON (*pro hac vice*)
kanderson@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:     (312) 558-5600
Facsimile:      (312) 558-5700

KATHERINE VIDAL (SBN: 194971)
kvidal@winston.com
EIMERIC REIG-PLESSIS (SBN: 321273)
ereigplessis@winston.com
MATTHEW R. MCCULLOUGH (SBN: 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Rd., Suite 205
Menlo Park, CA  94025
Telephone:     (650) 858-6500
Facsimile:      (650) 858-6550

Attorneys for Defendant
FORESCOUT TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FORTINET, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>FORESCOUT TECHNOLOGIES, INC.,<br><br>    Defendant. | CASE NO. 3:20-CV-03343-EMC<br><br>**DEFENDANT FORESCOUT TECHNOLOGIES, INC.'S SUPPLEMENTAL INVALIDITY CONTENTIONS PURSUANT TO LOCAL PATENT RULES 3-3 AND 3-4**<br><br>**('034 AND '421 PATENTS)** |

## I.   INTRODUCTION

Pursuant to the Fed. R. of Civ. Proc. and this Court's Patent L.R. 3-3 and 3-4, Defendant Forescout Technologies, Inc. ("Forescout" or "Defendant") serves these Invalidity Contentions on Plaintiff Fortinet, Inc. ("Fortinet" or "Plaintiff") for United States Patent Nos. 9,894,034 ("the '034 Patent"); and 9,503,421 ("the '421 Patent") (collectively, the "Asserted Patents"). These Invalidity Contentions are based on Forescout's current knowledge of the Asserted Patents and prior art, along with its understanding of Fortinet's infringement allegations set forth in Fortinet's February 4, 2021 Infringement Contentions ("Infringement Contentions"). Based on these Infringement Contentions, Fortinet is asserting the following claims against Forescout (collectively, the "Asserted Claims"):

| Patent | Asserted Claim(s) |
|---|---|
| The '034 Patent | 1-4, 9, 13-18, 23, and 27-28 |
| The '421 Patent | 1, 4-10, 15, and 18-24 |

Forescout submits these Invalidity Contentions without waiving any arguments about the sufficiency or substance of Fortinet's Infringement Contentions, and without waiving any challenges to Fortinet's apparent claim constructions. Based in whole or in part on the claim interpretations that Fortinet appears to be asserting, and its alleged application of those interpretations to the accused products, Forescout contends that each cited prior art reference listed below anticipates or renders obvious the Asserted Claims, as described below and in the associated claim charts, attached hereto and incorporated by reference as if fully set forth herein.

Identifying these items of prior art and other defenses in connection with these Invalidity Contentions does not serve as an admission, or waiver of any argument or position refuting, that any alleged "Accused Product," including any current or past version of any alleged "Accused Product," is covered by, or infringes any of the Asserted Claims (or any other claims of the Asserted Patents), particularly when the Asserted Claims are properly construed. Further, Forescout's Invalidity Contentions should not be construed as an admission regarding the proper construction of any asserted claim, should not be deemed to represent or limit the claim constructions that Forescout will advance

in this action, and should not be deemed to relate to the non-infringement positions Forescout may advance in this action.

Forescout's Invalidity Contentions reflect Forescout's current knowledge and contentions as of this early date in this action.  Forescout's Invalidity Contentions are based in whole or in part on its present understanding of the Asserted Claims and Fortinet's apparent position as to the scope of the Asserted Claims as applied in its Local Patent Rule 3-1 disclosure.  Accordingly, Forescout's Invalidity Contentions (including the attached invalidity claim charts) reflect, to the extent possible, Fortinet's expected alternative and potentially inconsistent positions as to claim construction and claim scope.

Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to modify and supplement, without prejudice, these Invalidity Contentions.  In addition, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to raise additional prior art and invalidity defenses not included in these Invalidity Contentions, including those based on additional discovery or other issues raised by Fortinet in this action or any related action.  Forescout further reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to amend these Invalidity Contentions should, for example, Fortinet provide any information that it failed to provide in its Initial Disclosures and/or its Infringement Contentions.

