1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    FORTINET, INC.,                          Case No.  20-cv-03343-EMC (TSH)

8                    Plaintiff,

9            v.                               **DISCOVERY ORDER**

10   FORESCOUT TECHNOLOGIES, INC.,            Re: Dkt. No. 217

11                   Defendant.

12

13          The parties have a discovery dispute concerning Fortinet's efforts to take discovery into

14   Forescout's litigation with Advent.  By way of background, Forescout alleges that on February 9,

15   2020 it publicly announced that Advent would acquire all outstanding shares of Forescout

16   common stock for $33.00 per share in an all-cash transaction valued at $1.9 billion.  ECF No. 107

17   (Counterclaim) ¶ 135.  Forescout alleges that Fortinet filed the present lawsuit one business day

18   before the transaction was expected to close, *id*. ¶¶ 138, 141, and that the Complaint was largely a

19   press release disparaging Forescout.  *Id*. ¶¶ 139, 140.  Following the filing of the Complaint,

20   Forescout alleges that Fortinet engaged in a smear campaign, and immediately after the campaign

21   began, Advent announced that it did not plan to proceed with the acquisition.  *Id*. ¶¶ 142-46.  The

22   Advent acquisition eventually closed on much less favorable financial terms to Forescout.  *Id*. ¶

23   146.  Fortinet says that at some point Forescout sued Advent, and in that lawsuit Forescout's

24   financial solvency and business practices were called into question.

25          Fortinet now seeks discovery concerning the Advent lawsuit.  Specifically, it seeks four

26   categories of documents:

27                   1.  Documents sufficient to show (a) the origination of the dispute
                     over Forescout's merger with Advent, (b) the cause of the dispute
28                   over Forescout's merger with Advent, and (c) representations by

United States District Court
Northern District of California

Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.);

2. Documents sufficient to show any defenses or allegations by Advent (including allegations that Forescout engaged in a channel stuffing scheme) in connection with the Advent lawsuit;

3. Deposition transcripts and expert reports, if any, from the Advent lawsuit, that bear upon (a) the origination of the dispute over Forescout's merger with Advent, (b) the cause of the dispute over Forescout's merger with Advent, (c) representations by Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.) as to Advent's motivations in attempting to walk away from the merger with Forescout, and (d) whether Forescout engaged in a channel stuffing scheme;

4. All Documents filed or produced in the Advent lawsuit that reference Fortinet or this Lawsuit.

Fortinet also seeks Rule 30(b)(6) deposition testimony on the following topics:

1. (a) The origination of the dispute over Forescout's merger with Advent, (b) the cause of the dispute over Forescout's merger with Advent, and (c) representations by Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.) as to Advent's motivations in attempting to walk away from the merger with Forescout.

2. Defenses or allegations by Advent (including allegations that Forescout engaged in a channel stuffing scheme) in connection with *Forescout Techs., Inc. v. Ferrari Group Holding, L.P. et al.,* Del. Ch. 2020-0385.[1]

Lastly, Fortinet seeks to depose former Forescout CFO Christopher Harms concerning the issues in the Advent litigation. Fortinet says that Harms was named as a defendant in a shareholder case challenging Forescout's financials, and he is likely to have discoverable information about the alleged smear campaign relating to its financials and business practices. Forescout opposes the deposition, citing the apex doctrine.

Fortinet suggests that Forescout may lack standing to challenge the subpoena to Harms, but also states: "Nevertheless, Fortinet recognizes that guidance on the issues raised above may bear upon this dispute, and the parties have agreed to hold the deposition in abeyance until receiving a ruling." ECF No. 217 at 4. However, Forescout's portion of the joint discovery letter brief states that it is filed by both Forescout and Harms and that Harms is represented by the same

---

[1] As Fortinet explained at the hearing, this lawsuit is the Advent litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

firm that represents Forescout.  The signature block for the defense states that the letter brief is submitted by both Forescout and Harms.  At the hearing, the Court asked Forescout's counsel if she also represented Harms and was presenting argument on his behalf.  She said yes, and Fortinet said it had no reason to doubt she represented Harms.  Fortinet also confirmed that the subpoena to Harms was served in this District (*i.e.*, it is not before a different court).  Therefore, the Court believes it has authority to rule on the dispute over Harms' deposition.

The Court interprets the joint discovery letter brief to be two things:  First, it is a motion to compel by Fortinet concerning documents and Rule 30(b)(6) deposition testimony about the Advent litigation.  Second, it is a motion for a protective order by Forescout and Harms under the apex doctrine.  The Court held a hearing on January 10, 2024, and now issues this order.

**A.      Motion to Compel**

The Advent litigation is largely irrelevant to this case.  Yes, in the preface to its counterclaims, Forescout says the timing of this lawsuit, and the associated smear campaign, were designed to disrupt the acquisition.  But you should read those allegations closely because they are drafted very carefully.  Forescout does not allege that this lawsuit or the related smear campaign *actually did* disrupt the Advent acquisition or affect it in any way.  Rather, Forescout alleges that Fortinet timed this lawsuit with the purpose of interfering with the acquisition (ECF No. 107 ¶ 141).  Forescout also alleges that Advent announced it was not going to go through with the acquisition immediately after Fortinet launched the smear campaign, and that at least one media source suggested the two events were causally related, *id*. ¶ 144.  Forescout also alleges that Fortinet itself suggested that the two events were causally related, *id*. ¶ 145.

