KELLY C. HUNSAKER (SBN: 168307)
khunsaker@winston.com
EIMERIC REIG-PLESSIS (SBN: 321273)
ereigplessis@winston.com
MATTHEW R. MCCULLOUGH (SBN: 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA  94065
Telephone:   (650) 858-6500
Facsimile:    (650) 858-6550

KIMBALL R. ANDERSON (*pro hac vice*)
kanderson@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700

Attorneys for Defendant and
Counterclaim-Plaintiff
FORESCOUT TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FORTINET, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FORESCOUT TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 3:20-CV-03343-EMC<br><br>**DEFENDANT FORESCOUT TECHNOLOGIES, INC.'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. TAL LAVIAN PURSUANT TO RULE 702, FEDERAL RULES OF EVIDENCE**<br><br>DATE:  October 3, 2024<br>TIME:  1:30 p.m.<br>LOCATION:  Courtroom 5, 17th Floor<br><br>JUDGE EDWARD M. CHEN |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

I.   Introduction ............................................................................................................................... 1

II.  Legal Standard .......................................................................................................................... 2

III. Argument .................................................................................................................................. 3

   A. The Court should exclude Dr. Lavian's opinions that are inconsistent with the Court's construction of "RAD-agnostic." ................................................................................................ 3

   B. The Court should exclude Dr. Lavian's apportionment opinions because they are arbitrary and not the product of reliable methods. ....................................................................... 6

      1. Dr. Lavian's apportionment opinions for Fortinet's patents are based on an arbitrarily chosen set of features. ........................................................................................ 6

      2. Dr. Lavian's apportionment opinions for Forescout's patents apply arbitrary weights to qualitative categories. ......................................................................................... 12

   C. The Court should exclude Dr. Lavian's non-infringing alternative opinions because he has no factual or technical basis for these opinions. .......................................................... 13

IV. CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chimie v. PPG Indus., Inc.*,
402 F.3d 1371 (Fed. Cir. 2005)..........................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).....................................................................................................2, 10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................................................2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).........................................................................................6

*Garretson v. Clark*,
111 U.S. 120 (1884)..........................................................................................................6

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
No. CV 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ..........................10, 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (2012)............................................................................................................6

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
371 F. App'x 719 (9th Cir. 2010) ...........................................................................10, 12, 13

*Snyder v. Bank of Am., N.A.*,
No. 15-cv-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ........................13, 14

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ...........................................................................................3

*Zhu v. Li*,
No. 19-CV-02534-JSW, 2023 WL 1111507 (N.D. Cal. Jan. 30, 2023)....................10, 12, 13

**Other Authorities**

Fed. R. Civ. P. 26(a) ..............................................................................................................14

Fed. R. Civ. P. 37 ...................................................................................................................14

Fed. R. Evid. 702 ............................................................................................................. *passim*

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on October 3, 2024, or as soon thereafter as this matter may be heard by the above-titled Court—located at Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102—Defendant Forescout Technologies, Inc. ("Forescout") will, and hereby does, move to exclude the expert opinion testimony of Dr. Tal Lavian, expert for Plaintiff Fortinet, Inc. ("Fortinet"), for the specific opinions identified below. Forescout's motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, and all other papers in this matter.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude the following expert opinions of Dr. Tal Lavian under Rule 702, Federal Rules of Evidence, because:

1. Dr. Lavian's opinions are inconsistent with the Court's construction of "RAD-agnostic."

2. Dr. Lavian's apportionment opinions are arbitrary and not the product of reliable methods.

3. Dr. Lavian's non-infringing alternative opinions lack a reliable technical basis.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

Fortinet disclosed Dr. Tal Lavian as its technical expert. The Court should exclude opinions of Dr. Lavian that fail to satisfy the requirements of Rule 702.

First, Dr. Lavian opines that Forescout's accused CounterACT product infringes Fortinet's '299 patent based on Dr. Lavian's claim construction of the '299 patent limitation "RAD-agnostic"— a claim construction that is materially different from the Court's claim construction. Dr. Lavian's legal opinion regarding claim construction is inadmissible. His infringement opinion based on his inadmissible claim construction, therefore, is unreliable under Rule 702.

