1   KELLY C. HUNSAKER (SBN: 168307)
    *khunsaker@winston.com*
2   EIMERIC REIG-PLESSIS (SBN: 321273)
    *ereigplessis@winston.com*
3   MATTHEW R. MCCULLOUGH (SBN: 301330)
    *mrmccullough@winston.com*
4   WINSTON & STRAWN LLP
    255 Shoreline Drive, Suite 520
5   Redwood City, CA 94065
    Telephone:    (650) 858-6500
6   Facsimile:    (650) 858-6550

7   KIMBALL R. ANDERSON (*pro hac vice*)
    *kanderson@winston.com*
8   WINSTON & STRAWN LLP
    35 W. Wacker Drive
9   Chicago, IL 60601-9703
    Telephone:    (312) 558-5600
10  Facsimile:    (312) 558-5700

11  Attorneys for Defendant and
    Counterclaim-Plaintiff
12  FORESCOUT TECHNOLOGIES, INC.

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16

17  FORTINET, INC.,                          CASE NO. 3:20-cv-03343-EMC

18              Plaintiff,                    **DEFENDANT FORESCOUT
                                              TECHNOLOGIES, INC.'S REPLY IN
19       vs.                                  SUPPORT OF ITS MOTION TO EXCLUDE
                                              EXPERT OPINION TESTIMONY OF DR. TAL
20  FORESCOUT TECHNOLOGIES, INC.,             LAVIAN PURSUANT TO RULE 702,
                                              FEDERAL RULES OF EVIDENCE**
21              Defendant.
                                              DATE: October 3, 2024
22                                            TIME: 1:30 p.m.
                                              LOCATION: Courtroom 5, 17th Floor
23
                                              JUDGE EDWARD M. CHEN
24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 1

    A.    The Court should exclude Dr. Lavian's opinions that are inconsistent with the Court's construction of "RAD-agnostic." ...................................................................... 1

    B.    The Court should exclude Dr. Lavian's apportionment opinions for Fortinet's patents because they are arbitrary and not the product of reliable methods. ........................... 5

    C.    The Court should exclude Dr. Lavian's apportionment opinions for Forescout's patents because they are arbitrary and not the product of reliable methods. ................ 8

    D.    The Court should exclude Dr. Lavian's non-infringing alternative opinions because he has no factual or technical basis for these opinions. .............................................. 11

III.  CONCLUSION ......................................................................................................... 13

FORESCOUT'S REPLY ISO ITS MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. TAL LAVIAN
CASE NO. 3:20-CV-03343-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
　No. CV 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ...................................6, 8

*Martin v. Barber*,
　755 F.2d 1564 (Fed. Cir. 1985)................................................................................................4

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
　371 F. App'x 719 (9th Cir. 2010) ........................................................................................6, 8

*Summit 6, LLC v. Samsung Elec. Co.*,
　802 F.3d 1283 (Fed. Cir. 2015)..............................................................................................10

*Treehouse Avatar LLC v. Valve Corp.*,
　54 F.4th 709 (Fed. Cir. 2022) ..................................................................................................1

*United States v. 22.80 Acres of Land*,
　107 F.R.D. 20 (N.D. Cal. 1985)...............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26......................................................................................................................3

Fed. R. Civ. P. 26(a) ...............................................................................................................12

Fed. R. Civ. P. 37................................................................................................................11, 12

Fed. R. Evid. 702 ............................................................................................................. *passim*

Fed. R. Evid. 702(b).................................................................................................................12

Fed. R. Evid. 702(c).................................................................................................................10

FORESCOUT'S REPLY ISO ITS MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. TAL LAVIAN
CASE NO. 3:20-CV-03343-EMC

**I.    INTRODUCTION**

Fortinet's Opposition fails at every twist and turn to rescue Dr. Lavian's opinions.  In one attempted rescue operation, Fortinet attempts to support new opinions that Dr. Lavian never disclosed.  Another rescue operation mounts arguments Dr. Lavian contradicted at his deposition.  And Fortinet continues its attempt to rescue Dr. Lavian by applying a construction of the claim term "RAD-agnostic" that is directly at odds with this Court's claim construction.