Further, because discovery has only recently begun, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise, amend, and/or supplement the information provided herein, including identifying and relying on additional prior art references should Forescout's further search and analysis yield additional information or references, consistent with the Local Patent Rules and the Federal Rules of Civil Procedure.  Forescout expressly reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to rely on witness testimony about the prior art references identified below to supplement these Invalidity Contentions, where appropriate.  Moreover, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise its ultimate Invalidity Contentions concerning the invalidity of the Asserted Claims, which may change depending upon the Court's construction of the Asserted

Claims, any findings as to the priority date of the Asserted Claims, and/or positions that Fortinet or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the Asserted Claims and therefore anticipate the claim and/or examples of disclosures in view of which a person of ordinary skill in the art at the time each of the alleged inventions was made, would have considered each limitation, and therefore the claim as a whole, obvious.  The references, however, may contain additional support upon which Forescout may rely that is not specifically identified in these contentions.  The citations included in each chart are illustrative, not exhaustive.  For any given quotation or excerpt, for example, Forescout expressly reserves the right to introduce other text and images (including but not limited to surrounding, related, or explanatory text, images, or un-cited portions of the prior art references) from the same or other prior art references that may help to provide context to the quotation or excerpt. Furthermore, where Forescout cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating, in any manner, to the figure.  Similarly, where Forescout cites to particular text referring to a figure, the citation should be understood to include the corresponding figure as well.  Forescout may also rely on other documents and information, including cited references and prosecution histories for the Asserted Patents or related patents (including but not limited to patents and/or patent applications, within the same family or at any time assigned to Fortinet), and witness testimony, including expert testimony, to explain, amplify, illustrate, demonstrate, provide context or aid in understanding the cited portions of the references.

## II.    P.R. 3-3(A): IDENTIFICATION OF PRIOR ART

Pursuant to Local Patent Rule 3-3, and subject to Forescout's reservation of rights, Forescout contends that one or more Asserted Claims of the Asserted Patents are anticipated or rendered obvious by the prior art identified below and as reflected in the attached Exhibits (D-1 to D-9, and E-1 to E-7). Forescout also contends that the Accused Products do not infringe any Asserted Claim of any Asserted Patent.

Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to assert that the Asserted Claims are invalid under pre-AIA 35 U.S.C. § 102(f) in the event Forescout obtains additional evidence that the named inventors of the Asserted Patents did not invent (either alone or in conjunction with others) the subject matter claimed in the Asserted Patents.  Should Forescout obtain such evidence, it will provide the name of the person(s) from whom, and the circumstances under which, the invention or any part of it was derived.

Forescout further intends to rely on admissions of the named inventors and Fortinet concerning the prior art, including statements found in the Asserted Patents, their prosecution histories, and/or other related patents or patent applications, any deposition testimony, and the papers filed and any evidence submitted by Fortinet in conjunction with this action.

Finally, Forescout may rely on testimony from the authors or named inventors listed on the below references.

The following patents and patent publications are prior art to the Asserted Patents under at least post-AIA 35 U.S.C. § 102(a)(1) and/or (2).

**Table A-1**

| Charts(s) | Patent | Publication/Issue Date |
|---|---|---|
| **D-1**, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No. 2003/0097590 ("Syvanne") | May 22, 2003 |
| **D-2**, D-1, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No. 2003/0167405 ("Freund") | Sept. 4, 2003 |
| **D-3**, D-1, D-2, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No. 2009/0070474 ("Aura") | March 12, 2009 |
| **D-4**, D-1, D-2, D-3, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No.  2008/0282336 ("Diaz") | Nov. 13, 2008 |

4

| **D-5**, D-1, D-2, D-3, D-4, D-6, D-7, D-8, D-9 | U.S. Pat. No. 9,973,534 ("Mahaffey") | May 15, 2008 |
|---|---|---|
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No. 2008/0148402 ("Bogineni") | June 19, 2008 |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. No. 8,844,041 ("Kienzle") | Sept. 23, 2013 |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. No. 7,587,518 ("Bahl") | Sept. 8, 2009 |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | European Patent No 2,015,511 B1 ("Mishra") | Jan. 14, 2009 |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. App. Pub. No. 2003/0172145 ("Nguyen") | Sept. 11, 2003 |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | U.S. Pat. No. 8,316,113 ("Linden") | July 1, 2010 |
| **E-1** | U.S. Pat. No. 10,505,972 ("Thomas") | Dec. 10, 2019 |
| **E-2** | U.S. Pat. App. Pub. No. 2003/0233438 ("Hutchinson") | Dec. 18, 2003 |
| **E-3** | U.S. Pat. No. 9,824,320 ("DeJardine") | Nov. 21, 2017 |
| **E-4** | U.S. Pat. App. Pub. No. 2012/0224057 ("Gill") | Sept. 6, 2012 |
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No.10,367,827 ("Seward") | July 30, 2019 |