But you know what's missing from the counterclaims?  There is no allegation that Fortinet's lawsuit or the related smear campaign actually did interfere with, or reduce the value of, the Advent acquisition.  The only alleged business interference, whether in the prefatory paragraphs before the tort claim (but incorporated by reference in it) or made in the tort claim itself, is the financial harm caused by the disruption of Forescout's relationships with its existing and prospective *customers*.  ECF No. 107 ¶¶ 145-46, 149-53.  Leaving aside the question of whether Forescout could sue for harm related to the acquisition (it says such a claim belongs to its

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

shareholders, not to the company), it has not done so.  And aside from its tort claim, Forescout's remaining counterclaims are all for patent infringement or for declarations of patent invalidity, and Fortinet does not claim the Advent litigation is relevant to such claims.

At trial Forescout will argue that the timing of this lawsuit – filed just before the Advent acquisition was set to close – is evidence of Fortinet's malicious intent.  The Court still doesn't see how that causes the litigation with Advent to become relevant.  Whether this lawsuit and the associated smear campaign in fact impacted the acquisition is not actually relevant to anything.  It is not relevant to Fortinet's intent because evidence that is and was unknown to Fortinet cannot show what Fortinet's intent was.  And again, any effect on the acquisition is not part of the tortious interference counterclaim, which is about the disruption of customer relationships.

The irrelevance of the Advent litigation is made even plainer when you read Forescout's publicly available Complaint in that case.  ECF No. 115-4.  Forescout alleged that the acquisition agreement, which was executed after COVID-19 had been declared a public health emergency, allocated the risk of any impact from a pandemic to Advent.  *Id.* ¶ 1.  However, Forescout also alleged that as the pandemic spread, Advent got cold feet and came up with some false claims about covenants being breached when the company's real reason for trying to pull the plug on the deal was COVID-19 risk as the pandemic swept the globe in 2020.  *Id.* ¶¶ 2-17.

Now, go back and look at the documents and deposition testimony that Fortinet wants concerning the Advent litigation.  The documents:

> 1.  Documents sufficient to show (a) the origination of the dispute over Forescout's merger with Advent, (b) the cause of the dispute over Forescout's merger with Advent, and (c) representations by Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.);
>
> 2.  Documents sufficient to show any defenses or allegations by Advent (including allegations that Forescout engaged in a channel stuffing scheme) in connection with the Advent lawsuit;
>
> 3.  Deposition transcripts and expert reports, if any, from the Advent lawsuit, that bear upon (a) the origination of the dispute over Forescout's merger with Advent, (b) the cause of the dispute over Forescout's merger with Advent, (c) representations by Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.) as to Advent's motivations in attempting to walk away from the merger with Forescout, and (d) whether Forescout engaged in a

4

1

2

channel stuffing scheme;

4. All Documents filed or produced in the Advent lawsuit that reference Fortinet or this Lawsuit.

3

The deposition testimony:

4

5

6

7

8

9

1. (a) The origination of the dispute over Forescout's merger with Advent, (b) the cause of the dispute over Forescout's merger with Advent, and (c) representations by Forescout or Advent (including related entities such as Ferrari Group Holding, L.P.) as to Advent's motivations in attempting to walk away from the merger with Forescout.

2. Defenses or allegations by Advent (including allegations that Forescout engaged in a channel stuffing scheme) in connection with *Forescout Techs., Inc. v. Ferrari Group Holding, L.P. et al.,* Del. Ch. 2020-0385.

10

11

12

13

14

15

16

Document categories 1(a), 1(b), 3(a) and 3(b) and deposition topics 1(a) and 1(b) will include a lot of discovery about COVID, which is not relevant. Document category 1(c), 2, 3(c) and 3(d) and deposition topics 1(c) and 2 will likely include Advent's claims regarding breach of covenants or failures of conditions precedent under the acquisition agreement. Those items could potentially include relevant information if it happened that any of Advent's claims overlapped with any issues in this lawsuit. Document category 4 would include references to Fortinet or this lawsuit.

17

18

19

20

21

22

23

Here is the hook Fortinet offers: Fortinet says that one of Advent's defenses concerned the state of Forescout's finances and the state of its business practices. Fortinet also says that in this case, Forescout has alleged that Fortinet engaged in a smear campaign concerning Forescout's solvency and business practices and that this smear campaign was false and caused harm to Forescout. Therefore, Fortinet says that the Advent litigation should contain evidence concerning the true state of Forescout's finances and business practices, which is also relevant here to the truth or falsity of the alleged smears and to the cause of disrupted customer relationships.