Second, Dr. Lavian opines that Forescout's accused CounterACT product can be apportioned based on lists of features, some of which he says are attributable to Fortinet's patents. His lists, however, are entirely arbitrary and utterly unreliable. For Fortinet's patents, Dr. Lavian bases his opinions on a list of features that he created using three different, contradictory methods even though he admitted at his deposition that he could not offer a single reason for why he chose to use these

1

different methodologies or why they were reliable. For Forescout's patents, he bases his opinion on an arbitrary quantification for which he could not identify any technical basis. Thus, Dr. Lavian just made up his apportionment method out of whole cloth. His apportionment opinions are not based on reliable methods as required by Rule 702.

Third, Dr. Lavian opines that certain other products are non-infringing alternatives. He admitted at his deposition, however, that he had no factual basis for these opinions. For example, he opines that Fortinet's FortiGate product is a non-infringing alternative, but he could not explain why. And he opines that certain Cisco and Aruba products are non-infringing alternatives despite admitting that he performed no independent analysis of those products. Thus, his opinions lack any reliable factual basis and should be excluded under Rule 702.

## II.    Legal Standard

Amended in December 2023, Federal Rule of Evidence 702 now includes a requirement that the proponent of expert testimony bears the burden to demonstrate that it is "more likely than not" that an expert's opinions are based on reliable methods and facts. The Advisory Committee comments provide that the change was necessary because "many courts" have applied the Rule incorrectly by admitting expert testimony under a more lenient standard. *See* Fed. R. Evid. 702, advisory committee note to 2023 amendment.

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if the proponent demonstrates that (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. District courts have a duty to "act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

### III. Argument

#### A. The Court should exclude Dr. Lavian's opinions that are inconsistent with the Court's construction of "RAD-agnostic."

The asserted claims of the '299 patent all recite "said system is RAD-agnostic." Ex. A ('299 patent) cls. 1, 11. The Court construed this term to mean "said system is unaffected by the manufacturer of RAD." Dkt. 174 at 43. Recognizing the indisputable fact that Forescout's accused products are affected by the manufacturer of the RAD, and therefore are not RAD-agnostic, Dr. Lavian's workaround is to rely on his own claim construction of RAD-agnostic—a claim construction that is markedly different from the Court's claim construction. It is settled, however, that expert testimony that relies on a claim construction different from the Court's claim construction is inadmissible. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (applying Ninth Circuit law and affirming the striking of expert testimony "based on a claim construction that is materially different from the construction adopted by the parties and the court").

Here, instead of applying the Court's construction, Dr. Lavian relies on his own constructions of "RAD-agnostic," which the Court will recognize because Dr. Lavian's construction closely resembles the claim construction proffered by Fortinet and rejected by the Court. First, Dr. Lavian opines that merely supporting multiple devices is sufficient to qualify as RAD-agnostic. For example, he states, "CounterACT's plugin provides … support for many different remote access devices and types." Ex. B (Lavian Opening Inf. Report), ¶ 140. He repeats variations of this opinion throughout his reports. *See id.* ¶¶ 141 ("the VPN Concentrator Plugin supports a variety of RADs from a multiple manufacturers or vendors, including Cisco and Juniper"), 142 ("regardless of whether a network has multiple VPN concentrators from multiple vendors"), 143 ("not one limited to a single VPN concentrator or vendor" and "allowing a single policy to work with multiple disparate VPN concentrators from multiple vendors"), 144 ("allowing a single policy to draw from multiple VPN concentrators"); Ex. C (Lavian Rebuttal Inv. Report), ¶¶ 59 ("a construction consistent with a multi-vendor solution"), 61 ("allowing for a system to support multiple mechanisms to apply to VPN concentrators from multiple manufacturers" and "one system with one policy to be applied to multiple differing VPN concentrators"—opinions which Dr. Lavian characterizes as "consistent with the