As for Dr. Lavian's apportionment theory, Fortinet attempts to defend Dr. Lavian's arbitrary selection of CounterACT features (including some features and inexplicably excluding others) by arguing that the excluded features "don't themselves do anything."  Opp'n at 6.  That lawyer argument, however, is not true from a technical standpoint.  But perhaps even more importantly, Dr. Lavian never proffered that opinion in his report or at his deposition.  At his deposition, he said that he had "[n]o specific reason" for excluding the features.  Mot. Ex. E (Lavian Dep. Tr.) at 215:10–216:4.

Fortinet's spinning continues with the dizzying argument that Dr. Lavian's opinion that Cisco, Aruba, and FortiGate are non-infringing alternatives is proper, not because of any technical analysis or because of any actual evidence, but because he says so.  This, of course, is not a reliable factual basis under Rule 702.

When all is said and done, no amount of spinning can save Dr. Lavian's opinions.  They do not pass muster under Rule 702.

**II.    ARGUMENT**

**A.    The Court should exclude Dr. Lavian's opinions that are inconsistent with the Court's construction of "RAD-agnostic."**

One thing is clear: Dr. Lavian did not apply the Court's construction and instead substituted his own improper construction.  That warrants exclusion of his opinion testimony.  *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (applying Ninth Circuit law and affirming the striking of expert testimony "based on a claim construction that is materially different from the construction adopted by the parties and the court").  Fortinet attempts to distinguish *Treehouse* by arguing that expert "plainly ignored the court's construction," whereas Dr. Lavian "*explicitly* quotes, analyzes, and applies the Court's construction."  Opp'n at 12 (original emphasis).  Dr. Lavian can

1

1    quote and analyze all that he wants. At the end of the day, however, he must *apply* the Court's claim

2    construction. He does not.

3         Fortinet argues that Dr. Lavian "reiterated language from the Court's order describing its

4    construction" and that this "reiteration" is "proof that he did apply the Court's construction." *Id.*

5    Nonsense. Dr. Lavian may have "reiterated language," but he made clear that he was re-construing

6    the Court's construction. He characterized his own analysis by stating: "I take a ***more nuanced stance***

7    on the phrase, as it is my opinion based upon the Court's construction order and the patent's disclosure

8    that it requires only that the system be unaffected by the manufacturer of the RAD, ***a construction***

9    ***consistent with a multi-vendor solution***." Mot. Ex. C (Lavian Rebuttal Inv. Report) ¶ 59.[1]

10   Dr. Lavian's "more nuanced stance" is just a coded excuse for replacing the Court's construction

11   requiring the system be "unaffected" with an alternative requirement that the system be a "multi-

12   vendor solution."

13        Fortinet's Opposition misleadingly omits Dr. Lavian's preface (admitting he is applying

14   something allegedly "more nuanced" than the Court's construction). Fortinet then argues that

15   Dr. Lavian's construction is somehow consistent with the Court's claim construction order. Opp'n

16   at 12. It is not. Fortinet's argument is based on a fallacy. A RAD-agnostic system (one that is

17   unaffected by the manufacturer of the RAD) may also be a "multi-vendor solution." But not all multi-

18   vendor solutions (e.g., a system that supports only two RAD vendors) are systems unaffected by the

19   manufacturer of the RAD. Fortinet's attempt to equate the two concepts does not compute.

20        To be sure, the Court observed that its construction was consistent with a particular

21   embodiment in the specification: "It is consistent with the specification's characterization of a RAD-

22   agnostic embodiment as a 'multi-vendor solution.' (*Id.* at 4:36.)." Dkt. 174 at 45. That is eminently

23   true. But a multi-vendor solution is not necessarily RAD-agnostic (a system unaffected by the

24   manufacturer of the RAD). That undoubtedly is why the Court never constructed the claim term to

25   mean "a multi-vendor solution." That was the construction that Fortinet wanted and that the Court

26

27

---

28   [1] All emphasis added unless otherwise noted.

1  rejected when it agreed with Forescout that RAD-agnostic means "unaffected by the manufacturer of

2  the RAD." *Id.*

3       Next, apparently recognizing that Dr. Lavian's more "nuanced" claim construction cannot be

4  squared with the Court's construction, Fortinet attempts to run from it with the argument that

5  "Dr. Lavian never opines that supporting multiple vendors is the *only* thing required for a device to be

6  RAD-agnostic." Opp'n at 12–13. But this lawyer argument contradicts Dr. Lavian's deposition

7  testimony wherein he made perfectly clear that he was applying his "two vendor" claim construction:

8       Q.     So I want to be very clear here. Is supporting two manufacturers *by itself*
        enough to meet the Court's construction, or is there something more that is required in
9       your analysis?