5

| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No. 9,128,985 ("Marquardt") | Sept. 8, 2015 |
|---|---|---|
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No. 9,009,139 ("Huang") | Apr. 14, 2015 |
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. App. Pub. No. 2013/0311509 ("Sorkin") | Nov. 21, 2013 |
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No. 8,990,184 ("Baum") | Mar. 24, 2015 |
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No. 9,088,606 ("Ranum") | July 21, 2015 |
| E-1, E-2, E-3, E-4, E-5, E-6, E-7 | U.S. Pat. No. 8,955,091 ("Kailash") | Feb. 10, 2015 |

The following non-patent publications are prior art to the Asserted Patents under at least post-AIA 35 U.S.C. § 102(a)(1).

| Table A-2 | | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Publication Date** | **Author(s) / Publisher** |
| **D-6** | Domain, Private and Public: Understanding Firewall Profiles[1] ("Domain 1") | Aug. 2012 | Windows Wave, Unlock for Us |
| | How does Windows Firewall works?[2] ("Domain 2") | Nov. 6, 2011 | Windows For Us |
| **D-7** | McAfee® Agent 4.6.0 Product Guide | 2011 | McAfee, Inc. |
| | McAfee ePolicy Orchestrator 4.6.0 Product Guide | 2010 | McAfee, Inc. |
| **D-8, E-5** | CounterACT Console User Manual Version 7.0.0 ("CounterACT 7 | 2012 | Forescout |

---

[1] Archived and available at https://web.archive.org/web/20121210222743/http://blog.unlockforus.org/2012/08/domain-private-and-public-understanding.html (last visited March 18, 2021).  The anchor text "Windows Firewall" includes a hyperlink to a copy of Domain 2.

[2] Archived and available at https://web.archive.org/web/20111119031917/http://windowsforus.com:80/post.aspx?id=7 *and* https://web.archive.org/web/20121210222743/http://windowsforus.com/post.aspx?id=7 (redirecting to https://web.archive.org/web/20130903155514/http://windowsforus.com/post.aspx?id=7) (last visited March 19, 2021).

| Table A-2 | | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Publication Date** | **Author(s) / Publisher** |
| | Manual") | | |
| **D-9**, D-2, D-3 | Aruba Virtual Intranet Access (VIA) Version 1.0 Application Note ("Aruba") | 2012 | Aruba Networks, Inc. |
| D-1, D-2, D-3, D-4, D-5, D-6, D-7, D-8, D-9 | RFC 1393 - TraceRoute Using an IP Option ("TraceRoute") | Jan. 1993 | Xylogics, Inc. |
| E-6 | ArcSight Console User's Guide for ArcSight ESM™ 6.0c with CORR Engine ("ArcSight 6 Guide") | Sept. 20, 2012 | ArcSight, Hewlett-Packard Development Company |
| E-7 | Splunk® Enterprise Security Administer Splunk Enterprise Security 6.0.0 ("Splunk ES 6 Admin Guide") | Sept. 27, 2013 | Splunk Inc. |
| | Splunk® Enterprise Security Use Splunk Enterprise Security 6.0.0 ("Splunk ES 6 User Guide") | | |
| | Splunk® Enterprise Security Use Cases 6.0.0 ("Splunk ES 6 Use Cases Guide") | | |
| | Splunk® Enterprise Security REST API Reference 6.0.0 ("Splunk ES 6 API Guide") | | |

The following items, on information and belief, were publicly used, publicly known, offered for sale, and/or sold, and are therefore prior art to the Asserted Patents under at least pre-AIA 35 U.S.C. §§ 102(a), (b), and/or (g) or post-AIA 35 U.S.C. § 102(a)(1).