24

25

26

27

28

But this is a strange and indirect way to take discovery. The relevant and proportional way to take discovery is to ask for things that are relevant. If Fortinet wanted discovery into Forescout's finances, it should have served RFPs about Forescout's finances. If Fortinet wanted discovery into the truth about Forescout's business practices, it should have served RFPs asking

about that.  Taking discovery into these issues by going through the Advent litigation is an illogical and inefficient way to proceed.  RFPs and deposition testimony about the dispute over Forescout's merger with Advent are aimed at an entirely different dispute centered on a merger agreement that has nothing to do with this case.  It's true that sometimes one lawsuit can be so related to another lawsuit that reproducing the documents and deposition testimony from the first case in the second one can be a big time saver.  But that principle does not help Fortinet here because the Advent litigation centers on COVID and a merger agreement, and those subjects are way far away from Forescout's tort claim.

Look again at the documents Fortinet seeks and the deposition topics it is moving on. Aside from document category 4, none of them is even remotely aimed at a potentially relevant subject, such as Forescout's finances or the Forescout business practices that are the subject of the smear campaign.  At the hearing, Fortinet leaned heavily on document category 2: "Documents sufficient to show any defenses or allegations by Advent (including allegations that Forescout engaged in a channel stuffing scheme) in connection with the Advent lawsuit."  But Advent's defenses included things like "Plaintiff's claims are barred by the Merger Agreement, in whole or in part, because Defendants have complied in all material respects with its representations and warranties, covenants, and agreements under the Merger Agreement" (ECF No. 224-1, second affirmative defense) and "All issues arising out of or related to the Debt Financing, the Debt Commitment Letters, or the performance of services thereunder are subject to the exclusive jurisdiction of courts sitting in the State of New York, City of New York, Borough of Manhattan" (*id.*, fifth affirmative defense).  And Advent's allegations in its counterclaims against Forescout included extensive allegations about the merger agreement.  *Id.*, Counterclaim ¶¶ 16-25.  Indeed, all four of Advent's counterclaims sought declaratory judgment with respect to the company's obligations under the merger agreement.  *Id.*, Counterclaim ¶¶ 65-87.

Discovery into Advent's defenses or allegations is therefore not a logical way of seeking documents or deposition testimony that would be relevant to Forescout's tort counterclaim against Fortinet for allegedly disrupting its relationships with existing and prospective customers through filing this lawsuit and engaging in a smear campaign.  It's not good enough to argue that some of

1   Advent's allegations in the merger litigation relate to Forescout's finances, and financial issues are

2   also relevant to Forescout's tort counterclaim.  The proportionality inquiry under Rule 26 asks

3   whether discovery requests are aimed at getting relevant information without sweeping in a lot that

4   isn't relevant.  Asking for documents and deposition testimony about Advent's defenses and

5   allegations in the merger litigation is not an attempt to take relevant and proportional discovery.

6       The one document category that seems relevant and proportional to the needs of the case is

7   category 4:  All Documents filed or produced in the Advent lawsuit that reference Fortinet or this

8   Lawsuit.  The Court does not know why there would be any responsive documents, but if there

9   are, they are likely to show if there actually was any causal relationship between this lawsuit and

10  the related smear campaign, on the one hand, and any effect on the Advent acquisition, on the

11  other.  Accordingly, the Court **GRANTS** Fortinet's motion to compel as to document category 4

12  and **DENIES** the rest of it.

13  **B.      Motion for a Protective Order**

14      As for the subpoena to Harms, the parties have submitted no evidence that would allow the

15  Court to determine whether he is an apex witness, and if so, whether the apex doctrine has been

16  satisfied.  It is not true that everybody with a C-suite title is automatically an apex witness simply

17  by virtue of the title, regardless of how large or small the company is or what that person's

18  specific responsibilities are.  Forescout and Harms have provided no information concerning how

19  many people Harms supervised, how many employees the company has, what his job

20  responsibilities were, and so on.  At the hearing, Forescout and Harms clarified that he is also an

21  apex witness due to his current employment as a CFO at Amplitude, Inc., but other than his title,

22  they have provided no factual information to show that he is an apex witness at that company

23  either.  Further, if Harms is an apex witness, the parties have presented no discussion of whether

24  he has unique, non-repetitive knowledge and whether Fortinet has exhausted less intrusive

25  discovery methods.  Apex issues aside, the Court cannot say that a former CFO would have no

26  relevant knowledge concerning whether the alleged smear campaign affected Forescout's

27  relationships with existing or prospective customers.  Forescout and Harms acknowledge that

28  Harms was at Forescout through the Advent acquisition, so he was there during a relevant period

United States District Court
Northern District of California

of time during the alleged smear campaign.  Because the burden of preventing a deposition falls on the party seeking to stop it, *see Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012), and Forescout and Harms have failed to make any showing that Harms' deposition should be halted, the Court will not quash it.  Accordingly, Forescout and Harms' motion for a protective order is **DENIED**.

      **IT IS SO ORDERED.**

Dated: January 11, 2024

          THOMAS S. HIXSON
          United States Magistrate Judge

United States District Court
Northern District of California