3

1  Court's ruling at claim construction, and the understanding of a POSITA").

2  Dr. Lavian contended at his deposition that merely supporting two manufacturers is sufficient
3  to meet the Court's construction. Ex. E (Lavian Dep. Tr.) at 56:25–57:10 ("because it supported two,
4  I think that that's -- meet the court construction"). He similarly contended CounterACT could be
5  RAD-agnostic even if it did not support a particular RAD manufacturer discussed above because "[i]t
6  does not need to support every product in the market." *Id.* at 84:13–18. Dr. Lavian's claim
7  construction, however, cannot be reconciled with the Court's construction. Instead of applying the
8  Court's construction of being "unaffected" by the manufacturer, Dr. Lavian appears to be applying
9  Fortinet's proposed construction of "said NACS supports RADs from multiple vendors." Dkt. 174
10 at 43. Dr. Lavian fails to appreciate that the Court rejected Fortinet's proposed construction and
11 specifically observed that the Court's construction "avoids using 'multi-vendor' which Forescout
12 argues to be indefinite." *Id.* at 45.

13 Dr. Lavian effectively admits he is applying Fortinet's rejected construction in his rebuttal
14 invalidity report, when he says "I take a more nuanced stance on the phrase ['RAD-agnostic'], as it is
15 my opinion based upon the Court's construction order and the patent's disclosure that it requires only
16 that the system be unaffected by the manufacturer of the RAD, *a construction consistent with a multi-*
17 *vendor solution*." Ex. C (Lavian Rebuttal Inv. Report) ¶ 59.[1] Dr. Lavian's admission that he is opining
18 on claim construction based on his legal view of the patent's disclosure is plainly improper. Because
19 the Court already construed this term, Dr. Lavian should be applying that construction, not rewriting
20 the Court's construction based on his own view of the specification. *Chimie v. PPG Indus., Inc.*, 402
21 F.3d 1371, 1376 (Fed. Cir. 2005) ("Courts determine patent infringement by construing the patent's
22 claims and then applying *that construction* to the accused process or product."). Moreover, Dr.
23 Lavian's characterization of the Court's construction as "consistent with a multi-vendor solution"—
24 the very construction the Court rejected—is plainly inconsistent with the Court's actual construction.
25 The Court should therefore exclude Dr. Lavian's improper multi-device opinions because they are
26 inconsistent with the Court's construction.

27
28 [1] All emphasis added unless otherwise noted.

4

In a further attempted end-run around the Court's claim construction, Dr. Lavian opines that Forescout infringes the '299 patent because CounterACT allegedly provides "abstraction to transparently hide the peculiarities of any specific type of RAD." Ex. B (Lavian Opening Inf. Report) ¶ 140. Again, he repeats variations of this argument throughout his reports. *Id.* ¶¶ 142 ("unifies the format of information about the VPN-connected users"), 143 ("The underlying functionality and peculiarities of a specific vendor's RAD implementation are abstracted away from the policy"), 144 ("it collects additional information from the VPN concentrator in a way that is transparent to the policy functionality"), 145 ("This is in contrast to, e.g., using a hard-set policy command to send a predetermined communication to a single VPN concentrator from a single vendor."); Ex. C (Lavian Rebuttal Inv. Report) ¶¶ 42 ("the '299 Patent proposes exactly this, developing a 'generic' system that is agnostic to the manufacturer of the RAD through the use of an abstracted Interface"), 61 ("the abstraction described by the patent provides this RAD-agnosticism" —an opinion which Dr. Lavian characterizes as "consistent with the Court's ruling at claim construction, and the understanding of a POSITA").

Dr. Lavian's attempted end run fails because the Court's construction is not about abstraction or how information is formatted and/or presented to the user. The Court's construction is about the *operation* of the system, i.e., it is "unaffected" by the manufacturer. Whether or not information is "hidden" or "abstracted" from the user is an entirely different inquiry. The Court's construction of "RAD-agnostic" properly had nothing to do with abstraction, how the information is formatted, or how the information is presented to the user.

Dr. Lavian conceded as much at his deposition. He admitted that abstraction does not make the system unaffected because you have to build a "translation" to a "specific command or format that is required by a particular vendor" for "every single vendor that you want to support." Ex. E (Lavian Dep. Tr.) at 50:18–51:2. He further admitted that the system "will not work" for a third vendor if "you haven't yet built the translation or the third vendor." *Id.* at 52:1–7. Dr. Lavian therefore concedes that abstraction does not make the system's operation "unaffected." Instead, abstraction requires a programmer to manually implement a translation for every possible vendor, making its operation directly *affected* by the vendor and whether you have implemented a translation for that vendor.