10      THE WITNESS:        If it's supported -- if it's supported, two vendors, and the system
        is unaffected by the manufacturer of RAD, in this case *because it supported two, I*
11      *think that that's -- meet the court construction*.

12  Mot. Ex. E (Lavian Dep. Tr.) at 56:25–57:10.

13       Forescout's Motion quoted this deposition testimony. Mot. at 4. Fortinet's response is that

14  Forescout cites only "snippets." Opp'n at 12. Fortinet, however, did not share with the Court any

15  additional context that informs the reader. The full question and answer are quoted above. Dr. Lavian

16  was directly asked if he was opining that supporting two vendors by itself was enough, and he did not

17  identify any additional requirement. He instead said "because" it supports two vendors, it meets the

18  Court's construction. But this is not the Court's construction; it is Fortinet's rejected "multi-vendor"

19  construction. Dr. Lavian plainly confirmed that he applies Fortinet's rejected claim construction.

20       Fortinet also argues "[t]hat CounterACT supports multiple vendors is *only part of his opinion*

21  that CounterACT is unaffected by the manufacturer of the RAD." *Id.* That is just not true. Dr. Lavian

22  made clear his opinion that CounterACT is "RAD-agnostic" simply because it can support at least two

23  vendors. At his deposition, Dr. Lavian confirmed that his opinion is that "because" a system supports

24  two, that is good enough to meet the Court's construction. Fortinet's lawyer arguments, therefore, are

25  inconsistent with Dr. Lavin's Rule 26 disclosures and his deposition testimony.

26       Moreover, Fortinet's argument that Dr. Lavian relied on something more than supporting

27  multiple vendors finds no support in the record evidence cited by Fortinet. Fortinet cites Dr. Lavian's

28  statement in paragraph 142 that "Second … the policy functionality breaks this down into a single …

3

1   action … and unifies the format of information." Mot. Ex. C (Lavian Rebuttal Inv. Report) ¶ 142 (as
2   altered by Fortinet, as quoted in Opp'n at 12). Nothing in this quoted statement says anything about
3   whether the system is affected by the RAD manufacturer. As Forescout pointed out previously, the
4   Court's construction is about the **operation** of the system (being "unaffected"); it has nothing to do
5   with abstraction or how information is formatted or presented to the user. Mot. at 5. Fortinet's
6   Opposition is silent on this point.

7       Fortinet also cites Dr. Lavian's "liken[ing of] CounterACT to embodiments in the
8   specification." Opp'n at 13 (arguing he opines the accused product "shares these two key aspects of
9   the cited embodiments," relating to abstraction). Whoa! Dr. Lavin's attempt to re-construe the claim
10  language by referencing the specification to prove infringement flies in the face of long-settled law
11  that "[i]nfringement … is determined by comparing the accused device with the claims in suit, not
12  with a preferred … embodiment of the patentee's claimed invention." *Martin v. Barber*, 755 F.2d
13  1564, 1567 (Fed. Cir. 1985). Dr. Lavian's reliance on embodiments in the specification to modify the
14  Court's claim construction, and to replace the requirement that the system be "unaffected" with the
15  requirement of sharing characteristics with particular embodiments in the specification, is wholly
16  improper under settled law.

17      Similarly, Dr. Lavian's focus on abstraction, as briefly referenced in the specification, is not
18  consistent with the Court's construction. Dr. Lavian conceded at his deposition that abstraction does
19  not itself make a system unaffected. Instead, it requires a person to manually implement support for
20  every different vendor. Mot. Ex. E (Lavian Dep. Tr.) at 50:18–51:2, 52:1–7. Fortinet offers no
21  argument that abstraction is relevant to the Court's construction, except to criticize Forescout for
22  presenting it "as though it were a standalone argument and not part of a broader analysis." Opp'n at
23  14. Review of Dr. Lavian's report, however, reveals no such broader analysis, and Fortinet's
24  Opposition identifies none.