| Table A-3 | | | |
|---|---|---|---|
| **Chart(s)** | **Title** | **Date of Public Knowledge, Use, Offer for Sale and/or Sale** | **Author(s) / Publisher** |
| **D-8, E-5** | CounterACT 7 | 2012 | Forescout |
| **D-6** | Windows Firewall | 2011–12 | Windows, Microsoft |
| **D-7** | McAfee Agent and/or McAfee ePO | 2011 | McAfee, Inc. |
| **D-9**, D-2, D-3 | Aruba Virtual Intranet Access (VIA) | 2012 | Aruba Networks, Inc. |
| **E-6** | ArcSight ESM 6.0c | 2012 | ArcSight, Hewlett-Packard |

| | | Table A-3 | | |
|---|---|---|---|---|
| **Chart(s)** | **Title** | **Date of Public Knowledge, Use, Offer for Sale and/or Sale** | **Author(s) / Publisher** |
| | with CORR Engine ("ArcSight 6") | | Development Company |
| **E-7** | Splunk Enterprise Security 6.0.0 ("Splunk ES 6") | 2013 | Splunk Inc. |

Moreover, the following references, in addition to those cited above, illustrate the state of the art as of Fortinet's claimed priority dates, along with any references cited or otherwise referred to in these references or any applications (including provisional applications) to which these references claim priority:

- McAfee Announces Redesigned ePolicy Orchestrator: New three-tiered architecture features server-based "agent handler"

- Introduction to McAfee ePolicy Orchestrator

- Microsoft Network Access Protection (NAP)

- Microsoft NAP: NAC for the rest of us

- Microsoft's version of NAC

- Microsoft offers free, basic NAC for Windows-only shoes

- Tested Solution: Protecting your network with Microsoft Network Access Protection (NAP) and Allied Telesis Switches

- Cisco NAC Agent – Should I remove it?

- Cisco Content Hub—Cisco NAC Appliance Agents

- Cisco NAC Appliance Configuration Quick Start Guide, Release 4.1

- Cisco Press—Chapter 3: Posture Agents

- Aruba Networks Integrates NAC with MDM and MAM

- Secure Network Access Control for Modern IT (Aruba Networks)

- IT Work Flow Automation ("IT Workflow")

- Splunk founders Story

- The Origins of Splunk

- Download Splunk Enterprise for Free

- Splunk Phantom Security Orchestration & Automation

- SOC Automation:  Detect, Respond & Monitor

- SOAR/Security Orchestration Automation and Response

- Security Orchestration and automation with ArcSight

- ArcSight Security Intelligence

- NitroSecurity Redefines SIEM Industry

- Security Analytics

## III.   P.R. 3-3(b): PRIOR ART THAT ANTICIPATES OR RENDERS OBVIOUS ONE OR MORE ASSERTED CLAIMS

Subject to Forescout's reservation of rights, Forescout identifies the prior art that anticipates the Asserted Claims in its Exhibits D-1 to D-9 ('034 Patent), and E-1 to E-7 ('421 Patent).

In the attached charts and below, Forescout identifies the following combinations of prior art now known to Forescout that render obvious one or more of the Asserted Claims under 35 U.S.C. § 103.  Forescout also discloses the motivation to combine such items.  Forescout reserves the right to assert that any of the identified prior art anticipates one or more of the Asserted Claims under pre-AIA 35 U.S.C. § 102 depending upon the Court's construction of the Asserted Claims, any findings as to the priority date of the Asserted Claims, and/or positions that Fortinet or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

### A.   Exemplary Combinations

#### 1.   Exemplary Combinations re the '034 Patent (Charts D-1 – D-9)

As disclosed in Forescout's Charts D-1 to D-9, a Person of Ordinary Skill in the Art ("POSITA") would be motivated to combine Syvanne, Freund, Aura, Diaz, Mahaffey, Domain, McAfee Agent, CounterACT 7, and Aruba, individually or jointly with Kienzle, TraceRoute, Bogineni, Bahl, Mishra, Nguyen, and/or Linden.  As disclosed for specific limitations in each of charts D-1 through D-9, these references are relevant to certain features that were well understood in the prior art, and a POSITA would have been motivated to make the combinations identified within the charts.