The Court, therefore, should exclude the following paragraphs of Dr. Lavian's report as inconsistent with the Court's construction of "RAD-agnostic":

- Improper multi-device opinions: Ex. B (Lavian Opening Inf. Report), ¶¶ 140–144; Ex. C (Lavian Rebuttal Inv. Report), ¶¶ 59, 61; and
- Improper abstraction opinions: Ex. B (Lavian Opening Inf. Report), ¶¶ 140, 142–145; Ex. C (Lavian Rebuttal Inv. Report), ¶¶ 42, 61.

**B.   The Court should exclude Dr. Lavian's apportionment opinions because they are arbitrary and not the product of reliable methods.**

Under Supreme Court and Federal Circuit law, patentees "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (2012) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). "When the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018).

Here, Dr. Lavian attempts to meet Fortinet's burden of proving apportionment, but his opinions, as discussed below, are entirely arbitrary and plainly are not "the product of reliable principles and methods" as required by Rule 702. The Court should exclude these opinions.

**1.   Dr. Lavian's apportionment opinions for Fortinet's patents are based on an arbitrarily chosen set of features.**

Dr. Lavian attempts to apportion the value of the Fortinet patented inventions to Forescout's CounterACT by first creating a list of features in CounterACT, then identifying the features he contends are attributable to Fortinet's patents, and then providing a qualitative ranking of the degree to which Fortinet's patents contributed to each identified feature on a scale with five levels (very low, low, medium, high, and very high). Ex. B (Lavian Opening Inf. Report) ¶¶ 342 (summary table listing features and identifying with an "X" the ones Dr. Lavian opines are attributable to Fortinet's patents), 344 (summary table providing the qualitative rankings for each identified feature). Dr. Lavian does not himself provide any quantifications of these apportionment opinions, which are instead provided

in an arbitrary manner by Fortinet's damages expert, Dr. Ugone, which Forescout is challenging via separate motion.[2] Wholly separate and independent from the errors in Dr. Ugone's analysis, Dr. Lavian's apportionment opinions fall apart under scrutiny because Dr. Lavian's list of features in CounterACT—the starting point for his analysis—is entirely arbitrary and not the product of reliable methods as required by Rule 702.

Specifically, to arrive at his list of CounterACT product features, Dr. Lavian claims to rely on Forescout's CounterACT administration guide, which he says divides "into three categories of modules: Base Modules, Content Modules, and Extended/eyeExtend Modules." Ex. B (Lavian Opening Inf. Report) ¶ 340 (citing Ex. F (CounterACT 8.0 Administration Guide) at FORESCOUT000535). Based on this administration guide, Dr. Lavian creates a list of features and the specific modules "with functionality enhanced by practicing these inventions." *Id.* ¶ 341. He then checks off the allegedly enhanced features in a table that lists all the features he identified. *Id.* ¶ 342. The Rule 702 problem is that Dr. Lavian's initial list of features is entirely arbitrary, lacking any methodology whatsoever.

The arbitrariness of Dr. Lavian's list is readily apparent from how he identifies features for the Base Modules, Content Modules, and Extended/eyeExtend Modules. Specifically, for the "Base Modules," the administration guide identifies five modules (Authentication Module, Core Extensions Module, Endpoint Module, Hybrid Cloud Module, and Network Module) and then for each module further identifies a set of plugins by name. Ex. F (CounterACT 8.0 Administration Guide) at FORESCOUT000535–538. Dr. Lavian includes *each* of the modules and *each* of their plugins in his list of features that he uses as the basis for his apportionment opinions. Ex. B (Lavian Opening Inf. Report) ¶ 341.