25      As a last-ditch effort to rescue Dr. Lavian, Fortinet argues that Forescout's expert Dr. Nielson
26  applies an "absurd interpretation of the term" and suggests his analysis is somehow inconsistent with
27  claim construction law. *Id.* at 12–13. Fortinet has waived any such argument because it did not
28  challenge such opinions by the deadline to file any motion to strike, which was June 25. *See* Dkt. 276.

Moreover, Fortinet does not explain how any alleged mistakes in Dr. Neilson's rebuttal report somehow saves Dr. Lavian. Indeed, if the Court strikes Dr. Lavian's improper infringement opinions, then Fortinet has no evidence of infringement and Dr. Nielson's opinions for the '299 patent become moot.

Fortinet's fundamental problem is that CounterACT is not RAD-agnostic. CounterACT is affected by the manufacturer of the RAD. That is why Dr. Lavian had to apply some other claim construction. That is why Fortinet is forced to furiously spin Dr. Lavian's new claim construction as somehow consistent with Court's construction. That is why Fortinet is basically arguing that the Court should apply Fortinet's rejected claim construction. But the Court got it right; Fortinet is wrong. Under these circumstances, the Court should preclude Dr. Lavian's opinions.

**B.      The Court should exclude Dr. Lavian's apportionment opinions for Fortinet's patents because they are arbitrary and not the product of reliable methods.**

In attempting apportionment of the patented features to the value of the accused CounterACT, Dr. Lavian excluded Content Modules and Extended Modules. No justification exists for this totally arbitrary approach. This problem is not just a matter that goes to the weight of his testimony. It goes to admissibility because Dr. Lavian admitted that he had no reliable methodology whatsoever for his selection process. Fortinet's Response attempts to save Dr. Lavian from his admissions and attempts to fill in the gaps of Dr. Lavian's selection process with attorney argument. Attorney argument is not evidence of a reliable methodology. *See, e.g.*, *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985) ("This statement by counsel is, of course, not competent evidence.").

Here's the fundamental problem. Dr. Lavian admitted that he has "[n]o specific reason" for excluding Content Modules and he "do[es]n't have a specific reason" for not using the Extended Modules subcategories (like he did for other modules). Mot. Ex. E (Lavian Dep. Tr.) at 215:10–216:4 (Content Modules), 218:2–219:11 (Extended Modules). Whether he just overlooked them or excluded them because exclusion increases Fortinet's claimed damages is of no import for purposes of Rule 702. What is important is that neither Dr. Lavian nor Fortinet's counsel can identify any reliable methodology that supports his exclusions.

1    For the Content Modules, Fortinet argues that "they don't themselves do anything" and that,

2    therefore, Dr. Lavian properly excluded them from his apportionment analysis. Opp'n at 15. Fortinet

3    cites as support Dr. Lavian's statement that "[c]ontent modules provide additional data for these base

4    modules to use, with the base modules providing the functionality itself." *Id*. (quoting Opp'n Ex. 1

5    ¶ 340). Problems abound with this argument. First, Dr. Lavian never disclosed the opinion that the

6    Content Modules should be excluded because they don't do anything. Second, at his deposition,

7    Dr. Lavian testified:

8        Q       Why specifically was it right to ignore these six modules?

9        A       No --

10       THE WITNESS:        No specific reason. That's the analysis that I want to do.

11   Mot. Ex. E (Lavian Dep. Tr.) at 215:10–216:4. Third, as Dr. Lavian said in his report, these modules

12   actually do something important. They provide critical additional data.[2]

13       Fortinet's only response is that "his report speaks for itself." Opp'n at 17. Forescout agrees.

14   Dr. Lavian's report never discloses a reliable methodology. That caused Forescout to ask Dr. Lavian

15   to explain his methodology, or lack thereof, and he admitted that he had no reason to exclude these

16   modules from his analysis. Now, in an attempt to rescue Dr. Lavian, Fortinet's counsel is spinning

17   new opinions that Dr. Lavian never disclosed and that are flatly contradicted by his deposition

18   testimony. Dr. Lavian simply did not exclude Content Modules for the reason invented by Fortinet's

19   counsel in their Opposition. He excluded them for no reason at all, exactly the sort of arbitrary

20   methodology that warrants exclusion under Rule 702. *See, e.g.*, *Plush Lounge Las Vegas LLC v.*

21   *Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 720–21 (9th Cir. 2010) (affirming exclusion of proposed

22   expert testimony where expert never "provided an explanation of the methodology used"); *Innovative*

23   *Memory Sys., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2022 WL 4548644, at *18 (D. Del.