### 2. Exemplary Combinations re the '421 Patent (Charts E-1 – E-7)

As disclosed in Forescout's Charts E-1 to E-7, a POSITA would be motivated to combine Thomas, Hutchinson, DeJardine, Gill, CounterACT 7, ArcSight 6, and Splunk ES 6, individually or jointly with Seward, Marquardt, Huang, Sorkin, Baum, Ranum, and/or Kailash. As disclosed for specific limitations in each of charts D-1 through E-7, these references are relevant to certain features that were well understood in the prior art, and a POSITA would have been motivated to make the combinations identified within the charts.

### B. Motivations to Combine

The Asserted Claims do not represent innovation over the prior art, but instead would be no more than the result of ordinary skill and common sense. No showing of a specific motivation is required to combine the prior art (including the references disclosed above), as each combination would not have produced unexpected results, and at most would simply represent a known alternative to one of skill in the art. See *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 414-17 (2007).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton," and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420.

### 1. The Nature of the Problem Being Solved

For example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) based on the nature of the problem being solved, *e.g.*, the problem of protecting a network from unauthorized access.  To the extent additional relevant sources—such as the Asserted Patents, the prosecution history, or testimony or documents provided by named inventors or companies involved in the development of the technology described in the Asserted Patents— identify additional problems that were allegedly being solved, Forescout reserves the right to rely on such problems that were allegedly being solved.

### 2. The Express, Implied and Inherent Teachings of the Prior Art

As another example, a person of ordinary skill would have been motivated to combine or modify the disclosed prior art (including to form the exemplary combinations identified above in

Section III.A) based on the express, implied and inherent teachings of the prior art, *e.g.*, the benefits of protecting a network from unauthorized access.  Forescout also incorporates its claim charts (which specifically compare the teachings of the prior art to the limitations of the Asserted Claims) by reference.  To the extent the prior art, including the prior art identified throughout these Invalidity Contentions, provides additional teachings, Forescout reserves the right to rely on such teachings.  Additionally, Forescout reserves the right to rely on passages from the prior art beyond those explicitly quoted or cited below.

### 3.   The Knowledge of Persons of Ordinary Skill in the Art

As another example, a person of ordinary skill in the art would have been motivated to combine or modify any of the disclosed prior art (including to form the specific exemplary combinations identified above in Section III.A) because it was within such person's knowledge to combine or modify the prior art to include various features omitted from any single prior art reference or combination of references.  Such features include, but are not limited to, the following: security programs on a client device to check for network connections, anti-virus, malware scanning, content filtering, a VPN, a network firewall, comparing identification information, registering endpoint security applications, receiving information from a network security service, high availability (HA) cluster of network appliances, hash functions, serial or parallel performance of tasks, determining whether to perform a task based on results of a previous task, transferring results from one task to the next, normalizing data, asset correlation, and reporting including based on an alert policy.

### 4.   The Predictable Results Obtained in Combining the Different Elements of the Prior Art According to Known Methods

As another example, a person of ordinary skill in the art would have been motivated to form combinations based on any of the disclosed prior art to include features omitted from any single prior art reference or combination of references because doing so would have generated predictable results and could have been accomplished according to known methods.  Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

**5.   The Predictable Results Obtained in Simple Substitution of One Known Element for Another**

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have involved substituting one feature for another feature known in the art and would have generated predictable results.  Such features that could have been added by substitution include, but are not limited to, each of the features identified in Section III.B.3., above.

**6.   The Use of a Known Technique to Improve Similar Devices, Methods, or Products in the Same Way**

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have used known features to improve similar devices, methods, or products (including but not limited to devices, methods, or products in or related to the field of network access control) in the same way, and would have generated predictable results.  Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

**7.   The Predictable Results Obtained in Applying a Known Technique to a Known Device, Method, or Product Ready for Improvement**

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have involved applying a known technique to improve a known device, method, or product (including but not limited to devices, methods, or products in or related to the field of network access control), and would have generated predictable results.  Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

**8.   The Finite Number of Identified Predictable Solutions that Had a Reasonable Expectation of Success**

As another example, a person of ordinary skill in the art would have been motivated to combine

12

or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A) because doing so would have been obvious to try.  Specifically, a person of ordinary skill in the art would have recognized that, within the field of network access control (for example), there were a finite number of identified, predictable potential features that could solve a recognized need or problem, and a person of ordinary skill in the art would have pursued incorporating these known features with a reasonable expectation of success.  Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