For the "Content Modules," however, Dr. Lavian takes a different approach: he omits them entirely from his list. The administration guide identifies six modules as Content Modules: Device Profile Library, Windows Vulnerability DB, IoT Posture Assessment Library, NIC Vendor DB,

---

[2] Forescout has separately moved to exclude the quantification opinions from Dr. Ugone because they rely on applying arbitrary percentages to Dr. Lavian's qualitative rankings, where Dr. Ugone created the percentages on his own, without support from Dr. Lavian and without any other proper basis.

Windows Applications, and Security Policy Templates. Ex. F (CounterACT 8.0 Administration Guide) at FORESCOUT000538–539. Dr. Lavian includes **none** of these modules and does not even include the category of Content Modules in his list of features that he uses as the basis of his apportionment opinions. Ex. B (Lavian Opening Inf. Report) ¶ 341; Ex. E (Lavian Dep. Tr.) at 214:16–215:3 ("No, I don't see them in my list").

For the "Extended/eyeExtend Modules," Dr. Lavian takes a third approach: he includes only the overall category but not any of the specifically named types of modules from the administration guide. The administration guide states that "[t]he various Extended Modules relate to an extensive range of integration categories" and then provides a list of ten categories: Advanced Threat Detection (ATD), Endpoint Protection Platform (EPP), Mobile Device Management (MDM), Open Integration, Security Information and Event Management (SIEM), Vulnerability Management (VM), Privileged Access Management (PAM), IT Service Management (ITSM), Next Generation Firewall (NGFW), and Client Management Tools (CMT). Ex. F (CounterACT 8.0 Administration Guide) at FORESCOUT000539. But in his list of features that he uses for apportionment, Dr. Lavian includes only a single line entry labeled "eyeExtend Integration Modules" and does not list any of the ten specific categories identified in the manual. Ex. B (Lavian Opening Inf. Report) ¶ 341.

Thus, Dr. Lavian has not applied "reliable principles and methods" in identifying his overall list of features because he used three completely different methods for the three categories of Base Modules, Content Modules, and Extended/eyeExtend Modules, despite purporting to rely on a single administration guide as the basis of his opinion for all three categories. Conveniently for Fortinet, Dr. Lavian's deviations all increase Fortinet's claimed damages. By excluding Content Modules entirely, Dr. Lavian made it seem like the total number of features was smaller, thus inflating the value of each individual feature. And by treating the Extended/eyeExtend Modules as a single category, he was able to skip over the step of identifying which specific modules are implicated by the patents and thereby claim a share of the whole set of Extended/eyeExtend Modules rather than properly limiting his analysis to only the specific modules allegedly implicated by the patent.

When asked at deposition why he applied these different methodologies, Dr. Lavian could not provide any coherent explanation. For the Content Modules, the only explanation he could muster is

that is what he "want[ed] to do," but he ultimately conceded he could not identify any reason for ignoring the Content Modules:

> Q	Why specifically was it right to ignore these six modules?
>
> A	No --
>
> THE WITNESS:	No specific reason. That's the analysis that I want to do.
>
> Q	So you can't identify any reason why you excluded these six modules?
>
> A	I believe --
>
> THE WITNESS:	-- that I excluded 99 percent of -- 99.99 percent of this entire document that you just -- it's about 7- -- 800 pages. So I selected what I selected.
>
> Q	***But you can't tell me why?***
>
> THE WITNESS:	***No.***

Ex. E (Lavian Dep. Tr. at 215:10–216:4). This testimony makes clear that Dr. Lavian's analysis is not based on reliable principles and methods because it is not based on any method at all. Dr. Lavian either could not or would not identify how and why he excluded these Content Modules, rendering his apportionment opinions unreliable and subject to exclusion under Rule 702.

With respect to the Extended/eyeExtend Modules, Dr. Lavian again could not offer any coherent explanation for why he used yet another different methodology, ultimately conceding "I don't have a specific reason":

> Q	Okay. And if you look back at Exhibit 13 on Page 539, the -- the administration guide you're relying on breaks down extended modules into ten categories, beginning with advance threat detection and continuing through client management tools.
>
> 	Do you see that?
>
> A	Yes.
>
> Q	So why did you treat eyeExtend modules as a single category instead of using the ten categories identified in this administration guide?
>
> A	I could do it in many different ways. That's the way that they chose to do. I -- that's the way, it seems to me, more reasonable to present it.
>
> Q	Why is it more reasonable?
>
> THE WITNESS:	I have 700 pages and I cannot -- 800 pages. That's the way that I decide to write the report. I believe that someone else will divide it in different way. That's what seems to me is a reasonable way to divide it and reasonable information to add.