24

25

---

26   [2] Fortinet's own Opposition confirms that the modules are critical. *See, e.g.*, Opp. at 16 (citing
     FORESCOUT00000583, which states the Content Modules are "used by other Modules for

27   classification, inspection and control" and support "in-depth discovery and management of software
     and applications"). Dr. Lavian did not opine, and Fortinet does not argue, that this data is useless or

28   of zero value.

1  Sept. 29, 2022) (excluding apportionment analysis where proponent did not "demonstrate that [the

2  damages expert] used a reliable methodology for counting the number of features").

3          The story is the same for the Extended Modules.  When Dr. Lavian was asked why he used the

4  individual sub-modules for one of the Base Modules, but only used the overall category for the

5  Extended Modules, he admitted, "***I don't have a specific reason***."  Mot. Ex. E (Lavian Dep. Tr.) at

6  218:2–219:11.  As with the Content Modules discussed above, Dr. Lavian conceded that he had no

7  rationale for his selection process.  Fortinet again offers no response to this deposition testimony.

8  Instead, Fortinet proffers attorney argument that Dr. Lavian opined that the eyeExtend modules "all

9  work in a common way" because the materials "describe[ed] [sic] the same CounterACT features

10  applied to different third-party products."  Opp'n at 16 (quoting Opp'n Ex. 1 ¶¶ 310–311).  It is not

11  clear what this means.  It is clear, however, this statement by Dr. Lavian in the infringement portion

12  of his report does not appear in Dr. Lavian's apportionment opinions (or supporting analyses).

13  Moreover, his apparent opinion that multiple modules infringe in a similar (or even identical) manner

14  is irrelevant to the apportionment analysis.  Apportionment focuses on the value of the patent, and not

15  the manner of infringement.

16          Fortinet's argument is even more crazy because the different eyeExtend modules Dr. Lavian

17  references in his infringement analysis are specific to individual vendors (e.g., Tenable, as cited in

18  paragraph 310).  The categories in the Administration Guide that he relies on for apportionment,

19  however, are described in functional terms, listing Advanced Threat Detection (ATD), Endpoint

20  Protection Platform (EPP), Mobile Device Management (MDM), Open Integration, Security

21  Information and Event Management (SIEM), Vulnerability Management (VM), Privileged Access

22  Management (PAM), IT Service Management (ITSM), Next Generation Firewall (NGFW), and Client

23  Management Tools (CMT).  Mot. Ex. F (CounterACT 8.0 Administration Guide)

24  at FORESCOUT000539.  Dr. Lavian does not have any explanation of how to connect his vendor-

25  specific infringement opinions to these ten functional categories because he simply "do[es]n't have a

26  specific reason" for the methodology he employed.[3]

27  _____

28  [3] Fortinet likewise fails to offer any explanation of how to connect Dr. Lavian's vendor-specific
infringement to these ten functional categories, but the Court need not even consider that failure

Finally, Fortinet attempts to distinguish Forescout's cited case law by arguing "Dr. Lavian has explained his qualifications and presented ample factual support and has counted features on the basis of Forescout's own cataloguing of them in its manual." Opp'n at 18. Not true. Dr. Lavian provided no factual support for his methodologies and, instead, expressly admitted he had "[n]o specific reason" for excluding Content Modules and he "do[es]n't have a specific reason" for not using the Extended Modules subcategories (as he did for other modules). And Dr. Lavian did not count features based on Forescout's own cataloguing because he excluded Content Modules that Forescout included and he excluded subcategories of Extended Modules that Forescout included. Thus, Fortinet's distinctions—which bear no relation to any of Forescout's cited case law—are without merit. Dr. Lavian's opinions fall squarely within the scope of Forescout's case law because Dr. Lavian and Fortinet have failed to provide an explanation of the methodology used (and worse, Dr. Lavian has expressly admitted he had no reason for using the methodology he used). *See, e.g.*, *Plush Lounge*, 371 F. App'x at 720–21 (affirming exclusion of proposed expert testimony where expert never "provided an explanation of the methodology used"); *Innovative Memory Sys.*, 2022 WL 4548644, at *18 (excluding apportionment analysis where proponent did not "demonstrate that [the damages expert] used a reliable methodology for counting the number of features"). Fortinet has thus failed to show that Dr. Lavian's opinions are reliable and admissible under Rule 702, and the Court should exclude these arbitrary opinions.