**9.  <u>Known Work in Various Technological Fields that Could Be Applied to the Same or Different Technological Fields Based on Design Incentives or Other Market Forces</u>**

As another example, a person of ordinary skill in the art would have been motivated to combine or modify the prior art (including to form the specific exemplary combinations identified above in Section III.A), including the prior art references, which are in the same field of the Asserted Patents and each other (such as network access control), or in a different field, to include various features because doing so would have been prompted by design incentives or market forces, variations or principles applying such features that were known in the prior art, and doing so would have generated predictable results.  Such design incentives or market forces include, but are not limited to, those identified by the Asserted Patents themselves and the prior art (discussed above in Sections III.B.1–III.B.8). Such features include, but are not limited to, each of the features identified in Section III.B.3., above.

## IV.  P.R. 3-3(c): CLAIM CHARTS

Pursuant to Local P.R. 3-3(c), and subject to Forescout's reservation of rights contained herein, the invalidity claim charts, attached hereto as Exhibits D-1 to D-9 and E-1 to E-5 identify where in each item of prior art each element of each asserted claim is found for the Asserted Claims.

The cited portions of the prior art references are examples and representative of the content of the prior art references, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art.  To the extent any cited prior art reference fails to

explicitly teach or suggest one or more limitations of that claim, the limitation would nonetheless have been inherent in and/or implied by the reference and/or obvious to one of ordinary skill in the art at the time of the alleged invention(s), either alone or by the combination of the cited prior art references with any of the other listed references and/or common knowledge disclosing the missing claim limitations.   Non-limiting examples of certain combinations are outlined above.   It should be understood that citations within each exhibit are exemplary, not exhaustive, and should not be construed as the sole evidentiary support in the reference.

## V.       P.R. 3-3(d): INVALIDITY BASED ON SECTION 101, INDEFINITENESS, LACK OF ENABLEMENT, AND LACK OF WRITTEN DESCRIPTION

Pursuant to Local P.R. 3-3(d), and subject to Forescout's reservation of rights, Forescout includes below the grounds on which Forescout contends the Asserted Claims are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under pre-AIA 35 U.S.C. § 112.

As noted above, Fortinet has not yet provided a claim construction for any of the terms and phrases that Forescout anticipates will be in dispute.   Forescout, therefore, cannot provide a complete list of its indefiniteness, lack of written description, and lack of enablement defenses because Forescout does not know whether Fortinet will proffer a construction for certain terms and phrases that would be broader than, or inconsistent with, a construction supportable by the disclosure set forth in the specification.   Accordingly, Forescout reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to supplement, amend, and/or modify these indefiniteness, lack of written description, and lack of enablement defenses as discovery progresses and in accordance with Fortinet's claim construction, infringement and validity disclosures.

### A.       Section 101

Each and every asserted claim of the '034 and '421 Patents are invalid as patent-ineligible under 35 U.S.C. § 101.   Forescout incorporates by reference its briefing and argument relating to its Motion to Dismiss.   *See* Dkt. Nos. 71 and 74.   Fortinet has not identified any factual issue or potential

claim construction that would preclude judgment as a matter of law regarding the § 101 defense, and Forescout contends there is none.  To the extent Fortinet (or the Court) identifies any such issue, Forescout reserves the right to amend this contention to address such factual issue or claim construction.

### B.    Indefiniteness

Pre-AIA 35 U.S.C. § 112, ¶ 2 contains two requirements: "first, [the claim] must set forth what the applicant regards as his invention and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (internal quotes removed) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)); *see also Justacomm-Texas Software, LLC, v. Axway, Inc.*, Case No. 6:10-cv-00011-LED, Dkt. No. 1079 at 6 (E.D. Tex. July 5, 2012).  "A determination of whether a claim recites the subject matter which the applicant regards as his invention and is sufficiently definite, so as to satisfy the requirements of 35 U.S.C. § 112, ¶ 2, is a legal conclusion . . . ." *Allen Eng'g*, 299 F.3d at 1343.  Under the first requirement of pre-AIA § 112, ¶ 2, a court must hold a claim invalid "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in [the] claim is not what the patentee regarded as his invention." *Id.* at 1349.  Under the second requirement of pre-AIA § 112, ¶ 2 and post-AIA § 112(b), a claim is sufficiently definite only if, viewed in light of the specification and prosecution history, it informs those skilled in the art about the scope of the invention with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