> Q     Okay. But why did you treat it differently than the network module, for example? So the network module you break down into four features which corresponds to the four features listed on the page ending in Bates Number 538 of Exhibit 13.
>
> So why did you use the sub features for the network module but you only used one category for the eyeExtend?
>
> THE WITNESS:     *I don't have a specific reason*. That's the way I thought it should be. I'm sure that different people could divide it different way. Different ways.

*Id.* at 218:2–219:11. Again, this testimony confirms that Dr. Lavian not only lacks a reliable method, but he lacks any method at all.

Courts regularly exclude testimony where an expert does not explain the methodology he used as unreliable under Rule 702. *See, e.g.*, *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 720–21 (9th Cir. 2010) (affirming exclusion of proposed expert testimony where expert never "provided an explanation of the methodology used"); *Zhu v. Li*, No. 19-CV-02534-JSW, 2023 WL 1111507, at *2 (N.D. Cal. Jan. 30, 2023) ("The Court concludes the report is based on an unreliable foundation and methodology because Schenkein fails to explain the bases for his conclusions or provide the methodology he used. Accordingly, his report and testimony must be excluded under *Daubert*."). Indeed, this general principle has been applied in the very same context at issue here: where an expert engages in feature identification as a basis for apportionment but identifies the features without a sufficiently reliable methodology. *See Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022). In *Innovative Memory*, the technical expert "considered a handful of factors and, without explaining any methodology, opined that [a feature allegedly related to the patent] was in approximately the top 10% of customer-exposed features." *Id.* at *17. The damages expert then took this opinion and engaged in further feature identification by "reviewing a data sheet for a Micron product and making his own determination about how many features it identifies." *Id.* The Court found that *both* of these feature identification opinions were unreliable because the record did not "demonstrate that [the damages expert] used a reliable methodology for counting the number of features" (*id.* at *18), and the record did not "demonstrate that either expert used a ***discernable method*** to conclude that the OTP feature was among the top 10% of all relevant features" (*id.* at *19). So too here, the record does not demonstrate that Dr. Lavian used a discernable method for identifying features because Dr. Lavian

could not or would not explain what methodology he used and why he used different, contradictory methodologies for different categories of features. Thus, just as in *Innovative Memory*, the Court should exclude Dr. Lavian's testimony because it constitutes "inputs [to the damages expert's opinion] obtained from unreliable methods." *Id.*

Fortinet attempted to rehabilitate Dr. Lavian by asking him in redirect if he was just guessing:

Q. When you made these divisions of the subcategories, were you just guessing?

A. It's not guessing. It's trying to find out of all of the features, the one more relevant to my analysis. You can have long list of features. And in my analysis, I selected the one that seems to me more relevant and the more reasonable, from technical perspective.

Ex. E (Lavian Dep. Tr.) at 380:17–24. But nothing in Dr. Lavian's answer identifies any methodology at all, much less a "reliable" methodology as required by Rule 702. Dr. Lavian and Fortinet cannot simply assert that his method is "reasonable"—without ever explaining what that method was—to evade the requirements of Rule 702. If that were all it took, Rule 702 would be a dead letter.

Further, this attempt to fix Dr. Lavian's testimony created an additional reliability problem. Dr. Lavian's testimony that he is trying to identify the "more relevant" features shows that he intentionally excluded features of CounterACT from his list. Indeed, he expressly admitted as much on re-cross. *Id.* at 387:13–24 (admitting he was "not providing an exhaustive list of all features in CounterACT" and that his list of features "is not an exhaustive list of features and functionality in CounterACT").