**C.** **The Court should exclude Dr. Lavian's apportionment opinions for Forescout's patents because they are arbitrary and not the product of reliable methods.**

Dr. Lavian's apportionment opinions for Forescout's patents depend on an entirely arbitrary percentage scale that he invented for purposes of this case: "Minimal (5%), Low (10%), Medium (20%), High (40%), Very High (80%), and Complete (100%)." Mot. Ex. D (Lavain Rebuttal Inf. Report) ¶ 67. His report identifies no basis for this scale, and he could not identify any basis for it at deposition other than asserting, based on nothing more than his own say-so, that it was "reasonable."

---

because the fact that Fortinet's attorney-invented reason was not relied on by Dr. Lavian—who instead admitted he "do[es]n't have a specific reason" for his chosen methodology—is a sufficient basis to dismiss Fortinet's argument.

1    Mot. Ex. E (Lavian Dep. Tr.) at 313:10–23. In its Opposition, Fortinet does not identify any accepted

2    methodology or other factual basis for this scale.

3        Fortinet's only response is that "Dr. Lavian describes his analysis with respect to each patent

4    and each category clearly, explaining what he is weighing, and what he is weighing against." Opp'n

5    at 18 (citing Opp'n Ex. 4 ¶¶ 67–68). Paragraphs 67 and 68 of Dr. Lavian's report, however, do not

6    identify any basis for the percentages he uses in his scale. He just pulled these percentages out of thin

7    air. He provides no explanation of how he invented these percentages. For example, for the '116

8    patent, the entirety of his analysis is as follows: "For the '116 Patent, the accused functionality makes

9    a low contribution to the profiling and visibility features, as profiling from the specific multiple sources

10    of the claims provides one additional way of profiling devices in the already-mature profiling

11    functionality." Mot. Ex. D (Lavian Rebuttal Inf. Report) ¶ 68. Nothing in this single sentence

12    provides any basis for the arbitrary percentages Dr. Lavian identifies in his scale (either in the abstract

13    or connected to the '116 patent weightings specifically). Thus, Dr. Lavian's report does not identify

14    any reliable basis for his percentage scale.

15        Next, Fortinet dismisses Forescout's argument as "based on a statement [ Dr. Lavian] made at

16    his deposition that a 5 percent number could be accurate to within plus or minus one percentage point."

17    Opp'n at 18. Again, Fortinet is making things up. Dr. Lavian did not testify that his numbers were

18    accurate to within plus or minus 1 percentage. He merely used 4 and 6 percent, along with "or more,"

19    as examples to show that his scale could have been anything at all (because it has no reliable basis):

20       Q.      Okay. Let me clarify, because I think I was asking a slightly different question.

21            So how did you decide that minimal was 5 percent? How did you decide on the
22         numerical values in paragraph 67?

23       A.      I don't have a specific number that can be 4 percent or 5 percent or 6 percent or
        -- or more. But it seems to me that I wanted to show what is minimal, what is low, what
24         is medium and what is high, what is very high and what is complete.

25           And somehow, I wanted to divide them with what is reasonable from technical
        perspective. I don't have a specific number that's applied. That's what's reasonable
26         from technical perspective.

27    Mot. Ex. E (Lavian Dep. Tr.) at 313:10–23.

28

1    Moreover, if Dr. Lavian meant that answer to imply that his scale was somehow accurate

2    within 1 percent, he provided no explanation of how he arrived at the scale or how he concluded it

3    was accurate within 1 percentage, despite the question clearly asking for his basis in creating the

4    percentage values of the scale. Thus, Fortinet cannot show "the testimony is the product of reliable

5    principles and methods" as required by Fed. R. Evid. 702(c).