Various Asserted Claims identified below do not comply with the requirements of pre-AIA 35 U.S.C. § 112, ¶ 2, for failing to particularly point out and distinctly claim "the subject matter which the applicant regards as his invention" for the following reasons.  For example, as demonstrated either individually or collectively by the claim elements addressed below, various Asserted Claims fail to inform those skilled in the art about the scope of the invention with reasonable certainty, rendering those claims (and any claims depending therefrom) invalid as indefinite.[3]  The following chart

---

[3] Forescout's analysis is preliminary, and Forescout reserves the right to assert claim constructions other than "indefinite" for each of the terms identified below.

identifies the claims in which the identified terms and phrases explicitly appear, although those identified terms and phrases are also incorporated into additional dependent Asserted Claims. Forescout's contentions as to indefiniteness also include those dependent claims. Additionally, to the extent any Asserted Claim containing the identified limitations or phrases or substantially identical limitations or phrases is not specifically identified in the table below, Forescout still identifies such a claim based on its inclusion of such term or phrase.

| Patent | Claim(s) | Indefinite Term and/or Phrase |
|---|---|---|
| '034 | 1, 15 | "initialization of the endpoint security application" |
| '034 | 3–4 | "said determining whether the client device is connected indirectly to the private network via an intermediate public network" |
| '421 | 15 | "A security information and event management (SIEM) system comprising: … one or more processors coupled to the non-transitory storage device and operable to execute the security application to perform a method comprising:" |
| '421 | 8, 22 | "normalizing the results" |
| '421 | 9, 23 | "core network assets" |

The above limitations of the Asserted Claims, even when read in light of the specification and prosecution history, fail to inform with reasonable certainty one of ordinary skill in the art about the scope of the invention.  For example, to one skilled in the art, at least the terms identified as part of Category 1 are not adequately defined in the common specification for the Asserted Patents.  Their lack of reasonably ascertainable scope is compounded by Fortinet's overbroad and vague infringement contentions.  Thus, the Asserted Claims fail to distinctly claim the subject matter that the applicant regards as the invention and are invalid under the second paragraph of pre-AIA 35 U.S.C. § 112. *See Nautilus*, 572 U.S. at 907–911.

### C.    Lack of Written Description, Lack of Enablement

Various Asserted Claims are invalid for failure to comply with the written description requirement under pre-AIA 35 U.S.C. § 112, ¶ 1.  To satisfy the written description requirement, the

description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Id.*

Various Asserted Claims are invalid for failure to comply with the enablement requirement under pre-AIA 35 U.S.C. § 112, ¶ 1. To satisfy the enablement requirement of 35 U.S.C § 112, ¶ 1, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Moreover, "[i]t is the specification, not the knowledge of one skilled in the art that must supply the novel aspects of the invention in order to constitute adequate enablement." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997). The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation": (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Various Asserted Claims identified below do not comply with the requirements of pre-AIA 35 U.S.C. § 112, ¶ 1, for failing to satisfy the written description or enablement requirements. For example, as demonstrated either individually or collectively by the claim elements addressed below, the specification fails to convey that the inventor had possession of that subject matter and the specification fails to teach how to make and use the full scope of the invention without undue experimentation, particularly in view of the claim scope that Fortinet appears to be asserting in its infringement contentions. The following chart identifies the claims in which the identified terms and phrases explicitly appear, although those identified terms and phrases are also incorporated into additional dependent Asserted Claims. Forescout's contentions as to written description and enablement also include those dependent claims. Additionally, to the extent any Asserted Claim

17

containing the identified limitations or phrases or substantially identical limitations or phrases is not specifically identified in the table below, Forescout still identifies such a claim based on its inclusion of such term or phrase.

| Patent | Claim(s) | Term and/or Phrase Lacking Written Description and/or Enablement |
|--------|----------|------------------------------------------------------------------|
| '034 | 1, 15 | "during initialization of the endpoint security application" |
| '034 | 1, 15 | "determining … a network connection state of the client device with respect to a private network" |
| '034 | 3, 17 | "presence of identification information stored on the client device that is associated with one or more network appliances that are protecting the private network" |
| '034 | 4, 18 | "whether the identification information matches previously stored identification information associated with a network appliance with which the client security application is registered" |
| '034 | 9, 23 | "receiving … identification information associated with the network appliance" |
| '421 | 4, 18 | "wherein the plurality of security tasks of the work flow are performed serially" |
| '421 | 7, 21 | "wherein the plurality of security tasks of the work flow are performed in parallel" |
| '421 | 10, 24 | "reporting the results of the plurality of security tasks based on an alert policy" |

## VI.   DISCLOSURES AND PRODUCTIONS

Alongside these contentions, Forescout makes a production in compliance with the Patent Local Rules of this District.