Because Dr. Lavian intentionally excluded features *before* offering his "Low," "Medium," and "High" apportionment opinions, the apportionment opinions he offered are only that Fortinet's patents are a "Low," "Medium," or "High" contribution *to something less than the whole of CounterACT*. Dr. Lavian never quantified the "less relevant" features he excluded from his initial list of features, so we have no way of knowing, for example, if Dr. Lavian is opining that a given patent makes a "Low" contribution to 90% of CounterACT as opposed to a "Low" contribution to just 50% of CounterACT (or any other possible percentage). This is not science; it is not an accepted methodology; it is just unexplained hand waving that renders his opinions entirely unreliable. *See, e.g.*, *Plush Lounge*, 371 F. App'x at 720–21; *Zhu*, 2023 WL 1111507, at *2.

In sum, Dr. Lavian's apportionment opinions for Fortinet's patents are entirely arbitrary because they are based on a list of features that was identified in arbitrary and contradictory ways, and for which Dr. Lavian could not or would not identify the methodology he used. The Court should thus exclude paragraphs 340, 341, 342, and 344 of Dr. Lavian's opening infringement report (Ex. B).

### 2. Dr. Lavian's apportionment opinions for Forescout's patents apply arbitrary weights to qualitative categories.

Dr. Lavian applied an equally arbitrary approach to apportioning Forescout's patents. For the Forescout patents, Dr. Lavian states, "I would assign a value of contribution to each of the categories from a scale of categories: Minimal (5%), Low (10%), Medium (20%), High (40%), Very High (80%), and Complete (100%)." Ex. D (Lavain Rebuttal Inf. Report) ¶ 67. He then proceeded to assign the qualitative levels of "Minimal" or "Low" to a variety of feature categories for each of the Forescout patents. *Id.* But Dr. Lavian's conversion of qualitative assessments into quantitative measurements was entirely arbitrary. He engages in more hand waving.

When asked at deposition how he decided on the quantitative percentage numbers he listed in paragraph 67 of his report, Dr. Lavian could not identify any basis other than vaguely contending it was "reasonable":

> Q. Okay. Let me clarify, because I think I was asking a slightly different question.
>
> So how did you decide that minimal was 5 percent? How did you decide on the numerical values in paragraph 67?
>
> A. I don't have a specific number that can be 4 percent or 5 percent or 6 percent or -- or more. But it seems to me that I wanted to show what is minimal, what is low, what is medium and what is high, what is very high and what is complete.
>
> And somehow, I wanted to divide them with what is reasonable from technical perspective. I don't have a specific number that's applied. That's what's reasonable from technical perspective.

Ex. E (Lavian Dep. Tr.) at 313:10–23. Thus, as above, Dr. Lavian's methods are not reliable because Dr. Lavian has no methodology at all. Minimal could have been 4 or 5 or 6 percent, and Dr. Lavian just does not know (or refuses to say) why he picked the numbers he did. Dr. Lavian and Fortinet cannot simply assert that his methods are "reasonable" to evade Rule 702. Fortinet must show that Dr. Lavian applied a reliable methodology, a test it cannot meet because Dr. Lavian cannot explain

what methodology he used. *See, e.g.*, *Plush Lounge*, 371 F. App'x at 720–21; *Zhu*, 2023 WL 1111507, at *2. Under these circumstances, the Court should exclude paragraphs 67, 68, and 70 of Dr. Lavian's rebuttal infringement report (Ex. D).

### C. The Court should exclude Dr. Lavian's non-infringing alternative opinions because he has no factual or technical basis for these opinions.

In paragraph 61 of his rebuttal report (Ex. D), Dr. Lavian opines regarding three supposedly non-infringing alternatives: "Fortigate's basic network access control functionality" and "non-infringing NAC solutions" from "Cisco" and "Aruba." Dr. Lavian has no factual or technical basis for any of these opinions, and thus Fortinet cannot show "the testimony is based on sufficient facts or data" as required by Rule 702. *Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 WL 6462400, at *6 (N.D. Cal. Nov. 3, 2020) (excluding testimony where expert never "independently verified the facts" and offered opinions "based solely on information that [the expert] never reviewed and is unsupported").