6        Next, Fortinet attempts to rescue Dr. Lavian with the argument that apportionment is not an

7    "exact science." Opp'n at 19 (quoting *Summit 6, LLC v. Samsung Elec. Co.*, 802 F.3d 1283, 1296

8    (Fed. Cir. 2015)). Fortinet misunderstands the law. Under *Summit 6*, an inexact opinion is completely

9    different from making things up out of thin air. Indeed, the contrast between Dr. Lavian's opinion and

10   that at issue in *Summit 6* is instructive. In *Summit 6*, the expert relied on specific data for the basis of

11   every step of his quantifications, using survey data to estimate 65.3% of people captured photos, 77.3%

12   of them shared photos, 41.2% of them shared by MMS, and 100% of sharing by MMS involved

13   resizing (an infringing feature required by the patent). 802 F.3d at 1297. He then multiplied the survey

14   percentages together to get his final apportionment percentage of 20.8%. *Id.* Thus, the expert in

15   *Summit 6* had a factual basis for every percentage used in his analysis. In stark contrast here,

16   Dr. Lavian has no factual basis whatsoever.

17       Finally, Fortinet attempts to rescue the drowning Dr. Lavian with the bizarre argument that

18   "[h]ad Dr. Lavian's opinions varied by plus or minus one point, it would not change the ultimate

19   royalty rate in any event." Opp'n at 19. Huh? Dr. Ugone never disclosed such an opinion. Even if

20   he had, Fortinet does not explain why this supposed lack of impact to the ultimate royalty rate

21   somehow makes Dr. Lavian's opinions admissible under Rule 702. Fortinet bears the burden of

22   showing that it is more likely than not that "the testimony is the product of reliable principles and

23   methods" under Rule 702(c). That a variance in Dr. Lavian's opinions by plus or minus 1 might not

24   affect the ultimate royalty rate says nothing about whether Dr. Lavian used reliable principles and

25   methods. The record is clear that he did not.

26

27

28

FORESCOUT'S REPLY ISO ITS MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. TAL LAVIAN
CASE NO. 3:20-CV-03343-EMC

**D.** **The Court should exclude Dr. Lavian's non-infringing alternative opinions because he has no factual or technical basis for these opinions.**

The problem with Dr. Lavian's opinions regarding non-infringing alternatives is that he performed no infringement analysis whatsoever of the Cisco or Aruba products. Mot. Ex. E (Lavian Dep. Tr.) at 310:12–16. He just says they are non-infringing alternatives without any basis whatsoever. This approach is plainly not allowed by Rule 702. In response, all Fortinet says is that the Cisco or Aruba products "are not *accused* of infringement." Opp'n at 20. To state the obvious, that does not make then non-infringing alternatives either factually or legally. There is simply no evidence of whether these products infringe. How could there be when Dr. Lavian admittedly performed no infringement analysis?

Fortinet's last gasp on this subject is that "Dr. Lavian expressly relied upon the admission of an opposing expert, who professed to have studied them." *Id.* at 21. Again, Fortinet is making things up. Dr. Rao, who Dr. Lavian cited, is Forescout's *damages* expert, not its technical expert. He did not profess to have conducted an infringement analysis of the Cisco or Aruba products. He simply accounted for them from his market share analysis for purposes of his lost profits opinions because these alternative products might capture some of the infringing FortiNAC sales in the but-for world. Dkt. 301-10, Rao Dep. at 80:15–81:7. If Dr. Lavian, a technical expert, relied on Dr. Rao, a damages expert, for an infringement analysis, Dr. Lavian made a grave mistake.

Regarding the alleged "FortiGate" alternative, Fortinet argues that Dr. Lavian "reviewed a FortiGate manual" and it was "inadvertently excluded from his 'materials considered.'" Opp'n at 20. Huh? What is this document? Dr. Lavian submitted no errata to his list of materials considered identifying any such document. And Fortinet does not identify this document in its Opposition. Fortinet instead refers to *three* documents it produced for the first time at Dr. Lavian's at deposition.