### A.   Technical Documents

Forescout has produced technical documents showing the operation of the Accused Products in accordance with Patent Local Rule 3-4(a) at FORESCOUT00000001–7690 and FORESCOUT00014175–18881.   Discovery is ongoing, and Forescout reserves the right to supplement this production as additional information is discovered in accordance with the Local Rules of this District, the Federal Rules, and any other applicable statutes or rules.

1

**B.** **Prior Art Documents**

2       Forescout produces prior art documents, including the above cited prior art patents and

3   publications, in accordance with Patent Local Rule 3-4(b) at FORESCOUT0011324–14174.

4   Discovery is ongoing, and Forescout reserves the right to supplement this production as additional

5   information is discovered in accordance with the Local Rules of this District, the Federal Rules, and

6   any other applicable statutes or rules.

7       **C.** **Comparable Agreements and Agreements Supporting Damages Case**

8       Forescout has produced agreements in accordance with Patent Local Rule 3-4(c) and 3-4(e)

9   that it may rely on in connection with its damages case at FORESCOUT00011268–11322.

10      **D.** **Financial Documents**

11      Forescout produces financial information in accordance with Patent Local Rule 3-4(d) at

12  FORESCOUT00018882.  Discovery is ongoing, and Forescout reserves the right to supplement this

13  production as additional information is discovered in accordance with the Local Rules of this District,

14  the Federal Rules, and any other applicable statutes or rules.

15

16   Dated: March 22, 2021                    */s/ Kimball R. Anderson*
                                              KIMBALL R. ANDERSON (*pro hac vice*)
17                                            *kanderson@winston.com*
                                              WINSTON & STRAWN LLP
18                                            35 W. Wacker Drive
                                              Chicago, IL  60601-9703
19                                            Telephone:    (312) 558-5600
                                              Facsimile:    (312) 558-5700
20
                                              KATHERINE VIDAL (SBN: 194971)
21                                            *kvidal@winston.com*
                                              EIMERIC REIG-PLESSIS (SBN: 321273)
22                                            *ereigplessis@winston.com*
                                              MATTHEW R. MCCULLOUGH (SBN: 301330)
23                                            *mrmccullough@winston.com*
                                              WINSTON & STRAWN LLP
24                                            275 Middlefield Rd., Suite 205
                                              Menlo Park, CA  94025
25                                            Telephone:    (650) 858-6500
                                              Facsimile:    (650) 858-6550
26
                                              Attorneys for Defendant
27                                            FORESCOUT TECHNOLOGIES, INC.

28

**<u>CERTIFICATE OF SERVICE</u>**

I am employed in the City and County of San Mateo, State of California.  I am over the age of 18 and not a party to the within action; my business address is Winston & Strawn LLP, 275 Middlefield Road, Suite 205, Menlo Park, CA 94025.

On March 22, 2021, I caused to be served the following documents described as:

**FORESCOUT TECHNOLOGIES, INC. SUPPLEMENTAL INVALIDITY CONTENTIONS**

on the interested parties in this action listed on the service list below.

[X] by electronically transmitting a true and correct copy thereof via e-mail to the following, in accordance with their agreement to be served electronically pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).  No error messages were received after said transmission.

<u>SERVICE LIST:</u>

John M. Neukom
James Y. Pak
Skadden Arps Slate Meagher & Flom LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301-1908
Email: John.Neukom@skadden.com
Email: james.pak@skadden.com

Douglas R. Nemec
Leslie Ann Demers
Rachel R. Blitzer
Skadden Arps Slate Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Email: Douglas.Nemec@skadden.com
Email: leslie.demers@skadden.com
Email: rachel.blitzer@skadden.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 22, 2021 at Foster City, California.

_____
Liberty Quan