For FortiGate, Dr. Lavian says that it has network access control functionality that makes it a non-infringing alternative to Forescout's patented inventions. Ex. D (Lavian Rebuttal Inf. Report) ¶ 61. Dr. Lavian, however, is unable to identify that functionality. He admitted at deposition he was not relying on any conversation with any Fortinet employee. Ex. E (Lavian Dep. Tr.) at 9:9–12. And he does not cite a single document describing this supposed alternative functionality. When asked at deposition, he could not identify any evidentiary support for this opinion except for vaguely asking for a FortiGate manual that he had not cited in his report and could not identify. *Id.* at 307:5–308:22. Thus, Dr. Lavian has no factual or technical basis at all for alleging that FortiGate's network access control functionality is a non-infringing alternative, and this opinion should be excluded under Rule 702. *See Snyder*, 2020 WL 6462400, at *6.[3]

---

[3] Later in the deposition, Fortinet's counsel provided three documents that counsel described as "documents that I believe relate to the FortiGate and FortiNAC functionality." Ex. E (Lavian Dep. Tr.) at 348:14–18. None of the three documents were a FortiGate manual, as Dr. Lavian had mentioned. *See* Ex. I (Fortinet Document Library printout); Ex. G (Fortinet Deployment Guide); Ex. H (FortiOS – Administration Guide). Two of them were never produced in discovery. Ex. I (Fortinet Document Library printout); Ex. H (FortiOS – Administration Guide). None of the three documents were cited in Dr. Lavian's report or list of materials considered. Ex. D (Lavian Rebuttal Inf. Report)

As to the Cisco and Aruba products, Dr. Lavian conceded at deposition he performed no independent analysis of these products:

> Q.   And I just want to confirm, you did not perform any independent analysis of whether the Cisco or Aruba NACs infringe the '004 and '079 patents, correct?
>
> A.   No.

Ex. E (Lavian Dep. Tr.) at 310:12–16.  Thus, Dr. Lavian has no technical basis for opining that Cisco and Aruba are non-infringing alternatives.

Dr. Lavian's opinions in paragraph 61 of his rebuttal report (Ex. D) that FortiGate, Cisco, and Aruba products are non-infringing alternatives are not "based on sufficient facts or data" as required by Rule 702—indeed, these opinions are not based on any facts at all.  The Court should therefore exclude paragraph 61 of Dr. Lavian's rebuttal report (Ex. D).  *See Snyder*, 2020 WL 6462400, at *6 (excluding testimony where expert never "independently verified the facts").

## IV.   CONCLUSION

For all the reasons explained above, the Court should exclude the above-identified portions of Dr. Lavian's expert report under Rule 702.

---

at Ex. A (Materials Considered).  As such, there is nothing in the record to support that Dr. Lavian considered or relied on these documents, and they cannot save Dr. Lavian's baseless non-infringing alternatives opinions.  *See Snyder*, 2020 WL 6462400, at *6 (excluding testimony "based solely on information that [the expert] never reviewed").  Moreover, to the extent Dr. Lavian actually did rely on the two documents that were never produced in discovery, his opinion would still be properly excluded under Federal Rule of Civil Procedure 37 ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

| | | |
|---|---|---|
| Dated: June 25, 2024 | | */s/ Kimball R. Anderson* |
| | | KELLY C. HUNSAKER (SBN: 168307) |
| | | *khunsaker@winston.com* |
| | | EIMERIC REIG-PLESSIS (SBN: 321273) |
| | | *ereigplessis@winston.com* |
| | | MATTHEW R. MCCULLOUGH (SBN: 301330) |
| | | *mrmccullough@winston.com* |
| | | WINSTON & STRAWN LLP |
| | | 255 Shoreline Drive, Suite 520 |
| | | Redwood City, CA 94065 |
| | | Telephone: (650) 858-6500 |
| | | Facsimile: (650) 858-6550 |
| | | |
| | | KIMBALL R. ANDERSON (*pro hac vice*) |
| | | *kanderson@winston.com* |
| | | WINSTON & STRAWN LLP |
| | | 35 W. Wacker Drive |
| | | Chicago, IL 60601-9703 |
| | | Telephone: (312) 558-5600 |
| | | Facsimile: (312) 558-5700 |
| | | |
| | | Attorneys for Defendant and Counterclaim-Plaintiff |
| | | FORESCOUT TECHNOLOGIES, INC. |