As Forescout pointed out in its Motion (and Fortinet did not rebut), none of the three documents provided by counsel is a "FortiGate manual." *See* Mot. Exs. G, H, I. Thus, none appears to be the document Dr. Lavian was referencing. The only one that is a manual (Mot. Ex. H) is a manual for a different product, *FortiOS*, not FortiGate. And that document, along with Mot. Ex. I, was never produced during discovery. Fortinet, therefore, should not be able to rely on them under Federal Rule

11

1    of Civil Procedure 37 ("If a party fails to provide information or identify a witness as required by

2    Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

3    motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[4]

4         Fortinet argues that Forescout is at fault for not deposing Dr. Lavian on three documents

5    provided by counsel, even though Fortinet did not provide—and still to this day has not provided—

6    any explanation of why it produced three documents when Dr. Lavian only referenced one, even

7    though none of the three documents fit the description provided by Dr. Lavian, even though two of

8    the documents were not even produced in discovery, and even though none of the documents are listed

9    in Dr. Lavian's materials considered.

10        Even if Dr. Lavian inadvertently failed to cite some still-unknown document in his disclosed

11   opinion, the fact remains that Dr. Lavian has never disclosed to this day an infringement analysis that

12   would support Fortinet's argument that FortiGate is a *non-infringing* alternative. At bottom, *Fortinet*

13   has the burden to show that Dr. Lavian's opinions are based on "sufficient facts or data" under Rule

14   702(b). That Forescout did not question Dr. Lavian on random documents produced by Fortinet's

15   counsel for the first time at Dr. Lavian's deposition—documents that did not correspond to his

16   deposition testimony and for which there was no indication Dr. Lavian had ever reviewed[5]—does not

17   somehow flip the burden of demonstrating admissibility under Rule 702(b).

18        Fortinet concludes with another bizarre argument: "Forescout does not seriously contend that

19   FortiNAC and Forescout are the only two NAC products on the market." Opp'n at 21. To be clear,

20   that is not Forescout's contention. Also to be clear, whether there are only two NAC products is

21   irrelevant. The only relevant inquiry for purposes of Forescout's Motion is whether Dr. Lavian has a

22   reliable basis for his opinion that the Cisco, Aruba, and FortiGate products are *non-infringing*

23   alternatives available to Fortinet. As for this relevant inquiry, the answer is manifest. Dr. Lavian has

24

25   _____

     [4] Fortinet notes that Rule 37 includes an exception for harmlessness and argues it "may be when an
26   opinion and the bases therefor are disclosed through other discovery tools." Opp. at 21. But Fortinet
     does not identify any way that these documents were disclosed through other discovery tools, and they
27   were not. Thus, Fortinet has not shown any exception to Rule 37 would apply to prevent exclusion.
     [5] Importantly, Fortinet still has not produced any evidence that Dr. Lavian actually possessed or
28   reviewed these documents prior to issuing his report.

1  no reliable basis because he performed no non-infringement analysis.  He just cannot say it at trial

2  with no analysis and with no reliable basis.

3  **III.     CONCLUSION**

4       For all the reasons explained above, the Court should exclude the above-identified portions of

5  Dr. Lavian's expert report under Rule 702.

6

7   Dated: August 15, 2024                              */s/ Kimball R. Anderson*
                                                         KELLY C. HUNSAKER (SBN: 168307)
8                                                        *khunsaker@winston.com*
                                                         EIMERIC REIG-PLESSIS (SBN: 321273)
9                                                        *ereigplessis@winston.com*
                                                         MATTHEW R. MCCULLOUGH (SBN: 301330)
10                                                       *mrmccullough@winston.com*
                                                         WINSTON & STRAWN LLP
11                                                       255 Shoreline Drive, Suite 520
                                                         Redwood City, CA 94065
12                                                       Telephone:    (650) 858-6500
                                                         Facsimile:    (650) 858-6550
13
                                                         KIMBALL R. ANDERSON (*pro hac vice*)
14                                                       *kanderson@winston.com*
                                                         WINSTON & STRAWN LLP
15                                                       35 W. Wacker Drive
                                                         Chicago, IL 60601-9703
16                                                       Telephone:    (312) 558-5600
                                                         Facsimile:    (312) 558-5700
17
                                                         Attorneys for Defendant and
18                                                       Counterclaim-Plaintiff
                                                         FORESCOUT TECHNOLOGIES, INC.
19

20

21

22

23

24

25

26

27

28

FORESCOUT'S REPLY ISO ITS MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. TAL LAVIAN
CASE NO. 3:20-CV-03343-EMC